1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9

10

LINDA SHORT and OLIVIA PARKER, on
behalf of themselves and all others similarly
situated,

11

Plaintiffs,

12

13

v.

14

HYUNDAI MOTOR AMERICA, INC.,
HYUNDAI MOTOR COMPANY, KIA
MOTORS AMERICA, INC., and KIA
MOTORS CORPORATION,

15

16

Defendants.

17

No. 2:19-cv-318

COMPLAINT—CLASS ACTION

JURY DEMAND

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................ 1

II.    PARTIES ............................................................................................ 4

       A.     Defendants .............................................................................. 4

       B.     Plaintiffs ................................................................................. 5

III.   JURISDICTION AND VENUE ......................................................... 6

IV.    FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS ........... 7

       1.     2012-2016 Kia Soul catalytic converters overheat, resulting in
              catastrophic engine damage and fires. ................................... 7

       2.     2011-2013 Hyundai Tucson and 2011-2012 Kia Sportage oil pans
              were improperly sealed during manufacturing, leading to
              spontaneous and catastrophic engine stalls and fires. ............ 11

       3.     Hyundai and Kia Have a Pattern of Defects That Can Result In
              Engine Failure and Fires. ...................................................... 15

       4.     Defendants' Actions Have Caused Class Members Significant
              Harm. ....................................................................................... 19

V.     CLASS ACTION ALLEGATIONS ................................................... 20

       A.     Class Definitions ................................................................... 20

       B.     Class Certification Requirements .......................................... 22

VI.    EQUITABLE TOLLING .................................................................... 26

       A.     Discovery Rule ....................................................................... 26

       B.     Fraudulent Concealment ........................................................ 26

       C.     Estoppel .................................................................................. 27

VII.   CLAIMS FOR RELIEF ...................................................................... 27

       COUNT I  FRAUD BY CONCEALMENT (Common Law) ........... 28

       COUNT II  IMPLIED AND WRITTEN WARRANTY Magnuson-Moss
       Warranty Act (15 U.S.C. §§ 2301 *et seq.*) ........................................ 30

       COUNT III VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION
       LAW (Cal. Bus. & Prof. Code § 17200, *et seq.*) ............................... 31

COUNT IV VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING
LAW (Cal. Bus. & Prof. Code § 17500, *et seq.*) .................................................. 32

COUNT V VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT
(Cal. Civ. Code § 1750 *et seq.*) ............................................................................ 34

COUNT VI VIOLATIONS OF THE SONG-BEVERLY CONSUMER
WARRANTY ACT FOR BREACH OF IMPLIED WARRANTIES (Cal.
Civ. Code §§ 1791.1 & 1792) ............................................................................ 37

COUNT VII VIOLATIONS OF THE WASHINGTON CONSUMER
PROTECTION ACT (Wash. Rev. Code Ann. §§ 19.86.010, *et seq.*)............... 39

COUNT VIII BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY (Wash. Rev. Code Ann. §§ 62A.2-314 and
62A.2A-212) ........................................................................................................ 41

COUNT IX WASHINGTON "LEMON LAW" (Wash. Rev. Code Ann. §
19.118.005, *et seq.*) ............................................................................................. 42

VIII.    PRAYER FOR RELIEF ............................................................................................... 44

IX.      DEMAND FOR JURY TRIAL ................................................................................... 45

Plaintiffs bring this action on behalf of themselves and all others similarly situated, against the Defendants collectively referred to as "Hyundai"—Hyundai Motor America, Inc., and Hyundai Motor Company—and the Defendants collectively referred to as "Kia"—Kia Motors America, Inc., and Kia Motors Corporation. Hyundai owns a controlling interest in Kia and directs its operations. Plaintiffs allege the following based upon information and belief, the investigation of counsel, and personal knowledge as the factual allegations pertaining to themselves.

## I.   INTRODUCTION

1.     This case arises out of Hyundai's and Kia's failure to disclose or remedy several serious defects of design and manufacturing that can cause the engines of certain vehicles equipped with gasoline direct-injection ("GDI") engines to suddenly stall while at speed or to burst into flames.

2.     These vehicles include the 2011-2013 Hyundai Tucson, the 2012-2016 Kia Soul, and the 2011-2012 Kia Sportage.

3.     Hyundai and Kia knew or should have known about these defects before these vehicles went on sale, and it failed to correct these dangerous defects or disclose them to their customers. Moreover, once the vehicles were on the road, Hyundai and Kia failed to recall and repair these defective vehicles for years, leading to hundreds or thousands of engine failures, sudden stalls, and fires.

4.     Only recently—after years of concealing serious safety defects—have Hyundai and Kia begun to recall these vehicles, but as described more fully below, such a recall will be inadequate to remedy the problem or to compensate the customers who bore the risk that their cars might suddenly stall while driving or, worse, burst into flames.

COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318) - 1

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

5.      In the past, Hyundai and Kia have recalled numerous vehicles with GDI engines to repair defects that could lead to engine fires, but fires have recurred despite the recalls, and Hyundai and Kia are recalling many of those vehicles yet again for the same problems. Consumers have every reason to suspect that a recall at this late date will not be an adequate solution to the defect. These consumers also have every reason to suspect that now that the problem has become known and publicized, the resale values of their vehicles has likely plummeted. These consumers did not get the vehicles they bargained for at the time of purchase, have gone years without an adequate repair, may have suffered diminished resale value, and cannot now be made whole merely be recalling and repairing the vehicles.

6.      According to the National Highway Traffic Safety Administration (NHTSA), Hyundai is recalling 120,000 SUVs, and Kia is recalling 505,652 vehicles, each of which suffers from a serious defect. The affected vehicles ("Class Vehicles") are as follows:

| Model Year | Model | Number |
|---|---|---|
| 2012-2016 | Kia Soul | 378,967 |
| 2011-2013 | Hyundai Tucson | 120,000+ |
| 2011-2012 | Kia Sportage | 32,296 |

7.      Over 375,000 2012-2016 model year Kia Soul vehicles are being recalled due to a design defect wherein the catalytic converter can overheat and become damaged, resulting in abnormal combustion in the engine, damage to the pistons and resulting connecting rod failure. These catastrophic failures can result in sudden stalls during normal driving and engine fires. Kia's proposed recall and repair involves changing the catalytic converter software to a reprogrammed version used on 2017 and up vehicles, meaning that Kia has known about—but concealed and failed to remedy—this defect since at least 2016. Moreover, due to the rigorous

COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318) - 2

regulatory certification process for emissions components, it is unlikely that this repair could actually be effectuated without the involvement, consent, and testing of environmental regulators.

8.     Over 120,000 2011-2013 model year Hyundai Tucson SUVs are being recalled due to a manufacturing defect wherein, due to improper sealing during engine production, oil leaks can lead to engine damage, sudden stalls during normal operation, and/or engine fires. Hyundai professes not to know—almost nine years after the first of these vehicles entered production—the cause of this defect and has not yet proposed a solution despite agreeing to recall the vehicles.

9.     Over 32,000 Kia Sportage vehicles from the 2011 to 2012 model years are being recalled due to a manufacturing defect wherein the oil pan was not properly sealed during engine production. As a result, an oil leak can develop and lead to engine damage, sudden stalls during normal operation, and/or engine fires.

10.    Hyundai and Kia alike concealed these defects for years, despite hundreds of consumer complaints of spontaneous catastrophic engine failures, stalls, and fires. The recalls now being conducted were forced by a NHTSA investigation that grew in part out of concern over the timeliness and scope of Hyundai's prior recalls for defects that could lead to engine fires in vehicles equipped with similar engines. Congress eventually summoned Kia and Hyundai executives to appear and testify about these defects, but these executives refused to appear.

11.    Because of the inherent engine defects and Defendants' concealment of the same, Plaintiffs and other owners and lessees of the Class Vehicles unknowingly assumed the risk of catastrophic engine failures and fires—and concomitant risk of injury or death—resulting from defects that Hyundai and Kia knew or should have known about before the vehicles were ever

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

sol; learned of or should have learned of from the hundreds or thousands of engine failures, fires, and complaints from consumers that followed; and concealed and failed to remedy for years.

12.     As a result of Defendants' conduct, Plaintiffs and other owners and lessees of the Class Vehicles overpaid at the time of purchase or lease for vehicles that were actually defective, have or will suffer the costs associated with extensive repairs, have owned and leased vehicles that were less valuable than those for which they bargained, and have seen their vehicles likely lose market value. Defendants still have not provided to Plaintiffs the vehicles bargained for, and even a future repair would not restore purchasers and lessees to the benefits of ownership for which they bargained and that they would have received but for the defect.

## II.     PARTIES

### A.     Defendants

13.     Defendant **Hyundai Motor America, Inc.,** (HMA) is a manufacturer and distributor of new motor vehicles under the Hyundai brand and is incorporated and headquartered in the state of California. Its principal place of business is located at 10550 Talbert Avenue, Fountain Valley, California. Hyundai Motor America distributes, markets, leases, warrants, and oversees regulatory compliance and warranty servicing of Hyundai brand vehicles through a network of over 800 dealers throughout the United States from its headquarters in California. Hyundai Motor America also creates and distributes the warranties and other written materials that accompany the sale and lease of Hyundai-branded vehicles throughout the United States, and makes decisions concerning warranty coverage of customer vehicles when problems arise.

14.     Defendant **Hyundai Motor Company** (HMC) is a multinational auto manufacturer with its headquarters in Seoul, South Korea. Hyundai Motor Company controls and

COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318) - 4

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

operates its subsidiaries in the Hyundai Motor Group, which includes Hyundai Motor America, Inc., as well as Kia Motors Corporation and Kia Motors America, Inc. Activities of the Hyundai Motor Group include the design, manufacture, and testing of the engines and vehicles at issue in this complaint. Revenue from the distribution and sale of Hyundai-branded vehicles in the United States flows from Hyundai Motor America, Inc., to its corporate parent, Hyundai Motor Company.

15.     Defendant **Kia Motors America, Inc.,** (KMA) is a manufacturer and distributor of new motor vehicles under the Kia brand and is incorporated and headquartered in the state of California. Its principal place of business is located at 111 Peters Canyon Road, Irvine, California. Kia Motors America, Inc., markets, leases, warrants, and oversees regulatory compliance and warranty servicing of Kia brand vehicles through a network of over 700 dealers throughout the United States from its headquarters in California. KMA also creates and distributes the warranties and other written materials that accompany the sale and lease of Kia-branded vehicles throughout the United States, and makes decisions concerning warranty coverage of customer vehicles when problems arise.

16.     Defendant **Kia Motors Corporation** (KMC) is a multinational auto manufacturer with its headquarters in Seoul, South Korea. It is the corporate parent of Kia Motors America, Inc., and is a part of the Hyundai Motor Group. Defendant Hyundai Motor Company holds a controlling stake in Kia Motors Corporation. Revenue from the distribution and sale of Kia-branded vehicles in the United States flows from KMA to its corporate parent, KMC.

**B.     Plaintiffs**

17.     Plaintiff **Linda Short** is a citizen of Washington state who resides in Redmond. She leased a new 2013 Hyundai Tucson on or about March 30, 2013, and then purchased the

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

vehicle at the end of the lease, at which time the vehicle was still covered by the manufacturer's warranty. Had the defect and risk of fire or stalling been known at the time of lease and purchase, Plaintiff would not have leased or purchased the vehicle or would have paid considerably less for it. Plaintiff regularly services the vehicle but is now concerned about driving it due to the dangers resulting from the defect and believes that its market value has been diminished as a result of the defect.

18.     Plaintiff **Olivia Parker** is a citizen of California who resides in Joshua Tree. In September 2018 she purchased a used 2014 Kia Soul for approximately $15,000. Had the defect and risk of fire or stalling been known at the time of purchase, Plaintiff would not have purchased the vehicle or would have paid considerably less for it. Plaintiff has serviced the vehicle regularly but is now concerned about driving it due to the dangers resulting from the defect and believes that its market value has been diminished as a result of the defect.

### III.     JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), because the putative class numbers more than 100, the aggregate amount in controversy exceeds $5,000,000 excluding costs and interest, and at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367.

20.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district. Defendants have marketed, advertised, and sold the affected vehicles, including Plaintiff Short's vehicle, and otherwise conducted extensive business, within this District.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## IV.    FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

21.    Hyundai Motors Company, Hyundai Motor America, Kia Motors Corporation, and Kia Motors America Inc. manufactured and sold defective engines and then concealed the true nature of the engines and vehicles from consumers for years—consumers who were driving vehicles that could burst into flames or suffer catastrophic engine failures at any moment.

### 1.    2012-2016 Kia Soul catalytic converters overheat, resulting in catastrophic engine damage and fires.

22.    In February 2019, Kia Motors America, Inc. (KMA) issued a recall for 378,967 **Soul** vehicles from the 2012 to 2016 model years, all of which have 1.6-liter direct injection gasoline engines. In these engines the catalytic converter, which reduces pollutants in exhaust emissions, is susceptible to overheating due to—according to Kia—a programming error. When the catalytic converter overheats, abnormal combustion in the engine can result. This can damage the pistons' connecting rods, potentially fracturing the engine block and causing an oil leak. Connecting rod failure, damaged pistons, and a cracked engine block can all cause sudden and catastrophic engine failure during normal driving, and the resulting leakage of oil onto hot engine parts can result in engine fires.[1]

23.    On November 16, 2018, KMA and Kia Motors Corporation (KMC), (collectively Kia) submitted a response to Defect Petition (DP18-003) for the Kia Soul vehicle and did not identify or report any potential defect trends. Between November 16 and December 5, 2018, KMC analyzed Soul engine claim data and identified a relationship between catalytic converter damage and engine fires. Upon KMC's request, KMA collected data throughout December for an evaluation of defect trends in suspect vehicles. Between January 7 and February 20, 2019,

---

[1] Letter to Mr. J.S. Park: Overheated Catalytic Converter May Damage Engine for NHTSA Recall No. 19V120000 (Feb. 27, 2019), https://static.nhtsa.gov/odi/rcl/2019/RCAK-19V120-4114.pdf (last visited Mar. 1, 2019).

COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318) - 7

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

KMC engineers traveled to the United States to inspect 120 collected, potentially hazardous parts. They identified the defect and confirmed the risk of sudden engine stalls and fires. More than three months after Kia's investigation began, KMC decided to conduct a safety recall due to potential risk of fire on February 21, 2019.[2]

24.     This investigation and recall is too little, too late. Kia was aware of the dangers of an overheating catalytic converter in these engines since 2016. The Safety Recall Report for the February 21, 2019 recall discloses that "[t]he [Electronic Control Unit] ECU logic for the Catalytic Overheating Protection (COP) was changed and improved to prevent overheating of the catalytic converter on July 27, 2016, beginning with the start of the 2017 MY Soul production. However, the 2016 MY Soul production ended on August 11, 2016 with the previous COP ECU logic."[3]

25.     Before vehicles are certified and offered for sale in the United States, they are supposed to undergo rigorous durability testing in order to identify defects such as these. Defendants are required to do this testing for each vehicle model and model year to be sold in the United States. Kia's website, press releases, and marketing materials describe "rigorous" testing of both normal and extraordinary driving conditions, over long hours and thousands of miles and in extreme weather and geography, to ensure the durability of Kia vehicles. Kia's website touts its testing: "We put our engines through rigorous testing in the highest, hottest, and coldest places that a car can possibly be before we put them in our cars."[4]

---

[2] 2012-2016 MY Soul Engine Control Unit (ECU) Logic Chronology for NHTSA Recall No. 19V120000 (Feb. 22, 2019), https://static.nhtsa.gov/odi/rcl/2019/RMISC-19V120-6176.pdf (last visited Mar. 1, 2019).

[3] Part 573 Safety Recall Report for NHTSA Recall No. 19V120000 (Feb. 22, 2019), https://static.nhtsa.gov/odi/rcl/2019/RCLRPT-19V120-1711.PDF (last visited Mar. 1, 2019).

[4] http://www.kia.com/worldwide/experience_kia/rnd/performance.do (last visited Mar. 4, 2019).

COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318) - 8

1

2



3

4

5

6

7

8

9

10

11

12

13

14

15
26.     Kia's website goes on to describe several specific durability tests it conducts,

16 under the motto "We ruin our cars in various ways, identify causes and find solutions to them to

17 make our cars endure over a long time without fault."[5] These tests include: 1. "item durability

18 tests" of individual parts, 2. "module durability tests" of entire assembled components, 3. a

19 "Belgian road test" of driving over rough cobbles to test noise, vibration, and harshness, 4. a

20 "high speed test," 5. a "corrosion test," 6. a "P/T test" of engine performance and temperature,

21 and 7. whole-vehicle safety/crash testing. It further describes testing for extreme weather

22 conditions as well as durability testing conducted on numerous test facilities around the world.

23

24

25

26

---

[5] http://www.kia.com/worldwide/experience_kia/rnd/performance.do (last visited March 4, 2019).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1
2
3
4
5
6
7
8
9
10
11
12



13      27.     Kia therefore knew or should have known about these defects before each

14  affected model year ever went to market as a result of its durability testing. But Kia definitely

15  knew about the problem and had a fix for it by mid-2016 at the latest, and introduced new

16  programming that (presumably) remedied the problem for 2017 model year Soul vehicles. Kia's

17  proposed recall repair is to simply reprogram 2012-2016 model year Souls with the newer

18  programming, which illustrates that between 2016 and 2019, if not beginning before the 2012

19  model year went on the market, Kia actively concealed its knowledge of this dangerous defect

20  from consumers and safety regulators alike despite hundreds of reports of catastrophic engine

21  failures.

22

23      28.     Numerous owners and lessees of 2012-2016 Soul vehicles have submitted

24  complaints about catastrophic engine failures and fires to the National Highway Traffic Safety

25  Administration. Some examples appear below.

26

2012 Kia Soul – NHTSA ID Number: 11128688

VEHICLE HAS 96000 MILES. WHILE DRIVING ON HIGHWAY BEGAN TO HEAR
RATTLING AND PINGING. ATTEMPTED TO MAKE IT TO REST AREA TO PULL
OVER AND INSPECT. HEARD LOUD BANG AND ENGINE STALLED. COASTED
INTO REST AREA. INSPECTION REVEALED OIL LEAKING FROM HOLE BLOWN
IN LOWER ENGINE BLOCK.

2014 Kia Soul – NHTSA ID Number: 11173144

WHILE DRIVING ON THE HIGHWAY, THE DASH BOARD STARTED TURN OFF
AND ON THE CAR BEGAN TO LOSE POWER. I PULLED OFF TO THE SIDE AND
THE LIGHTS ON THE DASH CAME ON AND THE CAR SHUT DOWN
COMPLETELY.WITHIN A FEW MINUTES SMOKE STARTED COMING FROM THE
HOOD OF THE CAR FOLLOWED BY A SMALL FIRE. I GOT OUT OF THE CAR AND
THE FIRE GREW AND COMPLETLY BURNED THE CAR.

2016 Kia Soul – NHTSA ID Number: 11180538

AFTER A SHORT DRIVE, I PARKED MY 2016 KIA SOUL IN THE GARAGE AND 15
MINUTES LATER I HEARD A NOISE IN THE GARAGE. MY HUSBAND OPENED
THE DOOR TO THE GARAGE AND FOUND FLAMES COMING FROM THE
STATIONARY KIA. THE ENTIRE GARAGE CAUGHT FIRE AND INCLUDED MY
OTHER CAR WHICH WAS AN INFINITI G35. THE PRIMARY FLAMES WERE
COMING OUT OF THE HOOD/FRONT RIGHT FENDER SEAM WITH MINOR
FLAMES UNDERNEATH THE KIA. WE KNOW THAT THE FIRE STARTED IN THE
PASSENGER SIDE OF THE ENGINE COMPARTMENT OF THE KIA SOUL. THE
VEHICLE WAS LESS THAN ONE YEAR OLD, HAD APPROXIMATELY 6000 MILES,
AND HAD ONLY BEEN SERVICED ONCE AT THE HENDERSON KIA DEALERSHIP
FOR AN OIL CHANGE. … WE HAD TO MOVE OUT OF OUR HOME FOR FIVE
MONTHS WHILE THE HOUSE WAS BEING REPAIRED. THERE WAS OVER
$142,000 DAMAGE TO OUR HOME AND PERSONAL PROPERTY.

**2.      2011-2013 Hyundai Tucson and 2011-2012 Kia Sportage oil pans were
improperly sealed during manufacturing, leading to spontaneous and
catastrophic engine stalls and fires.**

29.      Manufacturing defects leading to oil pan leaks in the 2011-2013 Hyundai Tucson

and 2011-2012 Kia Sportage have caused serious risk of harm in the form of spontaneous engine

stalling and engine fire.

30.      Alongside the Kia Soul recall described above, Hyundai issued a recall of 120,000

Tucson SUVs from the 2011 to 2013 model years due to potential engine pan oil leaks caused by

COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318) - 11

insufficient sealing between the oil pan and the engine block.[6] If unaddressed, the engine oil pan leakage may cause engine damage that leads to increased risk of fire or a stalled engine at high speeds. These engines were also manufactured at the Ulsan plant and sold to unsuspecting consumers.

31.     Two Hyundai Tucson Safety Recall Reports were submitted on February 5, 2019 and February 15, 2019. Both reports identified that vehicles produced from March 1, 2010, to December 31, 2012, needed to be recalled for safety purposes, but the later Safety Recall Report specified that potentially hazardous Tucson vehicles were equipped with 2.4L engines manufactured at the Ulsan plant—the same engines identified in the Kia 2011-2012 Sportage recall. More telling, this is also the same engine involved in 2015 and 2017 recalls of other vehicles for engine fire defects, some of which were recalled yet again in 2019 because the fires could recur even after recall repairs were conducted. Based on information NHTSA received from HMC, the recall of Tucson vehicles was required to minimize exposure to risk of stalling or fire.[7]

32.     Despite the fact that this dangerous defect persists in vehicles manufactured as long ago as 2010, and despite several failed recalls of other models equipped with the same engine over the past several years, as of March 2019 Hyundai *still* has not identified the cause of the defect or proposed a repair for it, despite agreeing to recall the Tucson.

33.     Once again numerous owners and lessees of 2011-2013 Hyundai Tucson SUVs complained to NHTSA. Some examples follow:

---

[6] Part 573 Safety Recall Report for NHTSA Recall No. 19V063000 (Feb. 15, 2019), https://static.nhtsa.gov/odi/rcl/2019/RCLRPT-19V063-6813.PDF (last visited Mar. 2, 2019).
[7] Part 573 Safety Recall Report for NHTSA Recall No. 19V063000 (Feb. 5, 2019), https://static.nhtsa.gov/odi/rcl/2019/RCLRPT-19V063-6690.PDF (last visited Mar. 2, 2019); *Id.*

COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318) - 12

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

2012 Hyundai Tucson NHTSA ID Number: 11103584

CATASTROPHIC ENGINE FAILURE ON A 2012 TUCSON WITH ONLY 80K MILES.
THE VEHICLE WAS REGULARLY SERVICED. HEARD A FAINT TICKING COMING
FROM THE ENGINE WHILE DRIVING, AND LATER THAT DAY, THE ENGINE
BLEW. APPARENTLY THE THETA 2 ENGINE THE VEHICLE USES IS KNOWN FOR
FAILURE, BUT THE HYUNDAI DEALERSHIP I TOOK THE VEHICLE TO CLAIMED
ONLY ABOUT 2% OF THESE CARS WERE AFFECTED, AND I WAS JUST
"UNLUCKY". NO WARNING LIGHTS, NOTHING. WAS ON THE INTERSTATE
DURING RUSH HOUR AT THE TIME OF THE INCIDENT, AND WAS ALMOST HIT
BY MULTIPLE VEHICLES BECAUSE OF THIS.

2013 Hyundai Tucson NHTSA ID Number: 11119738

ON JUNE 17, 2018 MY ENGINE BLEW ON MY 2013 TUCSON, LESS THAN 75000
MILES. WE WERE TRAVELING ON THE INTERSTATE AT SPEEDS OF 75 MILES
PER HOUR WHEN THE ENGINE BEGAN TO KNOCK THEN LOOSE SPEED.
TRAFFIC ALL AROUND US WAS TRAVELING AT 75-80 MILES PER HOUR, VERY
SCARY AS WE WERE GOING 10-15 MILES PER HOUR WHEN WE MANAGED TO
PULL OFF ON AN EXIT AND THE ENGINE SIMPLY DIED AND NEVER WOULD
RESTART. WE HAD TO PUSH IT THROUGH A BUSY INTERSECTION TO A GAS
STATION. WE HAD IT TOWED TO THE LOCAL HYUNDAI DEALER WHERE IT
STILL SITS 2 MONTHS LATER WAITING ON AN ENGINE TO BE DELIVERED.

34.     Kia Motors America, Inc. (KMA) issued a recall of approximately 32,296

Sportage vehicles from the 2011 and 2012 model years due to potential oil pan leaks. The

affected vehicles are equipped with 2.4L engines supplied by Hyundai Motor Company (HMC)

Ulsan plant.[8]

35.     During vehicle assembly these oil pans may have received insufficient sealing,

leading to low oil levels that can cause engine damage. A damaged engine can cause the engine

to stall, increasing the risk of a crash. Furthermore, oil leaks increase the risk of fire.[9]

---

[8] Part 573 Safety Recall Report for NHTSA Recall No. 19V101000 (Feb. 15, 2019),
https://static.nhtsa.gov/odi/rcl/2019/RCLRPT-19V101-5937.PDF (last visited Mar 1, 2019).
[9] Letter to Mr. J.S. Park, Engine Oil Leak May Cause Stall or Fire for NHTSA Recall No. 19V101000 (Feb. 27,
2019), https://static.nhtsa.gov/odi/rcl/2019/RCAK-19V101-1869.pdf (last visited Mar 1, 2019).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

36.     On January 29, 2019, Kia Motors Corporation (KMC) was notified by HMC's Ulsan factory of a potential production issue related to the assembly of the oil pan seal that could cause engine stalling or fire. Between then and February 7, 2019, KMC reviewed engine oil pan replacement warranty claims that had been submitted due to reports of oil leakage. Only then did KMC advise KMA to conduct a review of its respective data. From February 8 to February 12, 2019, KMA conducted review of warranty claim data before advising KMC to review results. By February 13, 2019, KMC had decided to conduct a recall of more than 30,000 Kia Sportage vehicles.[10]

37.     Despite the fact that this dangerous defect persists in vehicles manufactured as long ago as 2010, it took until 2019 for Kia to admit the defect existed, identify the cause of the problem, and commence a recall. This is, again, despite the fact that Kia has previously recalled several vehicles equipped with the same or similar engines, which suffered the same or similar defects, over the past several years.

38.     As with the other defects described above, numerous owners and lessees of 2011-2012 Kia Sportage vehicles have complained of sudden engine stalls and fires to NHTSA. Some examples follow.

2011 Kia Sportage NHTSA ID Number: 11099905

MY SON WAS DRIVING ON ROUTE 1 IN DELAWARE AT AROUND 60 MILES AN HOUR. ROUTE 1 IS A 2 LANE HIGHWAY. THE CAR SHUT OFF WHILE HE WAS DRIVING AT THE ABOVE MENTIONED SPEED. AFTER SEVERAL ATTEMPTS TO START THE CAR WE HAD TO GET THE CAR TOWED TO MY MECHANIC. MY MECHANIC DID A DIAGNOSTIC ON THE ENGINE AND TOLD ME THE ENGINE HAD LOCKED. HE SAID THE ENGINE WASN'T GETTING THE PROPER OIL FLOW TO IT.

---

[10] 2011-2012 MY Sportage Engine Oil Pan Leak Chronology for NHTSA Recall No. 19V101000 (Feb. 15, 2019), https://static.nhtsa.gov/odi/rcl/2019/RMISC-19V101-5877.pdf (last visited Mar. 2, 2019).

COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318) - 14

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

2012 Kia Sportage NHTSA ID Number: 11170454

MY DAUGHTER WAS DRIVING ON THE INTERSTATE AT ABOUT 70MPH WHEN ENGINE SEIZED. SHE WAS IN THE LEFT LANE BUT THANKFULLY MANAGED TO GET INTO THE EMERGENCY LANE WITHOUT BEING HIT BY OTHER MOTORIST. VEHICLE ONLY HAD 68K MILES ON IT. KIA DOES NOT ACCEPT RESPONSIBILITY FOR THIS EVEN THOUGH IT COVERS OTHER SPORTAGES & OPTIMAS WITH THE SAME ENGINE FOR SAME EXACT PROBLEM. THANKFUL MY DAUGHTER DID NOT GET HURT BUT SHE WAS LEFT WITH A $5,500 BILL THAT WE HAD TO PAY TO FIX. KIA NEEDS TO EXPAND THE ENGINE RECALL TO ALL OF THE ENGINES AND NOW THEY ARE RECALLING SOME FOR A FIRE HAZARD. KIA NEEDS TO STEP UP BEFORE SOMEONE IS KILLED!

39.     For each of these defects, Hyundai and Kia durability testing before these vehicles ever went on sale should have identified the issue. But the Defendants have also been on notice for years of the defects through NHTSA complaints and warranty claims, as well as prior recalls of vehicles equipped with the same or similar GDI engines, and have done nothing but conceal the defect until now. The proposed recalls now follow investigations prompted by Defendants' failure to adequately remedy *another* set of defects that can cause engine fires.

**3.     Hyundai and Kia Have a Pattern of Defects That Can Result In Engine Failure and Fires.**

40.     Hyundai is familiar with engine defects and has a track record of failing to adequately remedy them. The company issued a similar recall in September 2015 after prompting by the NHTSA: Hyundai issued Recall No. 15V568000 for 470,000 MY 2011-2012 Hyundai Sonata vehicles manufactured at Hyundai Motor Manufacturing Alabama that were equipped with 2.0 liter and 2.4 liter "Theta II" GDI engines due to reported stalling events and numerous engine-related warranty claims.[11] At the time, Kia did not recall any vehicles, though some shared the same "Theta II" engines.

---

[11] Part 573 Safety Recall Report Chronology for NHTSA Recall No. 15V568000, (Sept. 10, 2015), https://static.nhtsa.gov/odi/rcl/2015/RCLRPT-15V568-9490.PDF (last visited Mar. 1, 2019), at 2.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

41.     The defect and its consequences were described in NHTSA's Safety Recall Report from September 2015 as follows:

Hyundai has determined that metal debris may have been generated from factory machining operations as part of the manufacturing of the engine crankshaft during the subject production period. As part of the machining processes, the engine crankshaft is cleaned to remove metallic debris. If the debris is not completely removed from the crankshaft's oil passages, it can be forced into the connecting rod oiling passages restricting oil flow to the bearings. Since bearings are cooled by oil flow between the bearing and journal, a reduction in the flow of oil may raise bearing temperatures increasing the potential of premature bearing wear. A worn connecting rod bearing will produce a metallic, cyclic knocking noise from the engine which increases in frequency as the engine rpm increases. A worn connecting rod bearing may also result in illumination of the oil pressure lamp in the instrument cluster. If the vehicle continues to be driven with a worn connecting rod bearing, the bearing can fail, and the vehicle could stall while in motion.[12]

42.     Unfortunately, Hyundai did not recall nearly enough vehicles. In March 2017, Hyundai expanded its initial recall to 572,000 MY 2013-2014 Sonata and Santa Fe Sport vehicles with 2.0 liter and 2.4 liter GDI "Theta II" engines for the same manufacturing debris-related issues, describing the defect as follows:

The subject engines may contain residual debris from factory machining operations, potentially restricting oil flow to the main bearings and leading to premature bearing wear. A worn connecting rod bearing will produce a cyclic knocking noise from the engine and may also result in the illumination of the oil pressure lamp in the instrument panel. Over time, the bearing may fail and the vehicle could lose motive power while in motion.[13]

43.     That same day, Kia recalled 618,000 MY 2011-2014 Optima, 2012-2014 Sorento and 2011-2013 Sportage vehicles, all of which had the "Theta II" engine as well.[14]  Just like

---

[12] *Id.* at 1.

[13] Part 573 Safety Recall Report for NHTSA Recall No. 17V226000 (Mar. 31, 2017), available at https://static.nhtsa.gov/odi/rcl/2017/RCLRPT-17V226-4558.pdf (last visited Mar. 1, 2019), at 1.

[14] David Shepardson, *Kia, Hyundai expand U.S. engine fire recalls by 534,000 vehicles*, Reuters (Feb. 28, 2019), https://www.reuters.com/article/us-kia-motors-recall/kia-hyundai-expand-u-s-engine-fire-recalls-by-534000-vehicles-idUSKCN1QH2EB (last visited Mar. 1, 2019).

COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318) - 16

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Hyundai's recall, the potentially restricted oil flow to the main bearings could lead to premature bearing wear and eventual bearing failure, causing the engine to stall.

> Metal debris may have been generated from factory machining operations as part of the manufacturing of the engine crankshaft which may not have been completely removed from the crankshaft's oil passages during the cleaning process. In addition, the machining processes of the crankpins caused an uneven surface roughness. As a result, the metal debris and uneven surface roughness can restrict oil flow to the bearings, thereby increasing bearing temperatures causing premature bearing wear. A worn connecting rod bearing will produce a cyclic knocking noise from the engine and may also result in the illumination of the engine warning lamp and/or oil pressure lamp in the instrument panel. If the warnings are ignored and the vehicle is continued to be driven, the bearing may fail and the vehicle could stall while in motion.[15]

44.     The delay in expanding the recall to all affected vehicles between 2015 and 2017 caught the attention of NHTSA, which launched an investigation in May of 2017 into concerns that both companies' recalls should have been issued earlier. Nearly two more years went by as Hyundai and Kia kept receiving reports of engine fires in vehicles containing Theta II engines.

45.     While NHTSA was investigating the "timeliness and scope" of the March 2017 Sonata and Santa Fe engine recalls, it relayed to Hyundai that there had been a number of engine-stall and spontaneous fire claims for the Tucson equipped with GDI engines. This investigation eventually led to the 2011-2013 Hyundai Tucson and 2011-2012 Kia Sportage oil leak recall described above.[16]

46.     In January 2019, Hyundai recalled 100,000 2011-2014 Sonata and 2013-2014 Santa Fe Sport vehicles, and Kia recalled 68,000 2011-2014 Optima, 2012-2014 Sorento, and 2011-2013 Sportage vehicles.[17] These vehicles had already been involved in an earlier recall that

---

[15] Part 573 Safety Recall Report for NHTSA Recall No. 17V224000 (Mar. 31, 2017) available at https://static.nhtsa.gov/odi/rcl/2017/RCLRPT-17V224-2355.PDF (last visited Mar. 1, 2019), at 2.

[16] Andrew Krok, *Hyundai, Kia recall 500,000 cars over fire concerns,* CNet (Feb. 28, 2019), https://www.cnet.com/roadshow/news/hyundai-kia-recall-500000-cars-fire-concerns/ (last visited Mar. 1, 2019).

[17] Andrew Krok, *Hyundai adds 100,000 cars to Kia's engine-fire recall,* CNet (January 17, 2019), https://www.cnet.com/roadshow/news/hyundai-recall-engine-fire-kia/ (last visited Mar. 4, 2019); Andrew Krok,

COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318) - 17

could include engine replacement, but fires could recur despite that purported repair. Hyundai has previously repaired cars with similar defects, only to have the problems recur either because the replacement parts suffered from the same defects or because other parts were damaged by the repair process. Consumers therefore have reason to worry that just recalling and repairing the Class Vehicles may not solve these serious and dangerous defects.

47.     Despite the 300-plus vehicle fire reports NHTSA received, Hyundai and Kia representatives initially dismissed the dangers their vehicles posed to consumers, claiming that "[i]n some very rare instances—a rate of less than 1 percent—the affected engines have caught on fire. An exhaustive study has confirmed that there is no defect trend outside of that identified in the related recalls causing non-collision fires in Hyundai vehicles."[18] Even if this estimate is accurate, 1% of the over 1.7 million or more vehicles Defendants have recalled for engine fire risks so far amount to 17,000 engine fires suffered by American consumers, more than 5,000 of them concerning the Class Vehicles at issue here.

48.     Defendants' irresponsibly slow reaction and failure to adequately remedy the stalling and engine fires caused by their defective vehicles drew the interest of the Senate Commerce Committee, which invited the automakers to defend their lack of response. Though they were asked to "promptly identify and respond to defects that may pose a fire risk" at a November 14, 2018 hearing, and despite the ongoing investigation into why hundreds or thousands of their vehicles were spontaneously bursting into flames, the Hyundai and Kia executives refused to attend the congressional hearing.

---

*Kia Optima, Sorento, Sportage recalled a second time for fire risks*, CNet (January 16, 2019, https://www.cnet.com/news/kia-optima-sorento-sportage-recall-fire-risks/) (last visited Mar. 4, 2019).
[18] Kyle Hyatt, *Center for Auto Safety calls out Hyundai and Kia over lack of fire recall,* CNet (Oct. 12, 2018), https://www.cnet.com/roadshow/news/hyundai-kia-center-for-auto-safety-fire-recall/ (last visited Mar. 1, 2019).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

49.     In response to Defendants' refusal to appear before Congress, Jason Levine, executive director of the Center for Auto Safety, said: "Until Hyundai and Kia are willing to take responsibility for the three million vehicles on the road that could burst into flames at any minute—with no apparent warning to the driver—we will continue to press for a recall and full and thorough investigation. There has already been one death and a few injuries associated with these vehicle fires. How many people need to be horrifically burned before someone takes action?"[19]

50.     Though more than three years had gone by since the original 2015 recall of vehicles with "Theta II" engines, Kia claimed in late 2018 that the company was working with the Senate committee to "analyze all relevant information associated with any fire or other safety-related matters and will take any necessary corrective action in a timely manner."[20] However, Defendants' failure to respond proactively to these dangerous defects, and lengthy concealment of them, is unsurprising in light of the previous delays and failed recall of the "Theta II" engines.

**4.     Defendants' Actions Have Caused Class Members Significant Harm.**

51.     Owners and lessees of Class Vehicles did not receive the vehicles they bargained for at the time of purchase. Had they known the true nature of these vehicles, they would have paid less for them, or chosen to purchase other vehicles instead, because they believed that they were purchasing safe vehicles free of major, dangerous defects. As a result of Defendants' conduct—in failing to remedy dangerous defects Defendants knew or should have known about,

---

[19] Jackie Callaway, *Kia, Hyundai CEOs refuse to attend Senate hearing to explain cause of car fires,* ABC Action News (Nov. 8, 2018, updated Dec. 10, 2018), https://www.abcactionnews.com/news/local-news/i-team-investigates/kia-hyundai-ceos-refuse-to-attend-senate-hearing-to-explain-cause-of-car-fires (last visited Mar. 1, 2019).
[20] *Id.*

COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318) - 19

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    and in actively concealing these defects even in the face of complaints and regulatory

2    investigations—consumers have been driving cars that could suddenly stall at speed or burst into

3    flames.

4          52.    Plaintiffs are skeptical that the proposed recalls can or will actually repair the

5    defects, based both on Defendants' track record of failed recall repairs for similar defects and on

6    the nature of these defects and the proposed repairs. But even if the recall is successful, Plaintiffs

7    will not be made whole for the overpayment injury suffered at the time of purchase, for the risk

8    associated with years of driving vehicles with dangerous defects, or for the inconvenience and

9    expense associated with extensive repairs. Finally, Plaintiffs believe that, as a result of

10   Defendants' conduct, the market values of the Class Vehicles have been reduced.

11         53.    Defendants' new recalls affect more than half a million vehicles on the road, and

12   are part of a lengthy string of recalls for engine fires and failures. Defendants delayed taking

13   action despite fact that they received hundreds of complaints about engine fires, despite the fact

14   that durability testing should have informed them of the defects before the Class Vehicles went

15   on sale, and despite the fact that they knew about the dangerous defect in the Soul long enough

16   ago to develop a solution for 2017 model year vehicles manufactured in 2016.[21]

## V.    CLASS ACTION ALLEGATIONS

### A.    Class Definitions

          54.    Pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure,

Plaintiffs bring this action on behalf of themselves and Nationwide Class and State Classes,

defined as:

---

[21] Tracy Samilton, *Hyundai and Kia recall more vehicles over engine fires/failures,* NPR Michigan Radio (Feb. 28, 2019), https://www.michiganradio.org/post/hyundai-and-kia-recall-more-vehicles-over-engine-firesfailures (last visited Mar. 2, 2019).

COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318) - 20

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**Nationwide Class:**

All persons or entities in the United States (including its territories and the District of Columbia) who purchased or leased a Class Vehicle.

55.     In addition to the Nationwide class, and pursuant to Federal Rules of Civil Procedure Rule 23(c)(5), Plaintiffs seek to represent the following State Classes as well as any subclasses or issue classes as Plaintiffs may propose and/or the Court may designate at the time of class certification:

**Washington State Class:**

All persons or entities in the state of Washington who purchased or leased a Class Vehicle.

**California State Class:**

All persons or entities in the state of California who purchased or leased a Class Vehicle.

56.     Excluded from the Classes are individuals who have personal injury claims resulting from the conduct and defects alleged herein; Defendants and their subsidiaries, affiliates, and officers; all persons who timely elect to exclude themselves from the Classes; and Judge to whom this case is assigned and his or her immediate family. Plaintiffs reserve the right to revise the Class definitions based on information learned through discovery.

57.     Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims regarding liability and entitlement to damages on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim. This action has been brought and may be properly maintained on behalf of the Nationwide Class and/or State Class proposed herein under Federal Rule of Civil Procedure 23.

COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318) - 21

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

58.     Plaintiffs reserve the right to modify the definition of the Nationwide and/or any State Class prior to class certification.

**B.     Class Certification Requirements**

59.     **Numerosity: Rule 23(a)(1):**  The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  Plaintiffs are informed and believe, based on available information on the volume of sales and recalls of Class Vehicles, that there are no fewer than 500,000 members of the Class. The precise number of Class members may be ascertained from Defendants' records and vehicle registration records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, social media, and published notice.

60.     **Commonality and Predominance: Rules 23(a)(2) and 23(b)(3):**  This action involves significant common questions of law and fact, which predominate over any questions affecting individual Class members, including, but not limited to:

A.     Whether Defendants engaged in the conduct alleged herein;

B.      Whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

C.     Whether the Class Vehicles have the defects alleged herein, and whether those defects constitute a safety defect;

D.      Whether Defendants knew or should have known that the Class Vehicles contained defects as alleged herein;

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

E.      Whether a reasonable consumer would consider the defects alleged herein and their consequences material to the decision to purchase or lease a Class Vehicle;

F.      When Defendants discovered, knew, or should have known of the existence of the defects alleged herein;

G.      Whether the Class Vehicles can be made to comply with applicable emissions standards if the proposed recall repairs are effectuated without substantially degrading the performance, efficiency, or advertised emissions of the Class Vehicles;

H.      Whether Plaintiffs and the other Class members overpaid for their Class Vehicles as a result of the defects and Defendants' concealment thereof;

I.      Whether Defendants had a duty to disclose the true nature of the Class Vehicles to Plaintiffs and Class members;

J.      Whether Plaintiffs suffered out-of-pocket losses as a result of the defects alleged herein and whether they will suffer out-of-pocket losses as a result of the proposed recalls;

K.      Whether Defendants omitted, concealed, and/or failed to disclose material facts about the Class Vehicles;

L.      Whether Defendants' concealment of the true nature of the Class Vehicles would have induced a reasonable consumer to act to his or her detriment by purchasing and/or leasing the Class Vehicles;

M.      Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief;

N.      Whether the remedies proposed below for each group of Class Vehicles would constitute adequate and appropriate relief for the Class;

COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318) - 23

| Year and Model | Defendants' Proposed Recall | Proposed Class Relief |
| --- | --- | --- |
| 2012-2016 Kia Soul | Reprogram catalytic converter | Buyback or, if repair is possible, recall and monetary compensation |
| 2011-2012 Kia Sportage | Repair/reseal oil pan | Recall and monetary compensation |
| 2011-2013 Hyundai Tucson | Unknown | Buyback or, if repair is possible, recall and monetary compensation |

O.     Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount; and

P.     Whether Defendants continue to unlawfully conceal and misrepresent whether additional vehicles, besides those reported in the press to date, are in fact Class Vehicles.

61.     **Typicality: Rule 23(a)(3):**  Plaintiffs' claims are typical of the claims of the Class members whom they seek to represent under Federal Rule of Civil Procedure 23(a)(3), because Plaintiffs and each Class member purchased a Class Vehicle and were similarly injured through Defendants' wrongful conduct as described above.  Plaintiffs and the other Class members suffered damages as a direct proximate result of the same wrongful practices by Defendants.  Plaintiffs' claims arise from the same practices and courses of conduct that give rise to the claims of the other Class members.  Plaintiffs' claims are based upon the same legal theories as the claims of the other Class members.

62.     **Adequacy: Rule 23(a)(4).**  Plaintiffs will fairly and adequately represent and protect the interests of the Class members as required by Federal Rule of Civil Procedure 23(a)(4).  Plaintiffs have retained counsel competent and experienced in complex class action litigation, including vehicle defect litigation and other consumer protection litigation.  Plaintiffs

intend to prosecute this action vigorously.  Neither Plaintiffs nor their counsel have interests that conflict with the interests of the other Class members.  Therefore, the interests of the Class members will be fairly and adequately protected.

63.     **Declaratory and Injunctive Relief: Rule 23(b)(2).**  Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

64.     **Superiority: Rule 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the Class to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## VI.   EQUITABLE TOLLING

**A.   Discovery Rule**

65.     Plaintiffs and Class members did not discover, and could not have discovered through the exercise of reasonable diligence, Defendants' deception concerning the defects alleged herein.

66.     Defendants' concealment was effective until a NHTSA investigation prompted by consumer complaints forced Defendants to institute the recent recall campaign.

67.     Plaintiffs and Class members could not have discovered through the exercise of reasonable diligence that Defendants were concealing the defects alleged herein until the NHTSA recall campaign revealed it to the public.

68.     Unless a class member experienced a catastrophic engine failure, Plaintiffs and class members would have no reason to discover the defects alleged herein, and even if they did experience such a failure, would have no reason to discover the existence of a widespread defect and effort to conceal it.

69.     Plaintiffs and Class members therefore did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Defendants had concealed information about defects in the Class Vehicles until shortly before this action was filed.

70.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to the Class Vehicles.

**B.   Fraudulent Concealment**

71.     All applicable statutes of limitation have also been tolled by Defendants' knowing, active and ongoing fraudulent concealment of the facts alleged herein.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

72.     Defendants concealed the defects, minimized the cause, effects, and dangers of the defects, and failed to disclose or remedy the defects. Even now, with NHTSA recalls pending, Defendants offer a fix that is almost certainly inadequate for one defect. As to another, Defendants do not even to know the cause of the defect—a defect that has existed for at least nine years and is, purportedly, to be fixed by a recall that fails to identify any available repair.

**C.     Estoppel**

73.     Defendants were and are under a continuous duty to disclose to Plaintiffs and Class members the true character, quality, and nature of the Class Vehicles, including the vehicles' defects as alleged herein, and the inevitable repairs, costs, time, and monetary damage resulting therefrom. Defendants actively concealed the true character, quality, and nature of the Class Vehicles.

74.     Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## VII.     CLAIMS FOR RELIEF

75.     California state law applies to the claims of the Nationwide Class because Defendants' United States operations are headquartered in California. Defendants HMA and KMA distribute, market, warrant, and test all Hyundai and Kia vehicles, respectively, sold or leased in the United States, including the Class Vehicles. Although these actions take place and have effects wherever in the United States the vehicles are sold, leased, registered, and operated, Defendants' operations for distributing, engineering and testing, marketing, warrantying and supervising service of the Class Vehicles are located in California, and on information and belief, many of the decisions concerning Defendants' unfair, deceptive, and unlawful conduct emanated from these California headquarters.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**COUNT I**
**FRAUD BY CONCEALMENT**
**(Common Law)**

76.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

77.     Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or alternatively, each of the State Classes, against all Defendants.

78.     The Defendants intentionally concealed, suppressed, and failed to disclose the material fact that the Class Vehicles had design and manufacturing defects that could result in sudden and catastrophic engine stalling, failure, and fire. Defendants knew or should have known the true facts, due to their involvement in the design, installation, calibration, manufacture, durability testing, and warranty service of the engines, catalytic converters, and ECU programming in the Class Vehicles. And yet, at no time did any of these Defendants reveal the truth to Plaintiffs or the Class. To the contrary, each Defendant concealed the truth, intending for Plaintiffs and the Class to rely on these omissions. Each Plaintiff and Class member purchased or leased a Class Vehicle believing, in reliance on Defendants' statements and omissions, it to be safe and free from major engine defects.

79.     A reasonable consumer would not know that the catalytic converter in Kia Soul vehicles could overheat, resulting in catastrophic engine failure and/or fire. Plaintiffs and the members of the Class did not know of the facts which were concealed from them by Defendants. Moreover, as ordinary consumers, Plaintiffs and the members of the Class did not, and could not, unravel the deception on their own.

80.     Defendants had a duty to disclose that these defects existed. Defendants had such a duty because the true facts were known and/or accessible only to them and because they knew

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

these facts were not known to or reasonably discoverable by Plaintiffs or the members of the Class unless and until the defect manifested in their personal vehicle. As alleged herein, Defendants denied and concealed the defects in the face of consumer complaints and regulatory investigations. Plaintiffs and Class members did not, and could not, unravel Defendants' deception on their own.

81.     Defendants also had a duty to disclose the true nature of these vehicles as a result of its prior recalls. By issuing recalls of certain vehicles and representing that these represented the full population of affected vehicles, Defendants led consumers and even safety regulators to believe, at least for a time, that they were remedying the engine fire problems. In fact, these recalls—in addition to being unsuccessful—failed to include hundreds of thousands of additional vehicles that suffered from similar major defects.

82.     Had the material facts been timely revealed, Plaintiffs and the Class would not have purchased the Class Vehicles, or would have paid less for them. Class Vehicles have also diminished in value as a result of Defendants' fraud. Accordingly, Defendants are liable to Plaintiffs and the members of the Class for damages in an amount to be proven at trial.

83.     Defendants' acts were committed wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights of Plaintiffs and the Class; and to enrich themselves. Their misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

84.     Plaintiffs plead this count pursuant to the laws of California, where Defendants' United States operations are headquartered, on behalf of all members of the Class. As necessary, and in the alternative, Plaintiffs may allege state subclasses, based on the residences at pertinent

times of members of the Class, to allege fraudulent concealment under the laws of states other than California.

**COUNT II**
**IMPLIED AND WRITTEN WARRANTY**
**Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301 *et seq.*)**

85.     Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

86.     Plaintiffs assert this cause of action on behalf of themselves and the other members of the Nationwide Class.

87.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 15 U.S.C. § 2310(d).

88.     The Class Vehicles are a "consumer product," as that term is defined in 15 U.S.C. § 2301(1).

89.     Plaintiffs and Class members are "consumers," as that term is defined in 15 U.S.C. § 2301(3).

90.     Each Defendant is a "warrantor" and "supplier" as those terms are defined in 15 U.S.C. § 2301(4) and (5).

91.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied or written warranty.

92.     As described herein, Defendants provided Plaintiffs and Class members with "implied warranties" and "written warranties" as those terms are defined in 15 U.S.C. § 2301.

93.     Defendants have breached these warranties. The Class Vehicles are defective, as described above, which resulted in the problems and failures also described above.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

94.     By Defendants' conduct as described herein, including knowledge of the defects inherent in the vehicles and Defendants' action, and inaction, in the face of the knowledge, Defendants have failed to comply with their obligations under their written and implied promises, warranties, and representations.

95.     In their capacity as warrantors, and by the conduct described herein, any attempts by Defendants to limit the implied warranties in a manner that would exclude coverage of the defects is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective the software and supporting systems is null and void.

96.     All jurisdictional prerequisites have been satisfied.

97.     Plaintiffs and members of the Class are in privity with Defendants in that they purchased Class Vehicles from Defendants via their agents.

98.     As a result of Defendants' breach of warranties, Plaintiffs and Class members are entitled to revoke their acceptance of the vehicles, obtain damages and equitable relief, and obtain costs pursuant to 15 U.S.C. § 2310.

## COUNT III
## VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

99.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

100.    Plaintiffs bring this action on behalf of themselves and the Nationwide Class against all Defendants or, in the alternative, Plaintiff Parker brings this claim on behalf of the California State Class against all Defendants.

101.    California Business and Professions Code § 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices."

COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318) - 31

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

102.     Defendants have engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL by knowingly and intentionally concealing the serious defects in the Class Vehicles from Plaintiffs and Class members, as well as the risks of serious harm and monetary damage stemming therefrom. This information was material to Plaintiffs and Class members, just as it would be to any reasonable consumer.

103.     Defendants were in a superior position to know the true nature of the Class Vehicles and Plaintiffs and Class members could not discover the true facts about the defects through ordinary and reasonable diligence. Defendants also had a duty to disclose the defects because they constitute a safety issue for drivers and passengers of Class Vehicles.

104.     Defendants' failure to disclose these facts violated the UCL, breached these duties to disclose, and injured Plaintiffs and Class members. Plaintiffs and Class members could not reasonably have avoided these injuries.

105.     These acts were likely to deceive the public, and did in fact deceive Plaintiffs, about material information.

106.     Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the Class any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Bus. & Prof. Code § 3345; and for such other relief set forth below.

## COUNT IV
## VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW
### (Cal. Bus. & Prof. Code § 17500, *et seq.*)

107.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

108.     Plaintiffs bring this action on behalf of themselves and the Nationwide Class against all Defendants or, in the alternative, Plaintiff Parker brings this claim on behalf of the California State Class against all Defendants.

109.     California Business & Professions Code § 17500 provides that "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

110.     Defendants caused to be made and/or disseminated untrue or misleading statements throughout California and the United States, which were known or should have been known to Defendants to be untrue and misleading to consumers, including Plaintiffs and Class members.

111.     This conduct occurred in the course of Defendants' businesses, and is part of a continuing pattern or generalized course of conduct in California and throughout the United States.

112.     Defendants' conduct violated the California False Advertising law because their misleading omissions concerning the safety and functionality of Class Vehicles were material and likely to deceive a reasonable consumer.

113.     Plaintiffs and the other Class Members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. In purchasing or leasing Class Vehicles, Plaintiffs and Class members relied on Defendants' misrepresentations and/or omissions concerning the safety and reliability of the Class Vehicles. These representations were untrue because the Class Vehicles contained serious

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

safety defects that could result in catastrophic engine failure, engine stalls, and fires. Had Plaintiffs and Class members known this, they would not have purchased or leased Class Vehicles at all, or would have paid significantly less for them. Plaintiffs and other Class members overpaid at the time of purchase for vehicles that were not what they bargained for, and did not receive and still have not received the benefit of their bargain.

114.    Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and Class members any money Defendants acquired by these practices, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**COUNT V**
**VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT**
**(Cal. Civ. Code § 1750 *et seq.*)**

115.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

116.    Plaintiffs bring this action on behalf of themselves and the Nationwide Class against all Defendants or, in the alternative, Plaintiff Parker brings this claim on behalf of the California State Class against all Defendants.

117.    Defendants are "person[s]" under Cal. Civ. Code § 1761(c).

118.    Plaintiffs and Class members are "consumers," as defined by Cal. Civ. Code § 1761(d), who purchased or leased one or more Class Vehicles.

119.    The California Legal Remedies Act ("CLRA") prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a). Defendants have

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

engaged in unfair or deceptive acts or practices that violated Cal. Civ. Code § 1750, *et seq.*, as described above and below by, at a minimum, representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

120.    In the course of their business, Defendants intentionally or negligently concealed and suppressed material facts concerning the serious and dangerous engine defects affecting the Class Vehicles. The Defendants concealed the truth about the defects and failed to make any adequate effort to remedy them despite the fact that they knew or should have known about them for years.

121.    Plaintiffs and Class members had no way of discerning that Defendants had falsely and deceptively concealed these latent defects unless and until the defects manifested themselves by causing a catastrophic and sudden engine failures, stalls, or fires. Plaintiffs and Class members could not unravel this deception on their own until the announcement—too late—of the inadequate proposed recall described above. For the Hyundai Tucson, Defendants do not even know the cause or extent of the defect and have no proposed repair despite announcing a recall. For the Kia Soul, the proposed recall is likely to be inadequate, if not impossible, because it requires reprogramming an emissions component without regulatory certification.

122.    Defendants' actions constitute a violation of the CLRA. Defendants knew or should have known the true nature of these vehicles as a result of pre-sale durability testing, of complaints and warranty claims by consumers to Defendants directly as well as to NHTSA, and

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

of its previous failed recalls of related engines for similar defects.

123.    Defendants owed Plaintiffs a duty to disclose the defects and their resulting safety risks because they:

        A.    Possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States with dangerous defects;

        B.    Intentionally concealed the foregoing from regulators, Plaintiffs, and Class members; and/or

        C.    Made incomplete representations, via earlier recalls of related vehicles for similar defects, concerning the safety and presence of defects in the Class Vehicles, while actually purposefully withholding material facts from Plaintiffs that contradicted these representations.

124.    Defendants' unfair and deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety, roadworthiness, and value of the Class Vehicles.

125.    Plaintiffs and Class members have suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment of and failure to disclose material information. Plaintiffs and Class members who purchased or leased Class Vehicles would not have done so at all, or would have paid significantly less for them, if their true nature was known.

126.    Meanwhile, Defendants had an ongoing duty to all of their customers to refrain from unfair and deceptive practices under the CLRA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

127.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

128.    Under Cal. Civ. Code § 1780(a), Plaintiffs and the California Class seek monetary relief against Defendants measured as the overpayment for their vehicles caused by Defendants' violations of the CLRA as alleged herein.

129.    Plaintiffs also seek punitive damages against Defendants because they carried out reprehensible conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs and the California Class to potential cruel and unjust hardship as a result. Defendants intentionally and willfully deceived Plaintiffs on life-or-death matters, and concealed material facts that only Defendants knew. Defendants' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages under Cal. Civ. Code § 3294.

130.    Plaintiffs further seek an order enjoining Defendants' unfair or deceptive acts or practices, restitution, punitive damages, costs of court, attorneys' fees under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

131.    Plaintiffs, through undersigned counsel, have provided Defendants notice of their violations of the CLRA in compliance with Cal. Civ. Code § 1782(a).

## COUNT VI
## VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTIES
### (Cal. Civ. Code §§ 1791.1 & 1792)

132.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

133.    Plaintiff Parker brings this action on behalf of herself and the California State Class against all Defendants.

COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318) - 37

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

134.     Plaintiffs and the other Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

135.     The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

136.     Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

137.     Defendants impliedly warranted to Plaintiffs and the other Class members that its their Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792, however, the Class Vehicles do not have the quality that a buyer would reasonably expect and are not fit for the ordinary purposes for which they were sold because the Class Vehicles and their engines contained inherent defects at the time of sale. These defects can cause the Class Vehicles to suffer catastrophic, sudden engine failure, stalls, and fires.

138.     The Class Vehicles are therefore not fit for the purpose of providing safe and reliable transportation. Defendants knew or should have known the use for which the Class Vehicles were purchased—namely, providing safe and reliable transportation. Defendants impliedly warranted that the Class Vehicles—and their engines—manufactured and distributed by Defendants were of merchantable quality and fit for such use.

139.     Because the Class Vehicles are defective, Defendants' actions breached the implied warranty that the Class Vehicles were of merchantable quality and fit for the use for which they were purchased and violated the Song-Beverly Warranty Act.

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# COUNT VII
## VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT
### (Wash. Rev. Code Ann. §§ 19.86.010, *et seq.*)

140.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

141.    Plaintiff Short brings this action on behalf of herself and the Washington State Class.

142.    Defendants, Plaintiff Short, and members of the Washington State Class are "persons" within the meaning of Wash. Rev. Code § 19.86.010(2).

143.    Defendants are engaged in "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

144.    The Washington Consumer Protection Act ("Washington CPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

145.    In the course of their business, Defendants intentionally or negligently concealed and suppressed material facts concerning the serious and dangerous engine defects affecting the Class Vehicles. The Defendants concealed the truth about the defects and failed to make any effort to remedy them despite the fact that they knew or should have known about them for years.

146.    Plaintiffs and Class members had no way of discerning that Defendants had falsely and deceptively concealed these latent defects unless and until the defects manifested themselves by causing catastrophic and sudden engine failures, stalls, or fires. Plaintiffs and Class members could not unravel this deception on their own until the announcement—too late—of the inadequate proposed recall described above. For the Hyundai Tucson, Defendants do

COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318) - 39

not even know the cause or extent of the defect and have no proposed repair despite announcing a recall. For the Kia Soul, the proposed recall is likely to be inadequate, if not impossible, because it requires reprogramming an emissions component without regulatory certification.

147.    Defendants' actions constitute a violation of the Washington CPA. Defendants knew or should have known the true nature of these vehicles as a result of pre-sale durability testing, of complaints and warranty claims by consumers to Defendants directly as well as to NHTSA, and of its previous failed recalls of related engines for similar defects.

148.    Defendants owed Plaintiffs a duty to disclose the defects and their resulting safety risks because they:

    A.    Possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States with dangerous defects;

    B.    Intentionally concealed the foregoing from regulators, Plaintiffs, and Class members; and/or

    C.    Made incomplete representations, via earlier recalls of related vehicles for similar defects, concerning the safety and presence of defects in the Class Vehicles, while actually purposefully withholding material facts from Plaintiffs that contradicted these representations.

149.    Defendants' unfair and deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety, roadworthiness, and value of the Class Vehicles.

150.    Plaintiffs and Class members have suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment of and failure to disclose material information. Plaintiffs and Class members who purchased or leased Class Vehicles would not

COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318) - 40

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

have done so at all, or would have paid significantly less for them, if their true nature was known.

151.    Meanwhile, Defendants had an ongoing duty to all of their customers to refrain from unfair and deceptive practices under the Washington CPA in the course of their business.

152.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

153.    Pursuant to Wash. Rev. Code § 19.86.090, Plaintiff and the Washington Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Washington CPA. Because Defendants' actions were willful and knowing, Plaintiff's damages should be trebled. *Id.*

## COUNT VIII
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Wash. Rev. Code Ann. §§ 62A.2-314 and 62A.2A-212)

154.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

155.    Plaintiff Short brings this Count on behalf of herself and the Washington State Class against all Defendants.

156.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Wash. Rev. Code § 62A.2-104(1) and 62A.2A-103(1)(t), and "sellers" of motor vehicles under § 2.103(a)(4).

157.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Wash. Rev. Code § 62A.2A-103(1)(p).

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

158.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Wash. Rev. Code §§ 62A.2-105(1) and 62A.2A-103(1)(h).

159.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Wash. Rev. Code §§ 62A.2-314 and 62A.2A-212.

160.    Defendants sold and/or leased Class Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The vehicles were not in merchantable condition because they were not in merchantable condition or fit for the ordinary purpose for which they were sold—namely, providing safe and reliable transportation.

161.    Defendants' breach of the implied warranty of merchantability caused damage to the Plaintiff and Washington State Class members who purchased or leased the defective vehicles. The amount of damages due will be proven at trial.

## COUNT IX
## WASHINGTON "LEMON LAW"
### (Wash. Rev. Code Ann. § 19.118.005, *et seq.*)

162.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

163.    Plaintiff Short brings this Count on behalf of herself and the Washington State Class against all Defendants.

164.    Plaintiff and the Washington Class own or lease "new motor vehicles" within the meaning of Wash. Rev. Code § 19.118.021(12), because these vehicles are self-propelled primarily designed for the transportation of persons or property over the public highways and were originally purchased or leased at retail from a new motor vehicle dealer or leasing company

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

in Washington. These vehicles do not include vehicles purchased or leased by a business as part of a fleet of ten or more vehicles at one time or under a single purchase or lease agreement or those portions of a motor home designated, used, or maintained primarily as a mobile dwelling, office, or commercial space.

165.    Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of Wash. Rev. Code § 19.118.021(8) because they are in the business of constructing or assembling new motor vehicles or are engaged in the business of importing new motor vehicles into the United States for the purpose of selling or distributing new motor vehicles to new motor vehicle dealers.

166.    Plaintiff and the Washington Class are "consumers" within the meaning of Wash. Rev. Code § 19.118.021(4) because they entered into an agreement or contract for the transfer, lease, or purchase of a new motor vehicle, other than for purposes of resale or sublease, during the eligibility period as defined by Wash. Rev. Code § 19.118.021(6).

167.    The Class Vehicles did not conform to their implied or express warranties as defined by Wash. Rev. Code § 19.118.021(22), during the "eligibility period," defined by Wash. Rev. Code § 19.118.021(6), or the coverage period under the applicable written warranty, because they contained dangerous inherent defects. These defects substantially impaired the use, market value, and/or safety of the Class Vehicles.

168.    Defendants had actual knowledge of the conformities during warranty periods. But the nonconformities continued to exist throughout this term, as they have not been fixed. Plaintiff and class members are excused from notifying Defendants of the nonconformities because they were already fully aware of the problem and any repair attempt is futile.

COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318) - 43

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

169.    Defendants have had a reasonable opportunity to cure the nonconformities because of their actual knowledge of, creation of, and attempt to conceal the nonconformities, but have not done so as required under Wash. Rev. Code § 19.118.031.

170.    For vehicles purchased, Plaintiff and the Washington Class demand a full refund of the contract price, all collateral charges, and incidental costs. Wash. Rev. Code § 19.118.041(1)(b). For vehicles leased, Plaintiff and the Washington Class demand all payments made under the lease including but not limited to all lease payments, trade-in value or inception payment, security deposit, and all collateral charges and incidental costs. The Plaintiff and the Washington Class also ask to be relieved of any future obligation to the lessor or lienholder. *Id.* Plaintiff and the Washington Class reject an offer of replacement and will retain their vehicles until payment is tendered.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the members of the Nationwide Class and State Classes, respectfully request that the Court grant certification of the proposed Nationwide Class and State Classes, including the appointment of Plaintiffs as named representatives thereof, the appointment of the undersigned as Class Counsel, and the designation of any appropriate issue classes and/or subclasses, under the applicable provisions of Fed. R. Civ. P. 23, and that the Court enter judgment in their favor and against Defendants, as follows:

A.    A declaration that any applicable statutes of limitations are tolled due to the fraudulent concealment alleged in this complaint, and that Defendants are estopped from relying on any statutes of limitation in defense;

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

B.      An order enjoining Defendants from continuing the unlawful, unfair, and fraudulent business practices alleged herein;

C.      Appropriate injunctive and equitable relief requiring Defendants to repair and/or buy back all Class Vehicles, and to fully reimburse and make whole all Class members for all costs and economic losses associated therewith;

D.      Damages, including actual, compensatory, restitution, incidental, consequential, costs, multiple or punitive under applicable law, and disgorgement in an amount to be determined at trial;

E.      A determination that Defendants are financially responsible for all Class notice and administration of Class relief;

F.      An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

G.      An award of costs and attorneys' fees;

H.      Leave to amend this Complaint to conform to the evidence produced in discovery and at trial; and

I.      Such other or further relief as the Court may deem appropriate, just, and equitable.

## IX.    DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.


DATED this day of March, 2019.

KELLER ROHRBACK L.L.P.


By *s/ Lynn Lincoln Sarko*
By *s/ Gretchen Freeman Cappio*
By *s/ Ryan McDevitt*

    Lynn Lincoln Sarko #16569
    Gretchen Freeman Cappio #29576
    Ryan McDevitt #43305
    1201 Third Avenue, Suite 3200
    Seattle, WA 98101-3052
    (206) 623-1900
    Fax (206) 623-3384
    lsarko@kellerrohrback.com
    gcappio@kellerrohrback.com
    rmcdevitt@kellerrohrback.com

    *Attorneys for Plaintiffs*

COMPLAINT—CLASS ACTION
(Case No. 2:19-cv-318) - 46

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384