1

The Honorable James L. Robart

2

3

4

5

6

7

8

9       **UNITED STATES DISTRICT COURT**
        **WESTERN DISTRICT OF WASHINGTON**
10                    **AT SEATTLE**

11  | LINDA SHORT, OLIVIA PARKER, | No. 2:19-cv-00318-JLR |
    | ELIZABETH SNIDER, and JAMES | |
12  | TWIGGER, on behalf of themselves and all | **DEFENDANTS MOTION TO DISMISS** |
    | others similarly situated, | **PLAINTIFFS' AMENDED** |
13  | Plaintiffs, | **CONSOLIDATED CLASS ACTION** |
    | | **COMPLAINT** |
14  | vs. | |
    | HYUNDAI MOTOR AMERICA, INC., | NOTE ON MOTION CALENDAR: November |
15  | HYUNDAI MOTOR COMPANY, KIA | 1, 2019 |
    | MOTORS AMERICA, INC., and KIA | |
16  | MOTORS CORPORATION, | ORAL ARGUMENT REQUESTED |
    | Defendants. | |

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS
(2:19-cv-00318)

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................. 1

BACKGROUND ......................................................................................................... 3

LEGAL STANDARD .................................................................................................. 6

I.    PLAINTIFFS' FRAUD-BASED CLAIMS FAIL ............................................ 6

      A.    Plaintiffs' Have Not Alleged Any Affirmative Misrepresentations Or
            Deceptive Acts ...................................................................................... 7

      B.    Plaintiffs' Conclusory References To Fraudulent Omissions Do Not Suffice .......... 9

      C.    Plaintiffs Fail To Allege Reliance ...................................................... 10

      D.    Plaintiffs Fail To Allege Defendants Knew Of Any Purported Defects ................ 13

II.   PLAINTIFFS SHORT, PARKER, SNIDER, AND JENNIFER AND ANTHONY
      DIPARDO LACK ARTICLE III STANDING ............................................... 15

III.  PLAINTIFF RONFELDT'S ODTPA AND OCSPA CLAIMS FAIL ............. 16

      A.    Plaintiff Ronfeldt Lacks Standing To Bring a ODTPA Claim ............. 16

      B.    Plaintiff Ronfeldt's OCSPA Claim Fails to Allege Defendants Had Notice ........ 19

IV.   PLAINTIFF TWIGGER FAILS TO ALLEGE NOTICE UNDER THE WVCCPA ........ 20

V.    PLAINTIFFS' CLAIMS FOR BREACH OF IMPLIED WARRANTY OF
      MERCHANTABILITY FAILS .................................................................. 21

      A.    Plaintiffs Fail To Plead Sufficient Privity With Defendants ................ 21

      B.    Plaintiffs Short, Parker, DiPardo, and Snider Have Not Alleged Any Facts
            Indicating Their Cars Are Unfit .......................................................... 22

VI.   PLAINTIFFS' MAGNUSON-MOSS WARRANTY ACT CLAIMS FAIL ..... 23

      A.    Plaintiffs Plead No Viable State Law Warranty Claims ...................... 23

      B.    The Amended Complaint Does Not Name 100 Plaintiffs ..................... 23

VII.  PLAINTIFF PARKER'S SONG-BEVERLY ACT CLAIM FAILS ................ 24

MOTION TO DISMISS
(2:19-cv-00318) -i-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, Washington 98101-4123
(206) 905-7000

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adams v. Antonelli College*,
  304 F. Supp. 3d 656 (S.D. Ohio 2018).................................................................17, 18, 19
*Allen v. Andersen Windows, Inc.*,
  913 F. Supp. 2d 490 (S.D. Ohio 2012)................................................................... 17
*Anderson v. Hyundai Motor Company Ltd.*,
  2014 WL 12579305 (C.D. Cal. July 24, 2014) ...................................................... 16
*Andrew v. Power Marketing Direct, Inc.*,
  978 N.E.2d 974 (Ohio Ct. App. 2012) ................................................................... 11
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................. 6
*Baba v. Hewlett-Packard Co.*,
  2010 WL 2486353 (N.D. Cal. June 16, 2010)................................................. 7, 9, 13
*Beattie v. CMH Homes, Inc.*,
  No. CIV.A. 3:12-2528, 2015 WL 566616 (S.D.W. Va. Feb. 10, 2015) .................... 13
*Belmont v. MB Inv. Partners, Inc.*,
  708 F.3d 470 (3d Cir. 2013) ................................................................................... 13
*Blankenship v. CFMOTO Powersports, Inc., Ohio Misc.2d*,
  5, 16 (Jan. 24, 2011)............................................................................................... 19
*Bower v. IBM*,
  495 F. Supp. 2d 837 (S.D. Ohio 2007)............................................................17, 18, 19
*Brown v. Hyundai Motor America*,
  No. 18-11249, 2019 WL 4126710 (D.N.J. Aug. 30, 2019).................................... 16
*Cadena v. Am. Honda Motor Co.*,
  No. CV184007MWFPJWX, 2019 WL 3059931 (C.D. Cal. May 29, 2019) ........... 23
*Cahen v. Toyota Motor Corp.*,
  717 Fed. Appx. 720 (9th Cir. 2017) ....................................................................... 16
*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) ......................................................................... 21, 23
*Cousineau v. Microsoft Corp.*,
  992 F. Supp. 2d 1116 (W.D. Wash. 2012) ............................................................. 12
*Davenport v. Medtronic, Inc.*,
  302 F. Supp. 2d 419 (E.D. Pa. 2004) ..................................................................... 22
*Davidson v. Apple, Inc.*,
  2017 WL 976048 (N.D. Cal. Mar. 14, 2017) ...............................................9, 10, 12
*Dawson v. Blockbuster, Inc.*,
  No. 86451, 2006 WL 1061769 (Ohio App. Mar. 16, 2006)............................... 17, 18
*Die-Mension Corp. v. Dun & Bradstreet Credibility Corp.*,
  2015 WL 5307472 (W.D. Wash. Sept. 10, 2015).................................................. 17
*Die-Mension Corp. v. Dun & Bradstreet Credibility Corp.*,
  No. C14-855 TSZ, 2015 Wl 5307472 (W.D. Wash. Sept. 10, 2015) ..................... 17
*Doe v. SuccessfulMatch.com*,
  70 F. Supp. 3d 1066 (N.D. Cal. Sept. 30, 2014)............................................... 10, 12
*First Choice Fed. Credit Union v. Wendy's Co.*,
  No. CV 16-506, 2017 WL 9487086 (W.D. Pa. Feb. 13, 2017)............................... 11
*Gibbs v. Ernst*,
  538 Pa. 193, 647 A.2d 882 (Penn. 1994) ............................................................... 11
*Grodzitsky v. Am. Honda Motor Co.*,
  No. 2:12-cv-1142-SVW-PLA, 2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ........... 14

*Hamilton v. Ball*,
2014 Ohio 1118, 7 N.E.3d 1241 (Ohio App. 4 Dist.) .......................................... 17, 18

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
105 Wash. 2d 778 (1986) ............................................................................................ 10

*Hoey v. Sony Electronics, Inc.*,
515 F. Supp. 2d 1099 (N.D. Cal. 2007) .................................................................. 9, 10

*Hunt v. U.S. Tobacco Co.*,
538 F.3d 217 (3d Cir. 2008) ........................................................................................ 11

*Ice v. Hobby Lobby Stores, Inc.*,
No. 1:14CV744, 2015 WL 5731290 (N.D. Ohio Sept. 29, 2015) ............................... 20

*Iceberg v. DSHS/DVR*,
No. 17-35312, 2018 WL 4904818 (9th Cir. Apr. 17, 2018) .......................................... 6

*Iceberg v. Martin*,
No. C15-1232JLR, 2017 WL 396438 (W.D. Wash. Jan. 30, 2017) ............................. 6

*In re MyFord Touch Consumer Litig.*,
291 F.Supp.3d 936 (N.D. Cal. 2018) .......................................................................... 24

*In re Porsche Cars N. Am., Inc.*,
880 F. Supp. 2d 801 (S.D. Ohio 2012) ........................................................................ 17

*Johnson v. Ford Motor Co.*,
No. 3:13-6529, 2015 WL 7571841 (S.D.W. Va. Nov. 24, 2015) ............................... 21

*Johnson v. Microsoft Corp.*,
155 Ohio App. 3d 626 (2003) ...................................................................................... 20

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ........................................................................7, 8, 9, 10

*Keegan v. Am. Honda Motor Co.*,
838 F. Supp. 2d 929 (C.D. Cal. 2012) ........................................................................ 23

*Kent v. Hewlett-Packard Co.*,
2010 WL 2681767 (N.D. Cal. July 6, 2010) ................................................................. 7

*Kowalsky v. Hewlett-Packard Co.*,
771 F. Supp. 2d 1156 (N.D. Cal. 2011) ...................................................................... 13

*Lassen v. Nissan North America, Inc.*,
211 F. Supp. 3d 1267 (C.D. Cal. 2016) ...................................................................... 16

*Lengyel v. Lint*,
167 W. Va. 272 (1981) ................................................................................................ 11

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) .................................................................................................... 18

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003) .................................................................................... 15

*Lohr v. Nissan N. Am., Inc.*,
No. C16-1023RSM, 2017 WL 1037555 (W.D. Wash. Mar. 17, 2017) ...................... 21

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .................................................................................................... 15

*MacDougall v. Am. Honda Motor Co., Inc.*,
No. SACV 17-01079 AG, 2017 WL 8236359 (C.D. Cal. Dec. 4, 2017) ................... 23

*MacRae v. HCR Manor Care Services*,
No. SACV 14-0715-DOC, 2014 WL 3605893 (C.D. Cal. July 21, 2014) ................. 10

*Marolda v. Symantec Corp.*,
672 F. Supp. 2d 992 (N.D. Cal. 2009) ....................................................................... 8, 9

*McCoy v. S. Energy Homes, Inc.*,
No. CIV.A. 1:09-1271, 2012 WL 1409533 (S.D.W. Va. Apr. 23, 2012) ................... 21

*McKinney v. Bayer Corp.*,
744 F. Supp. 2d 733 (N.D. Ohio 2010) ...................................................................... 18

*Michelson v. Volkswagen Aktiengesellschaft*,
99 N.E.3d 475 (Ohio App. 2018) .....................................................................17, 18, 20

*Minnick v. Clearwire US, LLC*,
   683 F. Supp. 2d 1179 (W.D. Wash. 2010) ..............................................................6, 8, 11, 12
*Moodie v. Remington Arms Co., LLC.*,
   No. C13-0172-JCC, 2013 WL 12191352 (W.D. Wash. Aug. 2, 2013) .................................. 23
*Muniz v. Microsoft Corp.*,
   No. C10-0717-JCC, 2010 WL 4482107 (W.D. Wash. Oct. 29, 2010) .................................... 11
*Nelson v. Nissan N. Am., Inc.*,
   894 F. Supp. 2d 558 (D.N.J. 2012) ...................................................................................... 18
*Opperman v. Path, Inc.*,
   87 F. Supp. 3d 1018 (N.D. Cal. 2014) ............................................................................ 10, 11
*Patterson v. RW Direct, Inc.*,
   No. 18-cv-00055-VC, 2018 WL 6106379 (N.D. Cal. Nov. 21, 2018) ................................... 23
*Pattie v. Coach, Inc.*,
   29 F. Supp. 3d 1051 (N.D. Ohio 2014) ................................................................................ 19
*Pence v. Andrus*,
   586 F.2d 733 (9th Cir. 1978) ............................................................................................... 15
*Philips v. Philip Morris Companies Inc.*,
   290 F.R.D. 476 (N.D. Ohio 2013) ....................................................................................... 18
*Phillips v. Philip Morris Companies Inc.*,
   290 F.R.D. 476 (N.D. Ohio 2013) ....................................................................................... 17
*POCO, LLC v. Farmers Crop Ins. All., Inc.*,
   712 F. App'x 617 (9th Cir. 2017) ......................................................................................... 13
*Punian v. Gillette Co.*,
   No. 14-CV-05028-LHK, 2015 WL 4967535 (N.D. Cal. Aug. 20, 2015) ................................ 13
*Raab v. Smith & Nephew, Inc.*,
   150 F. Supp. 3d 671 (S.D.W. Va. 2015) .............................................................................. 22
*Robinson Helicopter Co., Inc. v. Dana Corp.*,
   34 Cal.4th 979, 22 Cal.Rptr.3d 352, 102 P.3d 268 (2004) ..................................................... 11
*Savett v. Whirlpool Corp.*,
   No. 12 CV 310, 2012 WL 3780451 (N.D. Ohio Aug. 31, 2012) ........................................... 22
*Schumacher v. State Auto. Mut. Ins. Co.*,
   47 F. Supp. 3d 618 (S.D. Ohio 2014) .................................................................................. 17
*Segal Co. (E. States) v. Amazon.Com*,
   280 F. Supp. 2d 1229 (W.D. Wash. 2003) ......................................................................... 7, 9
*Seldon v. Home Loan Servs., Inc.*,
   647 F. Supp. 2d 451 (E.D. Pa. 2009) ............................................................................... 8, 11
*Sindell v. Fifth Third Bank*,
   No. 1:18 CV 479, 2019 WL 3318571 (N.D. Ohio Jan. 24, 2019) .................................... 17, 18
*Snider v. Hyundai Motor America, Inc.*,
   Case No. 2:19-cv-00371 (W.D. Wash.), Dkt. No. 1 .................................................................. 4
*In re Sony Grand Wega KDF-E a10/a20 Series Rear Projection*
   *HDTV Television Litig.* ("*Sony*"), 758 F. Supp. 2d 1077, 1086-7 (S.D. Cal. 2010) ..................... 6
*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ....................................................................................................... 15
*Stanley v. Huntington Nat. Bank*,
   No. 1:11CV54, 2012 WL 254135 (N.D.W. Va. Jan. 27, 2012),
   aff'd, 492 F. App'x 456 (4th Cir. 2012) ................................................................................ 20
*Tallmadge v. Aurora Chrysler Plymouth, Inc.*,
   25 Wash. App. 90 (1979) ..................................................................................................... 22
*Tex Enterprises, Inc. v. Brockway Standard, Inc.*,
   149 Wash. 2d 204 (2003) ..................................................................................................... 21
*Traxler v. PPG Indus., Inc.*,
   158 F. Supp. 3d 607 (N.D. Ohio 2016) ................................................................................ 21
*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ............................................................................................... 7

QUINN EMANUEL URQUHART & SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, Washington 98101-4123
(206) 905-7000

*Victorino v. FCA US LLC*,
   326 F.R.D. 282 (S.D. Cal. 2018) ............................................................................ 24
*White v. Wyeth*,
   227 W. Va. 131, 705 S.E.2d 828 (2010) .............................................................. 10
*Yocono's Rest., Inc. v. Yocono*,
   100 Ohio App. 3d 11 (Ohio App. Ct. 1994) .......................................................... 18

## **Statutes**

15 U.S.C.A. § 2310 ......................................................................................................... 23
15 U.S.C. § 2310(d)(1) .................................................................................................... 23
Cal. Civ. Code § 1770 ..................................................................................................... 12
Cal. Civ. Code § 1791 ..................................................................................................... 24
Cal. Civ. Code § 1792 ..................................................................................................... 21
Cal. Civ. Code § 1795.5 .................................................................................................. 24
Fed. R. Civ. P. 9(b) ................................................................................................... passim
Ohio Rev.Code. § 1345.05 .............................................................................................. 20
Ohio Rev.Code. § 1345.09 .............................................................................................. 19
Ohio Rev.Code. § 4165.02 ................................................................................................ 8
W. Va. Code Ann. § 46A-6-106 ...................................................................................... 20

MOTION TO DISMISS
(2:19-cv-00318) -v-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, Washington 98101-4123
(206) 905-7000

1    Defendants Hyundai Motor America, Inc. ("HMA"), Hyundai Motor Company ("HMC"),

2  Kia Motors America, Inc. ("KMA"), and Kia Motor Company ("KMC,") (collectively

3  "defendants") move under Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), and 12(b)(6) to

4  dismiss the claims identified below in plaintiffs' Amended Consolidated Class Action Complaint

5  (Dkt. 42) ("Amended Complaint").  Defendants request oral argument on this motion.  It is made

6  on the grounds that certain plaintiffs lack standing and each purported claims fails to state a claim

7  upon which relief can be granted.

8                                        **Preliminary Statement**

9    Plaintiffs' Amended Complaint is a fraud case absent any misrepresentation, and a breach

10  of warranty case without any breach.  Instead, plaintiffs' allegations reflect that defendants

11  proactively and consistently provided support and remedies to customers who owned those

12  vehicles which might be affected by an engine-related issue—above and beyond its contractual

13  warranty obligations—and are now being sued because they did not extend the same extraordinary

14  support to plaintiffs.  Indeed, only *two* of the seven named plaintiffs allege to have even

15  experienced an engine-related issue with their vehicles, one of whom apparently had the engine

16  replaced and does not allege further performance issues.

17    The public record demonstrates that defendants have provided support and remedies to

18  customers whose vehicles might have been affected by one of the engine-related issues plaintiffs

19  identify.  Specifically, in 2015, Hyundai Motor America, Inc. ("HMA") and Hyundai Motor

20  Company, Ltd ("HMC") (together "Hyundai") became aware of connecting rod bearing issues

21  affecting some 2011-2012 Sonata vehicles manufactured at Hyundai Motor Manufacturing

22  Alabama.[1]  In September 2015, HMA conducted a recall in conjunction with the National

23  _____

24    [1]  Plaintiffs repeatedly state throughout the Amended Complaint that defendants had been
      aware of certain defects "for years" but provide no well-founded allegations.  Plaintiffs link to an

25  article from 2005 that discusses the opening of a "Proving Ground" facility where defendants'
    conduct "designing, testing, and building" of certain Hyundai and Kia products.  *See* Compl. ¶ 2

26  (https://www.hyundainews.com/en-us/releases/393).  Nothing in the article suggests defendants
    were aware of the rod bearing issues affecting some of defendants' vehicles before 2015 when

27  Hyundai learned of the issues and issued recalls.

28

1  Highway Traffic Safety Administration, offering free inspections for all 2011-2012 Sonata

2  vehicles and replacement of any engines that exhibited a connecting rod lubrication issue.  HMA

3  also voluntarily extended the warranties for those vehicles and offered to reimburse customers

4  who previously paid for such repairs.  After continued monitoring, HMA extended the recall in

5  March 2017 to 2013-2014 Sonata and Santa Fe vehicles.

6  In 2016, Kia Motors America ("KMA") similarly became aware of connecting rod bearing

7  issues affecting *some* 2011-2014 model years of the Kia Optima, Sorento, and Sportage.  KMA

8  voluntarily extended the warranties for these vehicles in mid-2016 and offered to reimburse

9  customers who previously paid for such repairs.  KMA supplemented those actions on March 31,

10  2017, by conducting a recall in conjunction with NHTSA.

11  Defendants continued to monitor the field data concerning these issues, including vehicles

12  not subject to the prior recalls.  Although overall warranty claims rates were still very low, in

13  February 2019, defendants proactively launched additional recalls covering certain Kia Soul and

14  Hyundai Tucson vehicles equipped with other engine types for other technical reasons.  Ongoing

15  investigation since then, in conjunction with NHTSA, has not warranted additional recalls.

16  Here, plaintiffs allege different types of defects, with different types of engines, in different

17  model year vehicles.  Lacking any factual connection between their vehicles' issues and those

18  addressed by the pre-2019 remedial programs, plaintiffs have summarily, and illogically,

19  concluded that their vehicles should also have been subject to the earlier recalls—and that the

20  defendants should compensate them for illusory injuries they have purportedly suffered despite

21  enjoying full use of their vehicles.[2]

22  Consistent with a complaint based largely on surmise, each of the plaintiffs' claims suffers

23  insurmountable pleading holes.  Most significantly, the fraud based-allegations fail because

24  plaintiffs do not identify any actionable fraud-based affirmative misrepresentations by the

25  defendants, or any material omissions of fact by the defendants of which they were or should have

26  been aware.  As to the breach of warranty claims, plaintiffs present no factual support for their

27

28

---

[2]  Five out of the seven plaintiffs do not allege having experienced any "defect" related issue.

MOTION TO DISMISS
(2:19-cv-00318) -2-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, Washington 98101-4123
(206) 905-7000

assertion that either their warranties were breached or, even more significantly, that there has been any class-wide breach of defendants' warranty repair obligations.  Plaintiffs' remaining claims fail for various additional reasons detailed in this motion.

## Background

**Plaintiff Short's Alleged Experiences With Her 2013 Hyundai Tucson.**  Plaintiff Linda Short leased a new 2013 Hyundai Tucson on March 30, 2013, from Hyundai of Kirkland in Kirkland, Washington, which she bought when the lease ended.  (Amended Complaint ¶ 22).  She does not allege she viewed any owner's manuals, advertisements, or other marketing or information materials related to her vehicle before leasing or purchasing, nor does she describe any conversations or other contact with Hyundai before purchase.  She also does not contend she has experienced any engine problems, or any other types of problems, with her vehicle.  She merely alleges that she is "concerned about driving" due to dangers from the purported defect. (*Id.*)  In other words, by Short's own account, she has ***not experienced any problems with her vehicle***.  Plaintiff Short resides in Washington.

**Plaintiff Parker's Alleged Experiences With Her 2014 Kia Soul**.  Plaintiff Olivia Parker purchased a pre-owned 2014 Kia Soul in September 2018 from Palm Springs Kia in Cathedral City, California.  (*Id.* ¶ 23).  Parker does not allege that she viewed any owner's manuals, advertisements, or other marketing or information materials related to the vehicle before purchasing, or otherwise detail any communications with Kia before purchase.  Like Short, Ms. Parker also does not allege that she has experienced any engine problems, or any other types of problems, with her vehicle.  She too sues only because she is "concerned about driving."  (*Id.*). Plaintiff Parker resides in California.

**Plaintiff Snider's Alleged Experiences With Her 2012 Kia Soul**.  Plaintiff Elizabeth Snider bought a new 2012 Kia Soul in June 2012 from West Hills Kia in Bremerton, Washington. (*Id.* ¶ 24).  Her pre-sale allegations are similarly devoid of specifics, and her Soul appears to operate precisely as warranted and expected.  (*Id.*).  Plaintiff Snider resides in Washington.

**Plaintiff DiPardos' Alleged Experience With Their 2014 Kia Soul**.  Plaintiffs Jennifer and Anthony DiPardo bought a new 2014 Kia Soul from Baierl Kia in Wexford, Pennsylvania.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, Washington 98101-4123
(206) 905-7000

(*Id.*, ¶ 25.)  Their allegations are devoid of any pre-sale specifics, they allege no defects with their vehicle, and contend that they worry about driving their vehicle and that its market value has diminished.  (*Id.*)

**Plaintiff Ronfeldt's Alleged Experiences With His 2016 Kia Soul**.  Plaintiff Seane Ronfeldt purchased a new 2016 Kia Soul Plus in November 2016.  (*Id.* ¶ 26).  Like the other plaintiffs, he makes no allegations of pre-sale representations, or that he viewed any owner's manuals, advertisements, or other marketing information before purchasing the vehicle.  Ronfeldt asserts that on July 20, 2019, his Soul's engine "shuddered and lost all power."  *Id.*  The Kia of Lansing, Michigan dealership allegedly told him a  problem had arisen in the connecting rod through the engine casing, suggested engine replacement, but declined warranty coverage.  *Id.*  He does not provide the reasons the Kia dealer denied his warranty claim.  *Id.*  Ronfeldt does not allege the applicable warranty terms, that he properly maintained the vehicle, or whether he produced maintenance records.  Ronfeldt contends his insurance company concluded there was a manufacturing or design defect.  *Id.*  Ronfeldt alleges a different mechanic replaced the engine, but that he is still "worried" about driving the vehicle.  (*Id.*, ¶ 27).

**Plaintiff Twigger's Alleged Experiences With His 2014 Kia Soul Plus**.  Plaintiff James Michael Twigger purchased a new 2014 Kia Soul Plus in July 2014.  (*Id.* ¶ 28).  He makes no allegations of pre-sale representations.  He contends that, three years after purchase, on July 1, 2017, his Soul "spontaneously stopped working," but he was able to pull to the shoulder.  (*Id.*).  The engine then began smoking and ignited.  (*Id.*).  Twigger alleges without further detail that the fire was caused by an engine defect related to connecting rod failure and leaking oil.  (*Id.* ¶ 23).  Twigger resides in West Virginia.

**The Amended Complaint.**  On March 4, 2019, plaintiffs Short and Parker filed this action alleging purported engine defects that can result in engine damage, failure, and/or fires.  (Dkt. No. 1).  On March 13, 2019, plaintiffs Snider and Twigger filed a separate action alleging similar defects.  *Snider v. Hyundai Motor America, Inc.*, Case No. 2:19-cv-00371 (W.D. Wash.), Dkt. No. 1.  These cases were consolidated on April 23, 2019 and an amended complaint was filed.  (Dkts. No. 22, 23).

MOTION TO DISMISS
(2:19-cv-00318)  -4-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, Washington 98101-4123
(206) 905-7000

1    Defendants moved to dismiss, (Dkt. No. 37), but before plaintiffs' response was due, this

2    Court stayed the action pending a transfer decision by the Judicial Panel on Multi-District

3    Litigation ("JPML") (Dkt. No. 38).  Following the JPML's ruling denying the motion to transfer

4    and consolidate, plaintiffs filed an Amended Complaint.  (Dkt. No. 42).

5    Plaintiffs now assert claims for fraudulent concealment; violations of the Magnuson-Moss

6    Warranty Act, California Unfair Competition Law ("UCL"), California False Advertising Law

7    ("FAL"), California Consumer Legal Remedies Act ("CLRA"), Song-Beverly Consumer

8    Warranty Act, Washington Consumer Protection Act ("WCPA"), Ohio Consumer Sales Practices

9    Act ("OCSPA"), the Ohio Deceptive Trade Practices Act ("ODTPA"), the Pennsylvania Unfair

10   Trade Practices and Consumer Protection Law ("UTPCPL"), the West Virginia Consumer Credit

11   and Protection Act ("WVCCPA"), and breach of implied warranty under Washington, Ohio,

12   Pennsylvania and West Virginia state laws.  (*Id.* ¶¶ 100-274).  Plaintiffs allege that certain

13   Hyundai and Kia vehicles contain a manufacturing or design defect, relating to restricted oil flow,

14   oil leaks, issues with the catalytic converter, or oil pan sealing problems, which can lead to engine

15   stalling, failure, and/or fire.  (*Id.* ¶¶ 34-47).

16   **Plaintiffs' Broad, Unspecified Purported Class**.  Plaintiffs allege that their vehicles,

17   along with other model years, contain defects that may result in engine damage, failure, stalling,

18   and/or fires.  Specifically, they allege certain Kia Soul vehicles with a 1.6-liter engine contain a

19   defect where the catalytic converter "is susceptible to overheating," resulting in "abnormal

20   combustion" that can "damage the pistons' connecting rods, potentially fracturing the engine

21   block and causing an oil leak."  (*Id.* ¶ 34).  The resulting damage "can all cause sudden and

22   catastrophic engine failure during normal driving, and the resulting leakage of oil onto hot engine

23   parts can result in engine fires."  (*Id.*).  Plaintiffs also allege that certain Kia Soul vehicles with a

24   2.0-liter engine have "oil starvation or lubrication failures," such that connecting rods fail and

25   puncture the engine resulting in oil leaks that can result in engine fire.  (*Id.* ¶ 42).  Finally,

26   plaintiffs allege that certain Hyundai Tucsons contain a defect relating to "insufficient sealing

27   between the oil pan and the engine block," which can result in "engine damage" and "increased

28   risk of fire or a stalled engine at high speeds."  (*Id.* ¶ 45).

1    Plaintiffs sue not merely for buyers of their model year Tucsons and Souls, but also on

2  behalf of owners of other model years. (*See id.* ¶ 1). Plaintiffs connect their purported class only

3  by stating that the vehicles at issue all contain a gasoline direct injection ("GDI") engine. (*Id.* ¶¶

4  7-8). Although plaintiffs recognize that there are various design families of GDI engines (e.g.,

5  *Gamma, Theta, Nu*), they do not allege that each generation of engine are identically designed or

6  manufactured, that the relevant marketing or warranty statements were the same for each model

7  over the range of model years, or that the engines even suffered from the same type of defect.

8  <u>**Legal Standard**</u>

9    To withstand a motion to dismiss, the Amended Complaint must plead sufficient facts to

10  state a claim that is plausible on its face. *Iceberg v. Martin*, No. C15-1232JLR, 2017 WL 396438,

11  at *4 (W.D. Wash. Jan. 30, 2017), *appeal dismissed sub nom. Iceberg v. DSHS/DVR*, No. 17-

12  35312, 2018 WL 4904818 (9th Cir. Apr. 17, 2018). "A pleading that offers only 'labels and

13  conclusions or a formulaic recitation of the elements of a cause of action' will not survive a

14  motion to dismiss" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Minnick v.*

15  *Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1183 (W.D. Wash. 2010) ("The Court must accept

16  Plaintiffs' factual allegations as true, but need not accord the same deference to legal

17  conclusions."). A court may not assume the plaintiff can prove facts that have not been alleged,

18  nor that the defendant has violated laws in a way not alleged. *See id.*; *In re Sony Grand Wega*

19  *KDF-E a10/a20 Series Rear Projection HDTV Television Litig.* ("*Sony*"), 758 F. Supp. 2d 1077,

20  1086-7 (S.D. Cal. 2010).

21  I.    <u>**PLAINTIFFS' FRAUD-BASED CLAIMS FAIL**</u>

22    Plaintiffs' claims under common law fraud (Count I), the UCL (Count III), FAL (Count

23  IV), CLRA (Count V), ODTPA (Count VIII), UTPCPL (Count X), WCPA (Count XII), and the

24  WVCCPA (Count XIV) should be dismissed because they have not alleged any specific

25  misrepresentations or omissions by defendants. They also fail to properly allege reliance on, or

26  defendants' knowledge of, these unidentified misrepresentations or fraudulent omissions. For all

27  these required elements, plaintiffs have failed to plead their claims with particularity.

28

QUINN EMANUEL URQUHART & SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, Washington 98101-4123
(206) 905-7000

A.   **Plaintiffs' Have Not Alleged Any Affirmative Misrepresentations Or Deceptive Acts**

Plaintiffs' UCL, CLRA, FAL, WCPA, ODTPA, UTPCPL, WVCCPA and common law fraud claims are premised on the allegations that defendants "intentionally concealed, suppressed, and failed to disclose" material facts, "engaged in unlawful, fraudulent, and unfair business acts," and intentionally "disseminated untrue or misleading statements," "suppressed material facts," and "concealed the truth." (Amended Complaint ¶¶ 102, 128, 136, 146, 214, 236). Accordingly, the claims sound in fraud and are subject to the heightened pleading requirements of Rule 9(b). *See Vess v. Ciba–Geigy Corp.,* 317 F.3d 1097, 1103–04 (9th Cir. 2003); *Kent v. Hewlett-Packard Co.*, 2010 WL 2681767, at *10 (N.D. Cal. July 6, 2010) ("Allegations of active concealment sound in fraud, and thus must meet the heightened pleading requirements of [Rule 9(b)]."); *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125-27 (9th Cir. 2009) (affirming dismissal of CLRA and UCL claims for failure to satisfy Rule 9(b)); *Segal Co. (E. States) v. Amazon.Com*, 280 F. Supp. 2d 1229, 1232 (W.D. Wash. 2003) (quotations omitted) (WCPA claims must demonstrate defendants "deceive[d] a substantial portion of the public" and be plead with particularity). Where, as here, plaintiffs allege "a unified course of fraudulent conduct," the heightened pleading standard applies to the pleading as a whole even if fraud is not a necessary element of the claim. *Vess*, 317 F.3d at 1103-04.

The mere fact that a product did not meet the plaintiff's expectations is not sufficient to state a cause of action for fraud. *See Baba v. Hewlett-Packard Co.*, 2010 WL 2486353, at *4 n.2 (N.D. Cal. June 16, 2010); *see also id.* at *4 (finding sweeping claims that a computer manufacturer represented to plaintiffs that its tablets would be free from defects insufficient to support a claim of fraud). Rather, pursuant to Rule 9(b), a plaintiff must plead what the representations "specifically stated" and the "particular circumstances" surrounding the communications. *Kearns*, 567 F.3d at 1124-27. Specifically, such allegations must include the "the who, what, when, where, and how of the misconduct charged." *Id.* at 1124 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Even where a plaintiff has generally described the channels in which a car manufacturer made false representations,

MOTION TO DISMISS
(2:19-cv-00318) -7-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, Washington 98101-4123
(206) 905-7000

including nationwide marketing, sales materials from the dealership, and verbal statements by

sales personnel, his claims only satisfy FRCP 9(b) if he specifies the precise representations made,

when they were made, and what specific information he remembered and ultimately relied upon.

*Id.* at 1125–6.

Here, plaintiffs do not allege a single affirmative statement by defendants in connection

with the underlying transactions,[3] nor any conduct that would constitute a deceptive act or

practice,[4] instead asserting only unsupported conclusions that defendants "concealed" the truth

about the purported defects, or "made and/or disseminated untrue or misleading statements."

(Amended Complaint ¶¶ 14, 16, 65, 95, 102-4, 136, 146-7, 236-7, 259).  The Amended Complaint

fails to identify *any* specific statement or advertisement containing the representations that were

allegedly untrue, much less when the statements were made, in what medium they were

distributed, or by whom the misleading statements were made.  *See Kearns*, 567 F.3d at 1126-27;

*Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 997 n.2 (N.D. Cal. 2009); *see also Minnick*, 683

F. Supp. 2d at 1188 (allegations that defendant made false representations that were "likely to

deceive" insufficient to support WCPA false advertising claims because they were "simply

---

[3]   With the exception of one Hyundai release about its opening of a "Proving Grounds" to test
vehicles (*see* Compl., ¶ 2), the only specific statements identified in the Complaint that have any
relation to the class vehicles were made by defendants after purchase and therefore cannot form
the basis for plaintiffs' claims.  *See* Section I.C.  The only alleged statement that precedes the
plaintiffs' purchase dates, the 2005 "Proving Grounds" article, bears no relation to the class
vehicles and cannot be the basis for an affirmative misrepresentation or deceptive act because the
article merely describes that Hyundai opened the Proving Grounds facility for the purpose of
"designing, testing and building Hyundai products in the United States for North American
consumers."  This generalized statement about development and testing facilities cannot form the
basis of a misrepresentation or deceptive act, because it has no relevance to the specific defects
that plaintiffs claim exist in the Class Vehicles.

[4]   The consumer protection statutes plaintiffs sue under all require either affirmative
misrepresentations or a deceptive act of practice.  *Stanley v. Huntington Nat. Bank*, No.
1:11CV54, 2012 WL 254135, at *7 (N.D.W. Va. Jan. 27, 2012), aff'd, 492 F. App'x 456 (4th Cir.
2012) (WVCCPA claim requires a "deceptive act" and must be plead with particularity under Rule
9(b); *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 470, n. 11 (E.D. Pa. 2009)
(allegations of "a violation of the catchall provision [of the UTPCPL] on the basis of fraudulent
conduct . . . must plead the elements of common law fraud and Rule 9(b)'s particularity
requirement does apply);  Ohio Rev.Code. § 4165.02(A)(1) & (2) (ODTPA requires a "deceptive
trade practice").

MOTION TO DISMISS
(2:19-cv-00318) -8-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, Washington 98101-4123
(206) 905-7000

conclusions of law"); *Baba*, 2010 WL 2486353, at *4 (allegation that defendant "warranted that the computers would be 'free from defects' [and] promised to repair the computers if a defect existed" did not "'provide the who, what, where, when, and how' of any affirmative misrepresentations as required under Rule 9(b)") (citations omitted); *Segal*, 280 F. Supp. 2d at 1234 (W.D. Wash. 2003) (holding that plaintiffs fail to state claim under Washington's CPA where plaintiffs "allege no specific facts suggesting that the defendant has engaged" in a deceptive practice).[5]  As a result, plaintiffs' claims under each of the consumer protection statutes they assert must be dismissed.

### B.   Plaintiffs' Conclusory References To Fraudulent Omissions Do Not Suffice

To the extent plaintiffs contend their consumer and fraud-based claims are based on fraudulent omissions, such claims must also be pled with particularity.  *Kearns,* 567 F.3d at 1126-27 (nondisclosure is a form of misrepresentation and must be pleaded with particularity); *Marolda,* 672 F. Supp. 2d at 997 n.2 (fraudulent nondisclosure for California CLRA, FAL, and UCL claims must be pled with particularity under Rule 9(b)).  "[A]lthough a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose."  *Hoey v. Sony Electronics, Inc.*, 515 F. Supp. 2d 1099, 1106 (N.D. Cal. 2007) (quotation marks omitted); *accord Davidson v. Apple, Inc.*, 2017 WL 976048, at *9–10 (N.D. Cal. Mar. 14, 2017) (holding that plaintiffs must identify the materials viewed prior to purchasing that omitted the subject information); *Kearns*, 567 F.3d at 1127 (upholding dismissal of fraud claims based on omissions that were no more specific than plaintiff's "general pleadings" of misrepresentations).

Here, plaintiffs rely on generalized allegations that defendants failed to disclose a purported defect and that defendants' recalls are "inadequate" (Amended Complaint, ¶ 147), but they do not allege "they *reviewed* or were *exposed* to any information, advertisements, labeling, or

---

[5]   Significantly, the Complaint does not claim breach of any *express* warranty.  If no assurance was provided concerning the absence of latent defects that could justify an express warranty claim, it is difficult to posit a statement that would satisfy the higher bar for fraud pleadings.

MOTION TO DISMISS
(2:19-cv-00318) -9-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, Washington 98101-4123
(206) 905-7000

1  packaging by" defendants that would satisfy the heightened pleading standard.  *Davidson v. Apple,*

2  *Inc.*, 2017 WL 976048, at *10 (N.D. Cal. Mar. 14, 2017) (emphasis added); *accord Hoey*, 515 F.

3  Supp. 2d at 1106 (dismissing allegations that defendant "concealed from and/or failed to disclose .

4  . . the true defective nature of the Affected Computers" and that defendant was "reckless in not

5  knowing, that the Affected Computers were defectively designed" because such allegations are

6  "so general that the statement could be made regarding any design defect in any product.").

7  Plaintiffs do not allege what should have been disclosed about the purportedly defective engines,

8  or when and in what materials defendants should have disclosed such information.  Accordingly,

9  plaintiffs fail to plead fraud by omission under FRCP 9(b).

10       **C.**       **Plaintiffs Fail To Allege Reliance**

11       Independently dooming their claims, plaintiffs fail to allege they saw and relied upon any

12  particular misrepresentation.  Reasonable or justifiable reliance, pleaded with particularity, is

13  required to state a fraud-based claim, including for plaintiffs' CLRA, FAL, UCL, WCPA,

14  WVCCPA, UTPCPL, ODTPA and common law fraud claims.  *See Kearns,* 567 F.3d at 1126

15  (plaintiffs must plead justifiable reliance for fraud-based claims); *Doe v. SuccessfulMatch.com*, 70

16  F. Supp. 3d 1066, 1076 (N.D. Cal. Sept. 30, 2014) (actual reliance element in fraud-based UCL

17  claim requires plaintiffs to plead "the defendant's misrepresentation or nondisclosure was an

18  immediate cause of the plaintiff's injury-producing conduct"); *MacRae v. HCR Manor Care*

19  Services, No. SACV 14-0715-DOC, 2014 WL 3605893, at *4 (C.D. Cal. July 21, 2014)

20  ("[Plaintiff] fails to plead a violation of the CLRA because he neither allege[d] actual reliance, nor

21  meets the 9(b) heightened pleading standard for claims sounding in fraud"); *Opperman*, 87 F.

22  Supp. 3d at 1045 (misrepresentation claims under UCL, FAL, and CLRA require plaintiffs to

23  plead injury and causation); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105

24  Wash. 2d 778, 793 (1986) (en banc) (for WCPA claim "[a] causal link is required between the

25  unfair or deceptive acts and the injury suffered by plaintiff."); *Minnick*, 683 F. Supp. 2d at 1188

26  ("None of the Plaintiffs identify the relied-upon statements and, therefore, they have not alleged a

27  plausible basis to identify [WCPA] causation."); *White v. Wyeth*, 227 W. Va. 131, 140 (2010) (for

28  a WVCCPA claim, "[w]here the deceptive conduct or practice alleged involves affirmative

MOTION TO DISMISS
(2:19-cv-00318) -10-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, Washington 98101-4123
(206) 905-7000

misrepresentations, reliance on such misrepresentations must be proven in order to satisfy the requisite causal connection"); *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009) (for a claim under the UTPCPL, "the plaintiff must allege justifiable reliance, in other words 'that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the [defendants'] misrepresentation' or deceptive conduct.") (quoting *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 223, n. 14 (3d Cir. 2008)); *First Choice Fed. Credit Union v. Wendy's Co.*, No. CV 16-506, 2017 WL 9487086, at *4 (W.D. Pa. Feb. 13, 2017) (concluding that ODTPA requires reliance on misrepresentations because it is a state law parallel to the Federal Lanham Act which requires proximate cause).[6]

  Here, plaintiffs make only conclusory allegations that they acted in "reliance on Defendants' statement[s]" and that they would not have purchased the vehicles.  (Amended Complaint ¶¶ 23–26, 28, 102, 106, 139, 174, 180, 264).  Nowhere do the named plaintiffs contend they read, heard, or were otherwise exposed to such statements, much less relied on them, before purchasing their vehicles.  *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1046-49 (N.D. Cal. 2014) (dismissing UCL, FAL, and CLRA claims because plaintiff failed to allege she read and relied on misleading statements from defendant's website); *Minnick*, 683 F. Supp. 2d at 1188 (dismissing WCPA claims because plaintiffs failed to identify "the relied-upon statements and, therefore, they have not alleged a plausible basis to identify CPA causation.").  Indeed, plaintiffs fail to identify

---

  [6]  Common law fraud in all of the relevant states—California, Washington, West Virginia, Ohio, and Pennsylvania—also requires reliance.  *Robinson Helicopter Co., Inc. v. Dana Corp.,* 34 Cal. 4th 979, 990 (2004) ("elements of fraud [include] . . . "justifiable reliance"); *Muniz v. Microsoft Corp.*, No. C10-0717-JCC, 2010 WL 4482107, at *2 (W.D. Wash. Oct. 29, 2010) (common law fraud based claims require reliance and to be pled with particularity); *Lengyel v. Lint*, 167 W. Va. 272, 276–78 (1981) ("The essential elements in an action for fraud [include] . . . that plaintiff relied upon [a fraudulent act] and was justified under the circumstances in relying upon it"); *Andrew v. Power Marketing Direct, Inc.,* 978 N.E.2d 974, 989 (Ohio Ct. App. 2012); *Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882, 889 (Penn. 1994) (common law fraud in Pennsylvania requires "justifiable reliance on the misrepresentation").  Therefore, for the common law fraud claims, regardless of which state's law applies to the nationwide class or the statewide classes asserted, plaintiffs must properly allege reliance on the purported misrepresentations.  Thus plaintiffs must allege reliance for either the nationwide class or the statewide classes, regardless of which states law applies.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, Washington 98101-4123
(206) 905-7000

*any* promotional material, product description, or other pre-sale[7] representation that plaintiffs saw and relied upon, much less materials containing an actionable misrepresentation or omission. (Amended Complaint ¶¶ 102-05, 128-30, 136-38, 146-47, 214-16, 236-37, 261-62); *Davidson*, 2017 WL 976048, at *10 (dismissing omission-based fraud claims where plaintiffs do not allege that "they *reviewed* or were *exposed* to any information, advertisements, labeling, or packaging" for the product that contained actionable omissions).   To the extent the Amended Complaint labels certain statements as fraudulent, those allegations focus on 2016–19 recalls and press releases, several years after plaintiffs Short, Twigger, DiPardo and Snider purchased their vehicles. (Amended Complaint at ¶¶ 94, 110, 128, 219).  This does not suffice to establish reliance, because statements made post-sale cannot be considered the injury-causing conduct.  *See Doe,* 70 F. Supp. 3d at 1076 (reliance element in fraud-based UCL claim requires plaintiffs to plead "the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct") (internal quotation omitted); Cal. Civ. Code § 1770; *Fid. Mort. Corp.*, 131 Wash. App. at 469 (misleading statements that induce unknown third parties to act not sufficient to establish WCPA claim).  While plaintiffs Parker and Ronfeldt allegedly purchased vehicles in 2018 and 2016 respectively, neither allege that any of the prior recalls or promotional materials induced them to purchase their vehicles. *Fid. Mort. Corp.*, 131 Wash. App. at 469.  Therefore, their claims fail.

Moreover, plaintiffs' allegations that defendants *may* have diminished the market value of their vehicles post-sale are wholly conclusory and insufficient to withstand a motion to dismiss. (Amended Complaint ¶¶ 9, 74); s*ee also Cousineau v. Microsoft Corp*., 992 F. Supp. 2d 1116, 1128 (W.D. Wash. 2012) (dismissing WCPA claim where complaint asserted without support that market value of product was diminished by defendant's actions).

---

[7]  Plaintiffs point to statements made on Hyundai's website (*see* Amended Complaint, ¶¶ 63-64).  These statements are not specific or clear enough to qualify as misrepresentations, and none of the plaintiffs allege they saw these statements, that they relied on the website when deciding the purchase their vehicles, or that they relied on anything related to Hyundai's website prior to purchase.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, Washington 98101-4123
(206) 905-7000

### D.      Plaintiffs Fail To Allege Defendants Knew Of Any Purported Defects

For a misrepresentation to be actionable as fraud or under the CLRA, FAL or UCL, plaintiffs must demonstrate that defendants knew of the purported defect (and falsity of any statement) at the time of plaintiffs' transaction.[8]  *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1163 (N.D. Cal. 2011) (A defendant cannot be "liable under the CLRA for representations about [a product's] characteristics that are rendered misleading due to a defect of which [the defendant] did not know); *Wilson*, 668 F.3d at 1145-48 (similar); *Baba*, 2010 WL 2486353, at *4 ("[T]he failure to fulfill promises under a limited warranty is simply a contractual breach that does not become actionable under CLRA without proof of more, such as the fact that the defendant sold a product it was aware was defective."); *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2015 WL 4967535, at *9 (N.D. Cal. Aug. 20, 2015) (claims under the CLRA FAL, and UCL must allege defendants' knowledge).

Here, plaintiffs allege without supporting averments that defendants knew of the purported defects at the time of sale.  (Amended Complaint ¶ 102).  In lieu of supporting facts, plaintiffs cite customer complaints regarding a variety of Kia vehicle models, lodged with the National Highway Traffic Safety Administration ("NHTSA") largely *after* plaintiffs acquired their vehicles.  *See id.* ¶ 67-68; https://www.nhtsa.gov/recalls#vehicle.  Plaintiffs also allege defendants should have known "the true facts, due to their involvement in the design, installation, calibration, manufacture, durability testing, and warranty services" (*Id.* ¶ 102), suggesting without basis in fact

---

[8]  Plaintiffs' claims under the WCPA, the UTPCPL, the WVCCPA should be dismissed for the same reasons because these statutes require a showing of defendant's knowledge when alleging a misrepresentation or concealment.  *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 499 (3d Cir. 2013) ("[D]eceptive conduct [under UTPCPL] does not require proof of the elements of common law fraud, ***but that knowledge of the falsity of one's statements or the misleading quality of one's conduct*** is still required") (emphasis added); *Beattie v. CMH Homes, Inc.*, No. CIV.A. 3:12-2528, 2015 WL 566616, at *2 (S.D.W. Va. Feb. 10, 2015) (denying motion to alter or amend court's order dismissing fraud and WVCCPA claims and noting that allegations of concealment "implies knowledge and intentional suppression of that knowledge."); *POCO, LLC v. Farmers Crop Ins. All., Inc.*, 712 F. App'x 617, 618–19 (9th Cir. 2017) (dismissing WCPA claim for failure to show deceptive act where plaintiff failed to allege defendant knew about a criminal investigation).

QUINN EMANUEL URQUHART & SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, Washington 98101-4123
(206) 905-7000

1    or common experience that field failures occurring long after a product has been sold and used

2    would necessarily be identified in the research and development process.

3         In *Wilson v. Hewlett-Packard Co.*, the Ninth Circuit rejected similarly attenuated

4    allegations of a defendant's knowledge in affirming dismissal of UCL and CLRA claims.  668

5    F.3d at 1145-48.  The plaintiffs in *Wilson* alleged: (i) the defendant had access to data regarding

6    the claimed defect; (ii) there was another lawsuit involving the same defect in a different model;

7    and (iii) several customer complaints were made regarding the defect.  *Id.* at 1146.  The court,

8    however, found these allegations insufficient because they were speculative, the other lawsuit did

9    not involve the plaintiffs' product, and the customer complaints post-dated the plaintiffs'

10   purchase.  *Id.* at 1146-48.

11        So too here.  Complaints to NHTSA, nearly all of which were lodged *after* plaintiffs

12   acquired their vehicles,[9] do not plausibly allege that defendants knew of the purported defect in

13   plaintiffs' vehicle at the time of the purchase.  *Grodzitsky v. Am. Honda Motor Co.*, No. 2:12-cv-

14   1142-SVW-PLA, 2013 WL 690822, at *7 (C.D. Cal. Feb. 19, 2013) (plaintiffs cannot "establish a

15   plausible inference of knowledge based on their allegation that Defendant received customer

16   complaints *after* the sales of the vehicles in question.").  Awareness of a defect, much less a

17   misrepresentation regarding a defect, would require evidence suggesting a systemic problem.  *See*

18   *id.*  If a single complaint about a single vehicle or the mere fact that defendants were involved in

19   the "design, installation, calibration, manufacture, durability testing, and warranty service"

20   suffced to show knowledge of a later-manifesting defect, a presumption would have developed

21

22

23

---

24        [9]   All of the NHTSA reports reproduced in the complaint are from 2017 and 2018, years after
      plaintiffs purchased their vehicles.  *See* Amended Complaint ¶¶ 67-69.  In a footnote, plaintiffs

25   reference other NHTSA complaints that allegedly date back to September 2011, July 2014, August
      2014, and June 2016.  *See id. Id.* ¶¶ 67-68, n. 26-28.  Plaintiffs do not allege that any of these

26   complaints were related to the purported defect at issue in this litigation.  Further, only two
      complaints pre-date a plaintiff's vehicle purchase (Ronfeldt purchased his vehicle in November

27   2016 and Parker purchased a used vehicle in September 2018).  *Id.* ¶¶ 23, 26.  Allegations
      regarding two unspecified complaints are not sufficient to allege knowledge.

28

QUINN EMANUEL URQUHART & SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, Washington 98101-4123
(206) 905-7000

1   that all auto manufacturers are aware of all defects at the time of sale.  That is not and has never

2   been the law.[10]

3   **II.    PLAINTIFFS SHORT, PARKER, SNIDER, AND JENNIFER AND ANTHONY**

4   **DIPARDO LACK ARTICLE III STANDING**

5        To bring a claim in federal court, plaintiffs must establish that they have Article III

6   standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  To establish Article

7   III standing, a plaintiff must show an injury in fact, causation, and redressability.  To demonstrate

8   an injury in fact, a plaintiff must demonstrate the invasion of a legally protected interest which is

9   "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Id.*

10  at 560 (citations and quotations omitted).  "The injury-in-fact requirement requires a plaintiff to

11  allege an injury that is both 'concrete and particularized' and 'actual or imminent, not conjectural

12  or hypothetical."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citing *Lujan*, 504 U.S. at

13  560).  "Article III standing requires a concrete injury even in the context of a statutory violation."

14  *Id.* at 1549. An injury is concrete when it actually exists.  *Id.* at 1548.  For an injury to be

15  "particularized," it "must affect the plaintiff in a personal and individual way."  *Id.*  In class

16  actions, the named representatives must allege and show that they personally have been injured,

17  not that injury has been suffered by other, unidentified members of the class to which they belong

18  and which they purport to represent."  *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018,

19  1022 (9th Cir. 2003) (quoting *Pence v. Andrus*, 586 F.2d 733, 736-37 (9th Cir. 1978)).

20       Here, plaintiffs' claims for economic harm are both speculative and inadequately pleaded.

21  Plaintiffs Short, Parker, Snider, Jennifer and Anthony DiPardo, do not allege they have

22  experienced *any* problems with their vehicles, much less engine failure due to the alleged defect.

23  (Compl. ¶¶ 22-25).  Nor have they allege that they have suffered any out of pocket costs

24  associated with the purported defect.  *Id.*

25

26

27

28  ―――――――――――――
     [10]   Indeed, the fact that defendants' testing is rigorous, as plaintiffs have alleged, supports the
     opposite inference—that is, that the defects were latent and not reasonably detectable.

MOTION TO DISMISS                                QUINN EMANUEL URQUHART & SULLIVAN, LLP
(2:19-cv-00318) -15-                              600 University Street, Suite 2800
                                                 Seattle, Washington 98101-4123
                                                 (206) 905-7000

Rather than allege any out of pocket losses associated with the purported engine defect, plaintiffs rely on general allegations that they are "concerned" about driving their vehicles and believe the market value of the vehicles has been diminished.  (*Id.* ¶¶ 22-25).  While overpayment and diminution in value are cognizable forms of injury, such conclusory allegations unsupported by any facts are insufficient to establish Article III standing.  *Cahen v. Toyota Motor Corp.*, 717 Fed. Appx. 720, 723 (9th Cir. 2017) (conclusory allegations that vehicles are worth less is insufficient to establish standing); *see also Brown v. Hyundai Motor America*, No. 18-11249, 2019 WL 4126710, at *3 (D.N.J. Aug. 30, 2019) (same).  When plaintiffs allege "economic loss predicated solely on how a product functions when the product has not malfunctioned," the plaintiffs must "allege 'something more' to support their claims than merely alleging 'overpaying for a defective product.'"  *Anderson v. Hyundai Motor Company Ltd.*, 2014 WL 12579305, at *7 (C.D. Cal. July 24, 2014).  Plaintiffs Short, Parker, Snider, Jennifer and Anthony DiPardo,  have failed to allege "something more" so as to establish standing.  *Cahen*, 717 Fed. Appx.at 723.

Similarly, plaintiffs' allegations that they are "concerned" that their vehicles may experience engine-related issues are speculative and not sufficiently particularized or concrete to confer Article III standing.  See *Lassen v. Nissan North America, Inc*., 211 F. Supp. 3d 1267, 1280 (C.D. Cal. 2016) ("concern" about vehicle defect is not a concrete harm that confers standing).  Plaintiffs have not alleged that the purported defect manifests in every vehicle, nor have they pleaded facts indicating that any future harm is likely to occur.  See *Cahen*, 717 Fed. Appx. at 723 (allegations that hacking of vehicle computer is an "imminent eventuality" is insufficient to establish Article III standing).  Therefore, Short, Parker, Snider, and Jennifer and Anthony DiPardo' claims should be dismissed for lack of standing.

## III.   PLAINTIFF RONFELDT'S ODTPA AND OCSPA CLAIMS FAIL

### A.   Plaintiff Ronfeldt Lacks Standing To Bring a ODTPA Claim

In addition to the reasons above, plaintiff Ronfeldt's ODTPA claim (Amended Complaint, Count VIII, ¶¶ 183-198) fails for the independent reason that he does not have standing to bring the claim under Ohio law, and it must be dismissed with prejudice.

1   "Ohio courts have repeatedly analogized the ODTPA to the federal Lanham Act, and they

2   apply to the ODTPA the same analysis used by federal courts under the Lanham Act." *Die-*

3   *Mension Corp. v. Dun & Bradstreet Credibility Corp.*, No. C14-855 TSZ, 2015 Wl 5307472, at *2

4   (W.D. Wash. Sept. 10, 2015).  Consistent with federal jurisprudence regarding the scope of the

5   Lanham Act, the majority of Ohio state courts to consider the issue—including a 2018 appellate

6   decision—have concluded that individual consumers do not have standing under the ODTPA.  *See*

7   *Michelson v. Volkswagen Aktiengesellschaft*, 99 N.E.3d 475, 479-80 (Ohio App. 2018)

8   (dismissing ODTPA claim brought by individual consumer and noting that "[t]he act's purpose is

9   exclusively to protect the interests of a purely commercial class against unscrupulous commercial

10   conduct") (quoting *Dawson v. Blockbuster, Inc.*, No. 86451, 2006 WL 1061769, at *4 (Ohio App.

11   Mar. 16, 2006)); *Dawson*, 2006 WL 1061769, at *4 (standing denied to consumers); *Hamilton v.*

12   *Ball*, 2014 Ohio 1118, at ¶¶ 29–33, 7 N.E.3d 1241 (Ohio App. 4 Dist.) (same).  This approach has

13   been followed by the "vast majority" of federal courts as well.  *See e.g.*, *Sindell v. Fifth Third*

14   *Bank*, No. 1:18 CV 479, 2019 WL 3318571, at *2 (N.D. Ohio Jan. 24, 2019) ("[T]he *vast majority*

15   *of federal courts and all lower state courts* to address the issue have concluded that relief under

16   the [O]DTPA is not available to consumers.") (emphasis added) (quoting *Phillips v. Philip Morris*

17   *Companies Inc.*, 290 F.R.D. 476, 482 (N.D. Ohio 2013)); *In re Porsche Cars N. Am., Inc.*, 880 F.

18   Supp. 2d 801, 875 (S.D. Ohio 2012) (purchasers of vehicles made by Porsche had no standing to

19   bring claims under ODTPA because "consumers lack standing under the ODTPA"); *Smith v.*

20   *Smith & Nephew, Inc.,* 5 F. Supp. 3d 930, 931–32, (S.D. Ohio Mar. 10, 2014) ("[A]s individual

21   consumers, Plaintiffs lack standing to bring a claim under the ODTPA.") (citing *Allen v. Andersen*

22   *Windows, Inc.,* 913 F. Supp. 2d 490, 513 (S.D. Ohio 2012)); *see also Adams v. Antonelli College*,

23   304 F. Supp. 3d 656, 661-62 (S.D. Ohio 2018) (collecting cases).

24       In contrast, a minority of cases have held that individual consumers *do* have standing to

25   bring ODTPA based on the statute's provision that it applies to "individuals."  *See Schumacher v.*

26   *State Auto. Mut. Ins. Co.*, 47 F. Supp. 3d 618, 630-33 (S.D. Ohio 2014); *Bower v. IBM*, 495 F.

27   Supp. 2d 837, 842-44 (S.D. Ohio 2007); *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 572

28   (D.N.J. 2012). (adopting *Bower* and denying motion to dismiss for ODTPA consumer claim).

MOTION TO DISMISS
(2:19-cv-00318) -17-

Although there is no controlling authority or guidance from the Ohio Supreme Court on the issue, this Court should apply the rule promulgated by the Ohio Courts of Appeal in *Dawson*, *Michelson*, and *Hamilton*[11] as it is the most likely rule that would be applied by the Ohio Supreme Court.[12]  It is well-established that the ODTPA is a state law corollary to the federal Lanham Act, and courts have consistently held it should be analyzed as a court would analyze claims under the Lanham Act.  *Yocono's Rest., Inc. v. Yocono*, 100 Ohio App. 3d 11, 17 (Ohio App. Ct. 1994) ("[ODTPA] is substantially similar to Section 43(a) of the Lanham Act . . . Accordingly, cases interpreting the Lanham Act . . . are relevant to analysis of claimed violations of [the ODTPA].").  "Federal courts have consistently held that individual consumers lack standing under Section 43(a) because they are not within the class of persons that the Lanham Act was designed to protect, i.e. persons engaged in commerce."  *Adams*, 304 F. Supp. 3d at 662; *Robins*, 838 F. Supp. 2d at 650 (individual consumers lack standing under the ODTPA and the Lanham Act "because the stated purpose of the Act is to protect persons engaged in commerce, not individual consumers, against unfair competition").  Therefore, the courts that have held consumers do not have standing to sue have properly analyzed the ODTPA in the same way federal courts have analyzed the Lanham Act.

Additionally, courts have also recognized that to interpret the DTPA as applying to individual consumers would render the OCSPA superfluous because both statutes regulate the same type of conduct.  *Robins*, 838 F. Supp. 2d at 650.  The only difference is that the OCSPA expressly applies to consumer transactions.  *Adams*, 304 F. Supp. 3d at 663; *Philips v. Philip*

---

[11]  *Michelson* in particular should be considered authoritative as the decision was rendered after the Supreme Court clarified the standing inquiry under the Lanham Act in *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014); *see also Die-Mension Corp. v. Dun & Bradstreet Credibility Corp.*, 2015 WL 5307472, at *3-4 (W.D. Wash. Sept. 10, 2015) (discussing the *Lexmark* inquiry and concluding that the ODTPA requires a plaintiff to allege any injury to a commercial interest in reputation or sales).

[12]  Federal courts have reasoned that "when confronted with a still-open question of Ohio law, [the Court] would apply Ohio law as it believes the highest court would if presented with the issue."  *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 752 (N.D. Ohio 2010).

MOTION TO DISMISS
(2:19-cv-00318) -18-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, Washington 98101-4123
(206) 905-7000

*Morris Companies Inc.*, 290 F.R.D. 476, 484 (N.D. Ohio 2013) (noting that legislature's intent that the DTPA exclude consumer claims is evidenced by its subsequent passage of the OCSPA).

The line of cases following *Bower* rely on the textual interpretation of the statute and presence of the word "individuals," but as courts in Ohio have noted, the same reasoning would contradict the holding of the Federal Circuits who have held "person[s]" under the Lanham Act does not apply to consumers:

> [T]here are substantial similarities between the DTPA and the Lanham Act. For instance, the DTPA expressly provides that "individuals" have standing to sue. While the Lanham Act does not provide for a cause of action by an "individual," it does provide for a cause of action for any *person* who believes that he or she is or is likely to be damaged. . . . Therefore, like the DTPA, the Lanham Act expressly applies to individual human beings, as well as to corporations. However, despite the fact that the definition of "person" under the Lanham Act expressly includes "natural persons," or human beings, it is well established that a consumer does not have standing to sue under the act for false advertising. This is true despite the fact that the Lanham Act does not limit the types of "natural persons," or human beings, to which it applies. In determining that consumers lack standing under the Lanham Act, the federal courts have held that the stated purpose of the act is to protect persons engaged in commerce, not individual consumers, against unfair competition. The courts have determined that this "evidences an intent to limit standing to a narrow class of potential plaintiffs possessing interests the protection of which furthers the purposes of the Lanham Act.

*Blankenship v. CFMOTO Powersports, Inc.*, Ohio Misc. 2d 5, 16 (Jan. 24, 2011) (internal quotations and citations omitted).

Therefore, this Court should follow the "overwhelming consensus among courts, both federal and state, and the soundness of their reasoning" and dismiss plaintiff Ronfeldt's ODTPA claim for lack of standing. *Sindell*, 2019 WL 3318571, at *3.

**B.      Plaintiff Ronfeldt's OCSPA Claim Fails to Allege Defendants Had Notice**

Plaintiffs' latest amendment adds a claim by Ronfeldt and the Ohio Class under the OCSPA (Amended Complaint Count VI, ¶¶ 166-82), but Ronfeldt fails to allege that defendants had notice that their conduct was deceptive.

To pursue a class action under the OCSPA, plaintiffs must establish that the defendant had prior notice that its conduct was "deceptive or unconscionable." *Pattie v. Coach, Inc.*, 29 F. Supp. 3d 1051, 1055 (N.D. Ohio 2014) (quoting O.R.C. § 1345.09(B)). For prior notice to be sufficient, "a plaintiff must allege that 'a specific rule or regulation has been promulgated [by the Ohio

1  Attorney General] under [O.R.C. 1345.05] that specifically characterizes the challenged practice

2  as unfair or deceptive,' or that 'an Ohio state court has found the specific practice either

3  unconscionable or deceptive in a decision open to public inspection.'" *Id.*; *see also Ice v. Hobby*

4  *Lobby Stores, Inc.*, No. 1:14CV744, 2015 WL 5731290, at *3 (N.D. Ohio Sept. 29, 2015) (quoting

5  *Johnson v. Microsoft Corp.*, 155 Ohio App. 3d 626, 636 (2003)).

6      Here, plaintiffs have not alleged any rule promulgated by the Attorney General of Ohio or

7  any Ohio state court case.  *See generally* Amended Complaint ¶¶ 166-82.  Therefore, plaintiffs'

8  claim under the OCSPA fails.[13]

9  **IV.    PLAINTIFF TWIGGER FAILS TO ALLEGE NOTICE UNDER THE WVCCPA**

10     In addition to the reasons noted above regarding failure to allege the elements of the fraud,

11 plaintiff Twigger's claim under the WVCCPA independently fails  because he does not allege

12 notice as required by the statute.  The WVCCPA requires plaintiff to demonstrate and allege they

13 provided the defendant with notice: "[N]o action . . . may be brought pursuant to the provisions of

14 this section until the person has informed the seller or lessor in writing and by certified mail,

15 return receipt requested, of the alleged violation and provided the seller or lessor twenty days from

16 receipt of the notice of violation but ten days in the case a cause of action has already been filed to

17 make a cure offer. . . ."  W. Va. Code Ann. § 46A-6-106(b); *see also Stanley v. Huntington Nat'l*

18 *Bank*, 2012 WL 254135 at *7 (N.D.W.Va. Jan. 27, 2012).  In *Stanley*, the court granted a motion

19 to dismiss the plaintiff's WVCCPA claim, even though the plaintiff sent defendant ***two letters***

20 describing the violations because the plaintiff's letters had not specifically identified a violation of

21 the WVCCPA.  *Id.*

22

23

24     [13]  Even if plaintiff Ronfeldt had properly pleaded notice through identification of a regulation

25 or state court case, his claim would fail regardless.  As one Ohio court has concluded, OCSPA
   claims against a vehicle manufacturer based on "advertising to the public" should be dismissed

26 where plaintiffs do not maintain separate claims under, among other claims not asserted here, the
   Magnuson Moss Warranty Act and "implied warranties under the condition of

27 privity."  *Michelson v. Volkswagen Aktiengesellschaft*, 2018 Ohio 1303, ¶¶ 7-15.  As explained
   further below, Ronfeldt's claims for the implied warranty of merchantability and implied warranty

28 under the Magnuson Moss Warranty Act both fail.  *See infra* sections V.A and VI.

MOTION TO DISMISS
(2:19-cv-00318) -20-

1      Here, Twigger does not allege he provided the notice required under the statute.  Instead,

2  he asserts that "the notice and cure letter . . . would have been futile under the circumstances"

3  because the alleged defect rendered his vehicle inoperable "making any cure impossible."

4  Amended Complaint, ¶ 264.  But federal courts in West Virginia have held that there are no

5  exceptions to the notice requirement and have rejected arguments by plaintiffs that it was

6  impossible to comply with the notice provision.  *See McCoy v. S. Energy Homes, Inc.*, No. CIV.A.

7  1:09-1271, 2012 WL 1409533, at *12 (S.D.W. Va. Apr. 23, 2012) ("In this case, plaintiffs cannot

8  get around the plain language of the statute which contains no exceptions to the requirement that

9  notice be provided to the seller before bringing an action under the WVCCPA.").[14]

10  **V.**    **PLAINTIFFS' CLAIMS FOR BREACH OF IMPLIED WARRANTY OF**

11       **MERCHANTABILITY FAILS**

12     **A.**    **Plaintiffs Fail To Plead Sufficient Privity With Defendants**

13      Plaintiffs' claims under Counts XIX, XIII, and XV for breach of the implied warranty of

14  merchantability in Washington, West Virginia, and Ohio all fail to allege privity with defendants.

15  In Washington, West Virginia, and Ohio, a claim for breach of the implied warranty of

16  merchantability requires that a plaintiff stand in vertical contractual privity with the defendant.

17  *Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1023 (9th Cir. 2008); *Tex Enterprises, Inc. v.*

18  *Brockway Standard, Inc.*, 149 Wash. 2d 204, 214 (2003); *Johnson v. Ford Motor Co.,* No. 3:13-

19  6529, 2015 WL 7571841, at *7 (S.D.W. Va. Nov. 24, 2015); *Traxler v. PPG Indus., Inc.*, 158 F.

20  Supp. 3d 607, 620 (N.D. Ohio 2016).  "Generally, 'vertical non-privity plaintiffs,' those plaintiffs

21  who did not buy the product directly from a named defendant, cannot recover from remote

22  manufacturers for the breach of implied warranties." *Lohr v. Nissan N. Am., Inc.,* No. C16-

23  1023RSM, 2017 WL 1037555, at *7 (W.D. Wash. Mar. 17, 2017) (citations omitted).

24  Alternatively, as an exception to the privity requirement, plaintiffs can allege facts demonstrating

25

26      [14]  The impossibility claimed by the plaintiff in *McCoy* was much stronger than that claimed

27  here because the plaintiffs claimed they could not provide notice to one defendant because it was a
     dissolved corporation.  *Id.* at *11.  Here, there is no excuse for the failure of plaintiff Twigger to

28  provide the requisite notice to the defendants, as defendants could have considered the allegation
     and made an offer to cure plaintiff Twigger of his injury.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, Washington 98101-4123
(206) 905-7000

1   they are "intended third-party beneficiaries of an underlying contract between a manufacturer and

2   intermediate dealer."  *Id.*  Specifically, "Plaintiffs can demonstrate they are third-party

3   beneficiaries where a manufacturer knew a purchaser's identity, knew the purchaser's purpose for

4   purchasing the manufacturer's product, knew a purchaser's requirements for the product, delivered

5   the product, and/or attempted repairs of the product in question."  *Id.*

6          Here, none of the plaintiffs allege privity with the manufacturer or retailers nor do they

7   allege any facts to indicate they are third party beneficiaries.  Plaintiffs all allege that they

8   purchased their vehicles from dealerships, not directly from any of the defendants.  (Amended

9   Complaint,¶¶ 22-28.)  Nor do they allege they had "direct interactions" with Hyundai or Kia

10  specifically, let alone any facts to indicate that Hyundai or Kia "knew [their] requirements for the

11  product, delivered the product, and/or attempted repairs of the product in question."  *Lohr,* 2017

12  WL 1037555, at *7  Accordingly, their claims for breach of the implied warranty of

13  merchantability under Washington, West Virginia, and Ohio law all fail.

14      **B.      Plaintiffs Short, Parker, DiPardo, and Snider Have Not Alleged Any Facts**

15              **Indicating Their Cars Are Unfit**

16          Under Washington, Ohio, Pennsylvania, and West Virginia law, a good is merchantable if

17  it "pass[es] without objection in the trade under the contract description . . . and [is] fit for the

18  ordinary purposes for which such goods are used."  *Tallmadge v. Aurora Chrysler Plymouth, Inc.*,

19  25 Wash. App. 90, 94 (1979); *Savett v. Whirlpool Corp.*, No. 12 CV 310, 2012 WL 3780451, at

20  *11 (N.D. Ohio Aug. 31, 2012); *Raab v. Smith & Nephew, Inc.*, 150 F. Supp. 3d 671, 700 (S.D.W.

21  Va. 2015); *Davenport v. Medtronic, Inc.*, 302 F. Supp. 2d 419, 434 (E.D. Pa. 2004).

22          Plaintiffs Short, Parker, DiPardo and Snider have not alleged any facts indicating that their

23  vehicles have experienced any issues or have any materialized problems that make it unfit to drive.

24  (Amended Complaint ¶¶ 22-25).  Therefore, they have not alleged facts demonstrating that their

25  vehicles are unfit, and their claims under Counts IX, XI, XIII, and XV should be dismissed.

26

27

28

QUINN EMANUEL URQUHART & SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, Washington 98101-4123
(206) 905-7000

# VI.   PLAINTIFFS' MAGNUSON-MOSS WARRANTY ACT CLAIMS FAIL

## A.   Plaintiffs Plead No Viable State Law Warranty Claims

Plaintiffs must plead a viable state law warranty claim in order to state a claim under Count II, the Magnuson-Moss Warranty Act ("MMWA"). The MMWA creates a federal cause of action for breach of written and implied warranties under state law. *See* 15 U.S.C. § 2310(d)(1) (creating a "civil action" for a "consumer who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty [or] implied warranty). Therefore, without a viable breach of warranty claim, a Magnuson-Moss claim cannot proceed. *See Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1022 (9th Cir. 2008)("[The] disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims."); *Moodie v. Remington Arms Co., LLC.,* No. C13-0172-JCC, 2013 WL 12191352, at *10 (W.D. Wash. Aug. 2, 2013) (same). Because plaintiffs fail to plead actionable state warranty claims (*see* section V), their Magnuson-Moss claims are precluded.

## B.   The Amended Complaint Does Not Name 100 Plaintiffs

The MMWA provides that "No claim shall be cognizable in a suit brought [in federal district court]-- . . . (c) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C.A. § 2310. District courts within the Ninth Circuit have dismissed MMWA Act claims for lack of jurisdiction where there were less than 100 named plaintiffs. *Patterson v. RW Direct, Inc.*, No. 18-cv-00055-VC, 2018 WL 6106379, at *2 (N.D. Cal. Nov. 21, 2018); *MacDougall v. Am. Honda Motor Co., Inc.,* No. SACV 17-01079 AG, 2017 WL 8236359, at *3-4 (C.D. Cal. Dec. 4, 2017).

Some older district court opinions concluded that "where the party invoking federal jurisdiction is able to meet his or her burden of proving jurisdiction under CAFA, the absence of at least one hundred named plaintiffs does not prevent the plaintiff from asserting claims under the Magnuson–Moss Warranty Act." *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 954 (C.D. Cal. 2012). However, as one court noted in a 2019 opinion, "the weight of more recent authority is that the 100-plaintiff requirement cannot be supplanted by the prerequisites for exercising diversity jurisdiction under CAFA." *Cadena v. Am. Honda Motor Co.,* No.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, Washington 98101-4123
(206) 905-7000

1  CV184007MWFPJWX, 2019 WL 3059931, at *11 (C.D. Cal. May 29, 2019).  Therefore, this

2  Court should dismiss the MMWA claim for failure to name 100 plaintiffs as required by the

3  statute.

4  **VII.   PLAINTIFF PARKER'S SONG-BEVERLY ACT CLAIM FAILS**

5      It is well-settled in California that the Song-Beverly Act only applies to new products, and

6  purchases of used vehicles cannot form the basis for a claim under the Act.  *See* Cal. Civ. Code §

7  1791 (defining "consumer goods" in the statute as "any ***new product*** or part thereof that is used,

8  bought, or leased for use primarily for personal, family, or household purposes, except for clothing

9  and consumables.").  Used consumer goods are only "covered by an express warranty where the

10  obligation is on behalf of the distributor or retail seller and 'not the original manufacturer,

11  distributor, or retail seller.'" *Victorino v. FCA US LLC*, 326 F.R.D. 282, 300 (S.D. Cal. 2018)

12  (citing Cal. Civil Code § 1795.5).  In *Victorino*, the court modified an overbroad class definition

13  that included used car purchasers who asserted class action claims against the vehicle

14  manufacturer and concluded that "Plaintiff has failed to demonstrate that the Song–Beverly Act

15  imposes liability on the car manufacturer for class members' purchase of used vehicles from

16  authorized dealerships."  *Id.* at 301; *see also In re MyFord Touch Consumer Litig.*, 291 F.Supp.3d

17  936, 950 (N.D. Cal. 2018) (granting summary judgment for vehicle manufacturer on Song-

18  Beverly Act claims with respect to class members who purchased used vehicles).

19      Plaintiff Parker is the only plaintiff to bring a Song-Beverly Act claim.  Because she

20  purchased a used vehicle, she cannot maintain this claim against the defendants. (Amended

21  Complaint, ¶ 23).[15]

22

23

24

25

_____

26  [15]  Plaintiff Parker's claim under the Song-Beverly Act would also fail for the same reason her
    claim (and claims of the other plaintiffs) fails under the implied warranty laws (*see* Section V
27  above) because she has not adequately alleged a defect with her vehicle and could not show her
    vehicle was not "fit for the ordinary purposes for which such goods are used."  Cal. Civ. Code §
28  1791.1(b).

MOTION TO DISMISS
(2:19-cv-00318) -24-

1    DATED September 19, 2019

2                                          QUINN EMANUEL URQUHART & SULLIVAN, LLP

3
                                                    /s/ Gavin Snyder
4                                               Gavin Snyder, #48332
                                                600 University Street, Suite 2800
5                                               Seattle, Washington 98101-4123
                                                Phone (206) 905-7000
6                                               Fax (206) 905-7100
                                                gavinsnyder@quinnemanuel.com
7
                                                Shon Morgan
8                                               865 S Figueroa St
                                                Los Angeles, CA 90017
9                                               Phone (213) 443-3252
                                                Fax (213) 443-3100
10                                              shonmorgan@quinnemanuel.com
                                                (*Pro Hac Vice Forthcoming*)
11
                                                *Attorneys* for defendants
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS
(2:19-cv-00318) -25-

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on September 19, 2019, I caused a true and correct copy of

3  Defendants' Motion to Dismiss to be filed in this Court's CM/ECF system, which will send

4  notification of such filing to all parties who have appeared in this matter.

5      DATED September 19, 2019.

6                                          /s/ *Gavin Snyder*
                                           Gavin Snyder, WSBA #48332
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS
(2:19-cv-00318) -26-

QUINN EMANUEL URQUHART & SULLIVAN, LLP
600 University Street, Suite 2800
Seattle, Washington 98101-4123
(206) 905-7000