UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LINDA SHORT, et al., | CASE NO. C19-0318JLR |
| Plaintiffs, | ORDER ON DEFENDANTS' |
| v. | MOTION TO DISMISS |
| HYUNDAI MOTOR COMPANY, et al., | |
| Defendants. | |

## I.    INTRODUCTION

Before the court is Defendants Hyundai Motor America, Inc. ("HMA"), Hyundai

Motor Company ("HMC"), Kia Motors America, Inc. ("KMA"), and Kia Motor

Company's ("KMC") (collectively, "Defendants") motion to dismiss Plaintiffs Linda

Short, Olivia Parker, Elizabeth Snider, Jennifer DiPardo, Anthony DiPardo, Seane

Ronfeldt, and James Twigger's (collectively, "Plaintiffs") amended consolidated class

action complaint.  (*See* Mot. (Dkt. # 43); *see also* FAC (Dkt. # 42).)  Plaintiffs oppose the

motion.  (Resp. (Dkt. # 44).)  The court has considered the motion, the parties'

submissions in support of and in opposition to the motion, the relevant portions of the

record, and the applicable law.  Being fully advised,[1] the court GRANTS in part and

DENIES in part the motion as set forth below.

## II.  BACKGROUND

**A.    The Alleged Defects**

This is a putative class action about alleged defects in 2011-2013 Hyundai

Tucsons and 2012-2016 Kia Souls (the "Class Vehicles") that cause the Class Vehicles'

engines to stall and, in some cases, to catch fire.  (*See* FAC ¶¶ 1, 10.)  Plaintiffs allege

that Defendants "knew or should have known" about these defects yet failed to disclose

them.  (*See id.* ¶ 2.)  One plaintiff, James Twigger, alleges that his vehicle—a 2014 Kia

Soul—in fact did catch fire while he was driving it, totally destroying his vehicle.  (*See*

*id.* ¶¶ 2, 28-30.)

1.  2012-2016 Kia Soul

Plaintiffs allege that in February 2019, KMA issued a recall for 378,967 Kia Soul

vehicles from the 2012 to 2016 model years, because the catalytic converter in those

vehicles' 1.6-liter direct injection gasoline engines is susceptible to overheating.  (*See id.*

¶¶ 34, 40, 42-43.)  Further, the overheating can result in abnormal combustion, damage to

---

[1] Defendants requested oral argument (*see* Mot. at 1), but Plaintiffs did not (*see* Resp. at 1).  "Unless otherwise ordered by the court, all motions will be decided by the court without oral argument."  *See* Local Rules W.D. Wash. LCR 7(4); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings.").  Here, the parties' filed extensive briefing, and the court finds that oral argument is unnecessary.  Accordingly, the court denies Defendants' request for oral argument.

the pistons' connecting rods, fracturing the engine block, and ultimately catastrophic engine failure and oil leakage that can result in engine fires. (*See id.*) Plaintiffs allege that KMA "was aware of the dangers of an overheating catalytic converter in these engines since 2016." (*See id.* ¶ 36.) Plaintiffs make similar allegations about Kia Souls with 2.0-liter engines but allege that KMA has not announced a recall for those vehicles. (*See id.* ¶ 43.)

2.  2011-2013 Hyundai Tucson

Plaintiffs allege that manufacturing defects "leading to oil pan leaks in 2011-2013 Hyundai Tucson vehicles have caused serious risk of harm in the form of spontaneous engine stalling and engine fire." (*See id.* ¶ 44.) HMA issued a recall for "at least 120,000" Tucson SUVs from the 2011-2013 model years" due to oil pan leakage. (*See id.* ¶ 45.) However, Plaintiffs allege that the recall did not identify manufacturing defects in the Tucson's 2.0-liter engine as responsible for the oil pan leaks and fires, and even in July 2019, only referred to the Tucson's defect as "an important safety matter." (*See id.*) That month, HMA announced another recall, but Plaintiffs allege that the recall does not address the root cause of the problem and is "too little too late." (*See id.* ¶¶ 49-50.)

**B.  Defendants' Knowledge of the Alleged Defects**

Plaintiffs allege that Defendants "knew or should have known" about the Class Vehicle defects, and that Defendants "did not disclose any of the defects and have done nothing but conceal them until very recently." (*See id.* ¶¶ 51, 65, 66.) Plaintiffs also make more specific allegations about Defendants' knowledge of the alleged defects. (*See id.* ¶¶ 52-54, 57, 60-62, 65, 67-68.)

First, Plaintiffs allege that Defendants knew about the alleged defects because Defendants "have previously recalled other vehicles with GDI engines for similar defects." (*See id.* ¶¶ 52-53.)  Specifically, Plaintiffs aver that in September 2015, Defendants recalled  2011-2012 Hyundai Sonata vehicles, and in March 2017, Defendants recalled 2013-2014 Hyundai Sonata and Santa Fe Sport vehicles equipped with 2.0 and 2.4-liter "Theta II" GDI engines like those in the 2011-2013 Hyundai Tucsons.  (*See id.*)  Plaintiffs quote National Highway Traffic Safety Administration ("NHTSA") safety recall reports that describe the manufacturing defects in the recalled vehicles in detail.  (*See id.* ¶¶ 54, 57.)

Second, Plaintiffs allege that Defendants "should have caught" the defects during Defendants' "rigorous durability testing" at KMA and HMA's joint testing facility, known as the "Proving Grounds."  (*See id.* ¶¶ 60-62.)

Third, Plaintiffs allege that Defendants "definitely knew" about the defects in "at least the 1.6-liter engine" by mid-2016 at the latest, because KMA introduced programming that presumably remedied the problem in the 2012-2016 vehicles for 2017 model year Kia Soul vehicles.  (*See id.* ¶ 65.)  Thus, Plaintiffs allege that KMA "actively concealed its knowledge" of the defect between 2016 and 2019.  (*See id.*)

Fourth, Plaintiffs allege that NHTSA received hundreds of complaints dating back to 2011 about 2012-2016 Kia Soul models with both the 1.6-liter and 2.0-liter engines.  (*See id.* ¶ 67 (listing NHTSA complaints including hearing a "loud bang" and seeing "oil leaking from hole blown in lower engine block"; recounting losing power, the car shutting down "completely," "within a few minutes smoke started coming from the hood

of the car followed by a small fire," and "the fire grew and completely burned the car"; describing how her "husband opened the door to the garage and found flames coming from the stationary Kia" and how "the entire garage caught fire").) Plaintiffs allege similar NHTSA complaints about the 2011-2013 Hyundai Tucson vehicles. (*See id.* ¶ 68 (listing NHTSA complaints including "catastrophic engine failure"; and "my engine blew on my 2013 Tucson, less than 75[,]000 miles.").)

**C.    Plaintiffs' Claims**

Plaintiffs bring claims on behalf of a putative nationwide class and five putative statewide subclasses. (*See id.* ¶¶ 77-78.) Plaintiffs define the putative nationwide class as "[a]ll persons or entities in the United States (including its territories and the District of Columbia) who purchased or leased a Class Vehicle." (*Id.* ¶ 77.) The five statewide putative classes include residents of California, Ohio, Pennsylvania, Washington, and West Virginia. (*Id.* ¶ 78.) Plaintiffs define the statewide putative classes as "[a]ll persons or entities in [name of state] who purchased or leased a Class Vehicle." (*Id.*) On behalf of themselves and these putative classes, Plaintiffs bring the following 15 claims:

//

//

//

//

//

//

//

| Claim | Putative Class |
|---|---|
| **Count I.** Fraud by Concealment | The Nationwide Class, or alternatively, each of the state classes |
| **Count II.** Implied and Written Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* | The Nationwide Class |
| **Count III.** California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* | The Nationwide Class or, in the alternative, Plaintiff Parker on behalf of the California State Class |
| **Count IV.** Violations of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* | The Nationwide Class or, in the alternative, Plaintiff Parker on behalf of the California State Class |
| **Count V.** California Consumer Legal Remedies Act, Cal. Bus. & Prof. Code § 1750, *et seq.* ("CCLRA") | The Nationwide Class or, in the alternative, Plaintiff Parker on behalf of the California State Class |
| **Count VI.** Song-Beverly Consumer Warranty Act for Breach of Implied Warranties, Cal. Civ. Code §§ 1791.1 & 1792. | Plaintiff Parker on behalf of the California State Class |
| **Count VII.** Ohio Consumer Sales Practices Act, O.R.C. §§ 1345.01, *et seq.* ("OCSPA") | Plaintiff Ronfeldt on behalf of the Ohio State Class |
| **Count VIII.** Ohio Deceptive Trade Practices Act, O.R.C. §§ 4165.01 *et seq.* ("ODTPA") | Plaintiff Ronfeldt on behalf of the Ohio State Class |
| **Count IX.** Implied Warranty of Merchantability, O.R.C. §§ 1392,27, 1310.19 | Plaintiff Ronfeldt on behalf of the Ohio State Class |
| **Count X.** Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.* ("PUTPCPA") | The DiPardo Plaintiffs on behalf of the Pennsylvania State Class |
| **Count XI.** Implied Warranty of Merchantability, 13 Pa. C.S.A. § 2A212 | The DiPardo Plaintiffs on behalf of the Pennsylvania State Class |
| **Count XII.** Washington Consumer Protection Act, RCW 19.86.010, *et seq.* ("WCPA") | Plaintiffs Short and Snider on behalf of the Washington State Class |
| **Count XIII.** Implied Warranty of Merchantability, RCW 62A.2-314 and RCW 62A.2A-212. | Plaintiffs Short and Snider on behalf of the Washington State Class |
| **Count XIV.** West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-1-101, *et seq.* ("WVCCPA") | Plaintiff Twigger on behalf of the West Virginia State Class |

| Count XV. Implied Warranty of Merchantability, W. Va. Code §§ 46-2-314 and 46-2A-212. | Plaintiff Twigger on behalf of the West Virginia State Class |
|---|---|

(*See id.* ¶¶ 99-274.)  Plaintiffs do not bring personal injury or product liability claims.

(*See generally id.*)  Rather, Plaintiffs' claims are based primarily on Plaintiffs' allegations that they have been financially harmed by Defendants' failure to disclose the alleged defects, because if Defendants' had disclosed the defects, Plaintiffs "would not have leased or purchased" their vehicles "or would have paid considerably less" for them. (*See id.* ¶¶ 22-28.)  Further, Plaintiffs allege that they "believe that, as a result of Defendants' conduct, the market values of the Class Vehicles have been reduced." (*See id.* ¶ 75.)  Further, aside from Mr. Twigger—whose vehicle has already been destroyed— Plaintiffs contend they are "concerned about driving" their Class Vehicles due to the defects. (*See id.* ¶¶ 22-26.)[2]

     Defendants move to dismiss Plaintiffs' amended complaint on the following grounds:  (1) Plaintiffs fail to meet Federal Rule of Civil Procedure 9(b)'s pleading standards for Plaintiffs' fraud-based claims (*see* Mot. at 12); (2) All Plaintiffs, other than Mr. Twigger and Mr. Ronfeldt, lack Article III standing because they have not alleged a concrete and particularized injury (*see id.* at 21-22); (3) Mr. Ronfeldt's claims under the ODTPA and OSCPA fail because Mr. Ronfeldt lacks standing as an individual consumer

---

[2] Aside from Mr. Twigger, Mr. Ronfeldt is the only other plaintiff who alleges he experienced a manifestation of the defect. (*See id.* ¶ 26.)  Mr. Ronfeldt alleges that his 2016 Kia Soul's engine "shuddered and lost all power" because the engine blew a connecting rod through the engine casing. (*See id.*)  Mr. Ronfeldt alleges that the Kia dealership he visited after this incident "suggested replacing the engine but refused to do this work under warranty or otherwise compensate [Mr.] Ronfeldt for replacing the engine or any other repairs." (*See id.*)

to sue under the ODTPA and fails to allege notice as required under the OSCPA (*see id.* at 22-26); (4) Mr. Twigger fails to allege notice under the WVCCPA (*see id.* at 26-27); (5) Plaintiffs' claims for breach of implied warranty fail because Plaintiffs do not allege privity with Defendants and, except for Mr. Twigger and Mr. Ronfeldt, Plaintiffs do not allege facts indicating their vehicles are unfit (*see id.* at 27-28); (6) Plaintiffs' Magnuson-Moss Warranty Act claims fail because Plaintiffs plead no viable state law warranty claims and because the amended complaint does not name 100 Plaintiffs (*see id.* at 29-30); and (7) Ms. Parker's Song-Beverly Act claim fails because that law only applies to purchases of new vehicles and Ms. Parker purchased a used vehicle (*see id.* at 30).[3]

### III.    ANALYSIS

**A.    Legal Standards**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith*

---

[3] Defendants raise a statute of limitations argument for the first time in reply and request the court "exercise its discretion to permit the argument to be made on reply." (*See* Reply at 16 n.17.) "The district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003)). Defendants rely on *McGeer v. BNSF Ry. Co.*, No. C09-5330 BHS, 2013 WL 1499053, at *2 (W.D. Wash. Apr. 10, 2013), a case in which the parties disputed whether damages were at issue in the defendants' motion for partial summary judgment such that the court should have considered damages in deciding that motion. Here, in contrast, Defendants do not contend that statutes of limitations were at issue in its motion or in Plaintiffs' response. (*See* Reply (Dkt. # 46) at 16 n.17.) Therefore, the court declines to consider Defendants' statute of limitations argument here.

*Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  The court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 677-78.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'. . .  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion to dismiss.  *Lee v. City of L.A.,* 250 F.3d 668, 688 (9th Cir. 2001) (citations omitted).  The Ninth Circuit, however, carves out certain exceptions to this rule.  First, the court may consider documents appended or attached to the complaint.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Second, a court may consider "documents whose contents are alleged in the complaint and whose

authenticity no party questions, but which are not physically attached to the pleading[.]" *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Third, a court may take judicial notice of matters of public record. *Lee*, 250 F.3d at 688-89 (citations omitted); *see also* Fed. R. Evid. 201.

**B.      Plaintiffs Short, Parker, Snider, Jennifer DiPardo, and Anthony DiPardo's Standing**

As jurisdiction must be established as a threshold matter, the court considers it first. *See Lowry v. Barnhart*, 329 F.3d 1019, 1022 (9th Cir. 2003) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). "[T]he jurisdictional question of standing precedes, and does not require, analysis of the merits." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (internal quotation omitted).

Standing has three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). The plaintiff bears the burden of establishing these elements, and when "a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id*. (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or

imminent, not conjectural or hypothetical." *Friends of the Earth, Inc.*, 528 U.S. at 181, (quoting *Lujan*, 504 U.S. at 560); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

The standing inquiry is distinct from the merits of Plaintiffs' claims. *See, e.g.*, *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (stating that the court's "threshold inquiry into standing 'in no way depends on the merits'" of the plaintiff's claim). In putative class actions, only the named plaintiffs must allege facts sufficient to confer standing. *See Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003).

Defendants do not challenge standing for Mr. Twigger and Mr. Ronfeldt, each of whom allege that their vehicles manifested defects. (*See* FAC ¶¶ 2, 26, 28-30.) Defendants instead claim that the remaining Plaintiffs lack standing because they "do not allege they have experienced *any* problems with their vehicles, much less engine failure due to the alleged defect." (*See* Mot. at 21 (citing *id.* ¶¶ 22-25).) Instead, the other Plaintiffs allege that "[h]ad Defendants disclosed the safety-related defect and risk of fire or stalling at the time of lease and purchase, Plaintiff[s] would not have leased or purchased [their] vehicle or would have paid considerably less for it." (*Id.* ¶¶ 22-25.) Each of the remaining Plaintiffs also alleges that they regularly service their vehicle but are now "concerned about driving it due to the dangers resulting from the defect" and believes that "its market value has been diminished as a result of the defect." (*See id.*) More generally, Plaintiffs allege that "consumers have been driving unsafe vehicles that

//

would suddenly stall at speed or burst into flames" (*see id.* ¶ 74) and that "Class Vehicles have also diminished in value as a result of Defendants' fraud" (*see id.* ¶ 106).

Economic injury under the "benefit of the bargain" theory is widely recognized to confer standing when adequately alleged. *See, e.g.*, *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 947-48 (9th Cir. 2002); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1162 (C.D. Cal. 2010) ("*In re Toyota I*") ("While a statistically significant propensity for [an alleged vehicle defect] may not be considered 'actual' or 'imminent,' the *market effect* of the [alleged defect] undoubtedly *is* actual or imminent (as well as concrete and particularized)"). When a plaintiff sufficiently pleads "overpayment, loss in value, or loss of usefulness," those allegations confer standing. *See id.* at 1166; *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (plaintiffs have standing when they spend money "that, absent defendants' actions, they would not have spent"); *Doyle v. Chrysler Grp., LLC*, 663 F. App'x 576, 578 (9th Cir. 2016) (concluding that a plaintiff had standing because he alleged that he "suffered economic loss when he purchased a replacement regulator with an undisclosed safety defect").

Although the remaining Plaintiffs' allegations that they "believe" the market value has diminished and they are "concerned" about driving their vehicles alone may be insufficient to confer standing, these Plaintiffs nevertheless have standing under the economic loss rule. Plaintiffs allege that the Class Vehicles suffer from safety defects that create the risk that the engines will catch fire. (*See* FAC ¶¶ 1, 10.) Ms. Short, Ms. Parker, Ms. Snider, Mr. DiPardo, and Ms. DiPardo each allege that if Defendants had

disclosed these defects, they would not have purchased their vehicles or would have paid

less for them.  (*See id.* ¶¶ 22-25.)

The cases Defendants rely on are distinguishable.  In *Cahen v. Toyota Motor*

*Corp.*, the Ninth Circuit held that the plaintiffs lacked standing when their alleged injury

was the risk that their vehicles' computer systems would be hacked.  717 Fed. App'x 720,

723 (9th Cir. 2017).  The Ninth Circuit concluded that the plaintiffs' alleged economic

loss theory was not credible because not a single vehicle had actually been hacked and

because "[n]early 100% of cars on the market include wireless technologies that could

pose vulnerabilities to hacking or privacy intrusions." *See id.*   Additionally, the

plaintiffs had not alleged a market effect as the result of recalls or declining Kelley

Bluebook values.  *See id.*  In contrast, here, Plaintiffs allege that a large number of

vehicles have experienced the alleged defects and that Defendants have initiated recalls

of a large portion of the Class Vehicles.  (*See* FAC ¶¶ 34, 40, 42-43, 45, 49-50.)

Accepting these allegations as true, each Class Vehicle has a statistically significant

propensity to experience the alleged defects.

Defendants also rely on *Anderson v. Hyundai Motor Co. Ltd.*, No.

SACV131842DMGRNBX, 2014 WL 12579305, at *7 (C.D. Cal. July 24, 2014), for the

proposition that when plaintiffs allege economic loss predicated solely on how a product

functions absent manifestation of a defect, the plaintiffs must allege "something more"

than "overpaying for a defective product."  (*See* Mot. at 22.)  However, *Anderson* is

inapposite because the *Anderson* court held that the plaintiffs' alleged injuries were too

speculative because the plaintiffs had "not adequately demonstrated that there is *any*

defect" in the product at issue.  *Anderson*, 2014 WL 12579305, at *6.  Moreover, the "something more" language is quoted from *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1165-66 & n.11 (C.D. Cal. 2011) ("*In re Toyota II*"), a case in which the district court denied the defendants' Rule 12(b)(1) motion to dismiss for lack of standing and found that the plaintiffs alleging economic loss sufficiently stated an injury in fact to satisfy Article III standing—as do Plaintiffs here.  *See In re Toyota II*, 790 F. Supp. 2d at 1167.  As that court determined, the plaintiffs "bargained for safe, defect-free vehicles, but instead received unsafe, defective vehicles.  The overpayment for the defective, unsafe vehicle constitutes an economic-loss injury that is sufficient to confer standing." *Id*.  Here, too, Plaintiffs have adequately alleged "something more" than alleged overpayment; namely, "sufficiently detailed, non-conclusory allegations of the product defect."  *Id.* at 1165-66 & n.11.

Based on the foregoing analysis, the court concludes that each Plaintiff sufficiently alleges a concrete and particularized economic injury in fact that satisfies Article III standing.  Accordingly, the court DENIES Defendants' motion to dismiss on this ground.

**C.  Plaintiffs' Fraud-Based Claims (Counts I, III, IV, V, VIII, X, XII, and XIV)**

Defendants argue—and Plaintiffs do not contest—that Plaintiffs' claims under Counts I, III, IV, V, VIII, X, XII, and XIV sound in fraud and are therefore subject to the heightened pleading standards of Rule 9(b).  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").  (*See* Mot. at 13-14.)

Rule 9(b)'s particularity requirement applies to all state law causes of action that "sound in fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). If a party alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of a claim, the pleading as a whole must satisfy Rule 9(b)'s heightened standard. *Id.* Here, Plaintiffs' claims under Counts I, III, IV, V, VIII, X, XII, and XIV rely on the same set of facts, which include allegations of fraudulent omissions. (*See generally* FAC.) Thus, these claims are subject to the heightened pleading standard of Rule 9(b).

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Thus, to avoid dismissal under Rule 9(b), a claim sounding in fraud must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). "In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Haberman v. Wash. Pub. Power Supply Sys.*, 744 P.2d 1032, 1069 (Wash. 1987), *amended*, 750 P.2d 254 (Wash. 1988) ("The complaining party must plead both the elements and circumstances of fraudulent conduct."). Further, the Ninth Circuit has stated that "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th

Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998) (alterations in original)).

The complaint must include an account of the time, place and specific content of false representations as well as the identities of the parties to the misrepresentations. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019). In other words, Plaintiffs must allege "the who, what, when, where, and how" of the alleged fraud. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997); *see also Macris v. Bank of Am., N.A.*, No. CV F 11-1986 LJO SKO, 2012 WL 273120, at *11 (E.D. Cal. Jan. 30, 2012) (stating that the plaintiffs must allege "the names of the persons who made the allegedly fraudulent misrepresentations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written") (internal quotation omitted).

Rule 9(b)'s standard is relaxed in fraudulent omission cases. *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1132 (W.D. Wash. 2010) (citing *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal. 2007)); *see also Zwicker v. Gen. Motors Corp.*, No. C07–0291–JCC, 2007 WL 5309204, at *4 (W.D. Wash. July 26, 2007). In such cases, a plaintiff "will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Falk*, 496 F.Supp.2d at 1098-99. "Nonetheless, a plaintiff pleading fraudulent omission or concealment must still plead the claim with particularity." *Asghari v. Volkswagon Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013); *Waldrup v. Countrywide Financial Corp.*, No. 2:13-cv-08833-CAS(CWx), 2014 WL 3715131, *5 (C.D. Cal. July

//

23, 2014) (holding that where a fraudulent omission is at issue, the requirements of Rule 9(b) are relaxed, but not eliminated).

Defendants argue that Plaintiffs fail to meet Rule 9(b)'s heightened pleading standard because (1) Plaintiffs have not alleged any specific misrepresentations or deceptive acts (*see* Mot. at 13); (2) Plaintiffs' references to fraudulent omissions are "conclusory" (*see id.* at 15); (3) Plaintiffs fail to allege reliance (*see id.* at 16); and (4) Plaintiffs fail to allege that Defendants knew of any purported defects (*see id.* at 19). Defendants further contend that for all required elements, Plaintiffs "have failed to plead their claims with particularity." (*See id.* at 12.)

1. <u>Specific Misrepresentations or Deceptive Acts</u>

Defendants contend that Plaintiffs "do not allege a single affirmative statement by [D]efendants in connection with the underlying transactions, nor any conduct that would constitute a deceptive act or practice, instead asserting only unsupported conclusions that [D]efendants 'concealed' the truth about the purported defects, or 'made and/or disseminated untrue or misleading statements.'" (*See* Mot. at 14 (citing FAC ¶¶ 14, 16, 65, 95, 102-4, 136, 146-7, 236-7, 259).)

In response, Plaintiffs do not address Defendants' arguments regarding specific misrepresentations and do not identify any alleged misrepresentations by Defendants. (*See generally* Resp.) Instead, Plaintiffs focus on Defendants' alleged "fraud by concealment and omission." (*See id.* at 16.) Therefore, the court accepts Defendants' position that Plaintiffs do not allege affirmative misrepresentations and the parties'

//

apparent agreement that Plaintiffs' fraud-based claims rise or fall on Plaintiffs'

allegations of concealment and omissions.

    2.  Fraudulent Omissions

    Defendants contend that Plaintiffs' allegations of Defendants' omissions fail to

satisfy Rule 9(b)'s heightened pleading standard because Plaintiffs rely on "generalized

allegations that [D]efendants failed to disclose a purported defect and that [D]efendants'

recalls are 'inadequate.'" (*See* Mot. at 15.)  Defendants further contend that Plaintiffs

"do not allege what should have been disclosed about the purportedly defective engines,

or when and in what materials defendants should have disclosed such information." (*See

id.* at 16.)  The court disagrees.

    Plaintiffs plead sufficient facts which, if taken as true, suggest that Defendants had

a duty to disclose information about the Class Vehicles' defects at the point at which they

had knowledge of them.  Under California law, a safety defect that a reasonable customer

would find material triggers a duty to disclose, even absent a transaction or fiduciary

relationship.  *See Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888, 897 (N.D. Cal.

2015) (citing cases).  Similarly, under Washington law, when a "manufacturer has

superior information regarding defects that are not readily ascertainable to customers, it

has a duty to disclose that information." *See Carideo*, 706 F. Supp. 2d at 1133 (quoting

*Zwicker*, 2007 WL 5309204, at *4); *see also Testo v. Russ Dunmire Oldsmobile, Inc.*, 554

P.2d 349, 358 (Wash. Ct. App. 976).

    A similar duty to disclose also exists under Pennsylvania, Ohio, and West Virginia

law.  *See Drayton v. Pilgrim's Pride Corp.*, No. CIV.A. 03-2334, 2004 WL 765123, at *7

(E.D. Pa. Mar. 31, 2004) (Manufacturers have "a duty to disclose a know[n] latent defect to a purchaser when the purchaser is unsophisticated and does not have access to the same information as the manufacturer.'") (quoting *Zwiercan v. Gen. Motors Corp.*, 2002 WL 31053838, 58 Pa. D. & C. 4th 251, 259 (Pa. Com. Pl. 2002)); *Belville v. Ford Motor Co.*, 60 F. Supp. 3d 690, 696 (S.D. W. Va. 2014) (discussing the duty to disclose "facts basic to the transaction" when "objective circumstances" are such that the person "would reasonably expect disclosure of those facts"); *Spears v. Chrysler LLC*, No. 08-331, 2009 WL 7424561, at *10 (S.D. Ohio Feb. 8, 2011).

The duty to disclose, however, depends on Defendants' knowledge of the alleged defects at the times Plaintiffs purchased their Class Vehicles.[4] *See Grodzitsky v. Am. Honda Motor Co.*, No. 2:12-CV-1142-SVW-PLA, 2013 WL 690822, at *7 (C.D. Cal. Feb. 19, 2013) (holding that the plaintiffs failed to establish a plausible inference of knowledge based on their allegation that the defendant "received customer complaints *after* the sales of the vehicles in question.").

The court first concludes that Plaintiffs' allegations that Defendants knew of the alleged defects because they generally conduct rigorous testing are insufficient to allege knowledge under Rule 9(b)'s pleading standard, as is Plaintiffs' general allegation that Defendants "are familiar with engine defects" and have a history of manufacturing and

---

[4] In a footnote, Plaintiffs argue in the alternative that "even if Defendants only learned of the defects after the sale of some of Plaintiffs' vehicles, they still concealed the defects for years while Plaintiffs and Class members risked or experienced stalls and fires." (*See* Resp. at 20 n.12.) However, Plaintiffs do not develop this argument further and cite no authority under which Defendants' duty to disclose extends to the time period after the relevant transactions. (*See generally* Resp.) Accordingly, the court does not consider it further.

design defects that result in stalling and fires.  (*See* FAC ¶ 52.)  These allegations are too general to meet Rule 9(b)'s requirement that Defendants' knowledge of the specific Class Vehicle defects be pleaded with particularity.[5]  *See Asghari*, 42 F. Supp. 3d at 1325.

Plaintiffs' remaining allegations regarding Defendants' knowledge of the Class Vehicles' defects are based on NHTSA complaints, Defendants' recalls of defective GDI engines since September 2015, Defendants' admission that "as many as 1%" of their vehicles have "caught on fire," and Defendants' having implemented a change in July 2016 meant to correct the Kia Soul defect.  (*See* Resp. at 20-21.)  Plaintiffs purchased their vehicles at different times, and Plaintiffs' allegations of Defendants' knowledge also differ in time as to the three vehicle models at issue.  The court concludes that Ms. Parker and Mr. Ronfeldt sufficiently allege knowledge and fulfill Rule 9(b)'s requirements; and that Ms. Short, Ms. Snider, Mr. DiPardo, Ms. DiPardo, and Mr. Twigger fail to allege knowledge as required by Rule 9(b).

> a. *Ms. Parker and Mr. Ronfeldt Allege with Particularity Defendants' Knowledge of the Kia Soul Defect as of Mid-2016*

Ms. Parker purchased a used 2014 Kia Soul in 2018 from Palm Springs Kia in California.  (*See* FAC ¶ 23.)  Mr. Ronfeldt purchased a new 2016 Kia Soul in November 2016.  (*See id.* ¶ 26.)  Plaintiffs' allegations, taken together and taken as true, are sufficient to plausibly infer that Defendants were aware of the Kia Soul's defect prior to

//

---

[5] The court also concludes that the amended complaint's "should have known" allegations are insufficient to properly allege knowledge and trigger the disclosure duty.  (*See, e.g.*, FAC ¶¶ 51, 65, 66.)

Ms. Parker's and Mr. Ronfeldt's purchases. Plaintiffs allege that Kia[6] instituted a "fix" by mid-2016—prior to Ms. Parker's and Mr. Ronfeldt's purchases—for the same defects in its Kia Soul models beginning in 2017. (*See id.* ¶ 65.) Instituting a "fix" plausibly infers that Kia was aware of the problem that needed fixing.

Moreover, Plaintiffs' allegations that consumers complained to the NHTSA that their Kia Soul engines were failing and catching fire starting in 2011 buttress the inference of Defendants' knowledge. (*See id.* ¶ 67.) Scattered customer complaints or recalls of related products may not be sufficient, standing alone, to allege particular knowledge under Rule 9(b). (*See, e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) ("Some courts have expressed doubt that customer complaints in and of themselves adequately support an inference that a manufacturer was aware of a defect," because "complaints posted on a manufacturer's webpage merely establish the fact that some consumers were complaining. By themselves they are insufficient to show that the manufacturer had knowledge of the defect.") (internal quotation omitted). However, in this case, the complaints are on top of the alleged mid-2016 "fix" of the defect, and further suggest an inference that Defendants were aware of the alleged defects in the 2012-2016 Kia Souls.

Ms. Parker and Mr. Ronfeldt have sufficiently pleaded the remaining elements required to state an omission claim under Rule 9. The specific defect alleged—that a vehicle may malfunction and catch on fire—is more than plausibly material. *See In re*

*//*

---

[6] The court refers to KMA and KMC collectively as "Kia."

*Toyota I* at 1173 (stating that the court was convinced that a "fundamental" safety consideration is material to consumers).  Moreover, Plaintiffs plead reliance by alleging that they would not have purchased their vehicles—or would have purchased them at a reduced price—if Defendants had disclosed the defect.  (*See* FAC ¶¶ 22-28.)

Accordingly, the court DENIES Defendants' motion to dismiss Ms. Parker's (Counts I, III-V) and Mr. Ronfeldt's (Counts I, III-V, VIII) fraud-based claims on Rule 9 grounds.

> b. *Ms. Short, Ms. Snider, Mr. and Ms. DiPardo, and Mr. Twigger Fail to Sufficiently Allege Defendants' Knowledge as of Their Purchase Dates.*

Ms. Short leased her 2013 Hyundai Tucson on March 30, 2013, then purchased it at the end of the lease from Hyundai of Kirkland.  (*See id.* ¶ 22.)[7]  However, even accepting all of Plaintiffs' allegations as true, Plaintiffs' allegations that Defendants knew of the Hyundai Tucson defect plausibly support only an inference that Defendants knew of the alleged Tucson defect as of 2016.  First, even if NHTSA customer complaints supported a plausible inference of Defendants' knowledge, Plaintiffs do not identify any NHTSA complaints regarding Hyundai Tucsons prior to 2016.  (*See* FAC ¶ 68 n.28 (stating that NHTSA complaints regarding Ms. Short's model "go back as far as June 14, 2016").)  Second, Ms. Short's lease of her vehicle predates Plaintiffs' allegations regarding recalls starting in September 2015, and also predates Defendants' fix of the defect in the distinct Kia models in 2016.  Accordingly, Ms. Short fails to allege

//

---

[7] The amended complaint does not include Ms. Short's purchase date.  (*See generally* FAC.)

Defendants' knowledge of the alleged defect with particularity under Rule 9(b), and therefore fails to state a claim under Counts I, III, IV, V, and XII.

Ms. Snider, Mr. DiPardo, Ms. DiPardo, and Mr. Twigger all purchased their Kia Soul vehicles prior to the 2016 "fix" and prior to the September 2015 recalls of related models. (*See* FAC ¶¶ 24 (stating Ms. Snider purchased her Kia Soul in 2012), 25 (stating that Mr. DiPardo and Ms. DiPardo "purchased a new 2014 Kia Soul," but not providing a purchase date), 27 (stating that Mr. Twigger purchased his Kia Soul in July 2014).) Plaintiffs therefore must rest on the NHTSA complaints to infer Defendants' knowledge of the Kia Soul defects at the time of Ms. Snider's, Mr. DiPardo and Ms. DiPardo's, and Mr. Twigger's purchases. Although Plaintiffs refer to "hundreds" of total NHTSA complaints about the Kia Soul models at issue dating back to 2011, Plaintiffs do not provide the dates of the specific examples included in the amended complaint. (*See id.* ¶ 67.)

Moreover, Plaintiffs do not convey whether the NHTSA complaints prior to Plaintiffs' purchase dates refer to the defect Plaintiffs allege in this lawsuit and do not allege that Defendants were aware of these NHTSA complaints at the time of Plaintiffs' purchases. (*See generally* FAC.) Even if Plaintiffs did identify NHTSA complaints, they would likely be insufficient, standing alone, to create a plausible inference of Defendants' knowledge of the defects at issue. *See Wilson*, 668 F.3d at 1147.

Accordingly, the court GRANTS Defendants' motion to dismiss Ms. Short's (Counts I, III-V, XII), Ms. Snider's (Counts I, III-V, XII), Mr. DiPardo and Ms. DiPardo's (Counts I, III-V, X), and Mr. Twigger's (Counts I, III-V, XIV) fraud-based

claims, but with leave to amend to include facts, if any, that cure the defects in these claims.[8]  *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (stating that where claims are dismissed under Rule 12(b)(6), the court "should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

**D.    Mr. Ronfeldt's ODTPA and OCSPA Claims (Counts VII and VIII)**

Defendants move to dismiss (1) Mr. Ronfeldt's ODTPA claim on the ground that Mr. Ronfeldt lacks standing to bring that claim; and (2) Mr. Ronfeldt's OCSPA claim on the basis that Plaintiffs fail to properly allege notice.  (*See* Mot. at 22-26.)

//

//

//

---

[8] Defendants also seek dismissal of Mr. Twigger's fraud-based claim under the WVCCPA (Count XIV) on the ground that Mr. Twigger failed to allege notice under the WVCCPA.  (*See* Mot. at 26.)  The WVCCPA provides:  "[N]o action, counterclaim, cross-claim or third-party claim may be brought pursuant to the provisions of this section until the person has informed the seller or lessor in writing and by certified mail, return receipt requested, of the alleged violation and provided the seller or lessor twenty days from receipt of the notice of violation but ten days in the case a cause of action has already been filed to make a cure offer." W. Va. Code Ann. § 46A-6-106(c).  Plaintiffs allege that Mr. Twigger notified Kia after his vehicle caught fire on July 1, 2017, and that Kia did not offer any compensation.  (*See* FAC ¶ 264.)  However, Mr. Twigger fails to allege that he identified a WVCCPA violation in that notification.  *See Stanley v. Huntington Nat. Bank*, No. 1:11CV54, 2012 WL 254135, at *7 (N.D.W. Va. Jan. 27, 2012) (granting the defendant's motion to dismiss the plaintiff's WVCCPA claim because "the correspondence sent to [the defendant] by the plaintiff did not assert any alleged violation of the WVCCPA"), *aff'd*, 492 F. App'x 456 (4th Cir. 2012).  At least some West Virginia courts provide a plaintiff an opportunity to cure the notice requirement, and the court finds that Mr. Twigger should be afforded the opportunity to cure here.  *White v Teays Valley Health Services, LLC*, No. 06-C-1044, 2006 WL 4524697, at *1 (W. Va. Cir. Ct. Nov. 09, 2006).  The court will therefore allow Mr. Twigger the opportunity to cure his failure to comply with the WVCCPA's notice requirement on or before the date Plaintiffs' second amended complaint is due to be filed.  (*See infra* § IV.)

1   1. <u>ODTPA Claim (Count VIII)</u>

2    Defendants move to dismiss Mr. Ronfeldt's ODTPA claim on the ground that

3 individual consumers lack standing to sue under the ODTPA. (*See* Mot. at 23.)

4 Although Defendants acknowledge that the Ohio Supreme Court has not definitively

5 resolved the question, Defendants rely on the "vast majority of federal courts and all

6 lower state courts to address the issue" that have "concluded that relief under the

7 [O]DTPA is not available to consumers." (*See id.* (quoting *Sindell v. Fifth Third Bank*,

8 No. 1:18 CV 479, 2019 WL 3318571, at *2 (N.D. Ohio Jan. 24, 2019)).) Plaintiffs rely

9 on the minority of federal district court cases and the word "individual" in the ODTPA to

10 argue that consumers may sue under the ODTPA. (*See* Resp. at 29-30 (citing Ohio Rev.

11 Code §§ 4165.03(A)(2) (providing a cause of action for any "person who is injured by a

12 person who commits a deceptive trade practice), 4165.01(D) (defining "person" as "an

13 *individual*, corporation, government . . . .") (emphasis added)).)

14    Here, several factors persuade the court that the Ohio Supreme Court would

15 determine that the ODTPA does not provide a cause of action for an individual consumer.

16 First, the clear weight of authority in Ohio's appellate courts agrees. *See, e.g.*, *Michelson*

17 *v. Volkswagen Aktiengesellschaft*, 99 N.E. 3d 475, 479-80 (Ohio Ct. App. 2018); *Dawson*

18 *v. Blockbuster, Inc.*, No. 86451, 2006 WL 1061769, at *4 (Ohio Ct. App. Mar. 16, 2006);

19 *Hamilton v. Ball*, 7 N.E. 3d 1241, 1252-53 (Ohio Ct. App. 2014). Second, although the

20 term "individual" suggests consumers may bring claims, Ohio courts look to how federal

21 courts construe the Lanham Act when construing the ODTPA, which also does not

22 provide a cause of action for individuals. *See Gascho v. Global Fitness Holdings,*

*LLC*, 863 F. Supp. 2d 677, 698 (S.D. Ohio 2012).  Third, the statutory context suggests that the majority interpretation does not read "individual" out of the statutory text.  As several Ohio appellate courts point out, a person may be able to sue under the UDTPA in their individual capacity but only "as a participant in commercial activity."  *See id.*; *see also Hamilton v. Ball*, 7 N.E.3d 1241, 1253 (Ohio Ct. App. 2014).

Therefore, the court GRANTS Defendants' motion to dismiss Mr. Ronfeldt's ODTPA claim (Count VIII) with prejudice.

### 2. OCSPA Claim

Defendants move to dismiss Mr. Ronfeldt's OCSPA claim for the independent reason that Mr. Ronfeldt fails to adequately allege notice.  (*See* Mot. at 25-26.)  To pursue a class action claim under the OCSPA, Mr. Ronfeldt must allege that Defendants had prior notice that their conduct was "deceptive or unconscionable."  *See Pattie v. Coach, Inc.*, 29 F. Supp. 3d 1051, 1055 (N.D. Ohio 2014) (quoting O.R.C. § 1345.09(B)).  To satisfy the notice requirement, a plaintiff "must allege either that 'a specific rule or regulation has been promulgated [by the Ohio Attorney General] under [O.]R.C. [§ ]1345.05 that specifically characterizes the challenged practice as unfair or deceptive,' or that 'an Ohio state court has found the specific practice either unconscionable or deceptive in a decision open to public inspection.'"  *See id.* (quoting *Johnson v. Microsoft Corp.*, 802 N.E.2d 712, 720 (Ohio Ct. App. 2003).  The decisions of federal courts sitting in Ohio are insufficient to provide the required notice.  *See Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 648 (N.D. Ohio 2012).  Lack of prior notice

//

requires dismissal of class action allegations. *See Bower v. Int'l Bus. Machines, Inc.*, 495 F. Supp. 2d 837, 841 (S.D. Ohio 2007).

The notice requirement must be read alongside the OSCPA's direction that it is a remedial law which is designed to compensate for traditional consumer remedies and so must be liberally construed, *see Johnson v. Microsoft Corp.*, 802 N.E.2d at 720, and that the notice requirement demands only "reasonable specificity." *Amato v. Gen. Motors Corp.*, 463 N.E.2d 625, 632 (Ohio Ct. App. 1982) ("[T]here must be some leeway for a general rule which reasonably tells potential actors or practitioners what they may not do."). Although Plaintiffs do not point to a regulation or an Ohio state court case that directly addresses whether Defendants are on notice that a vehicle manufacturer's failure to disclose engine defects is an unfair or deceptive act or practice under the OSCPA, Plaintiffs cite to Ohio state cases finding that certain misrepresentations in motor vehicle transactions constitute unfair or deceptive acts, and the court's research revealed others. (*See* Resp. at 28-29.)

For example, it is an unfair or deceptive act or practice for a supplier to represent "[t]hat the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not," *see* Ohio Rev. Code § 1345.02(B)(2); where a "manufacturer . . . [f]ail[s] to disclose . . . any defect and/or the extent of any previous damage to such vehicle, retail repair cost of which exceeds or exceeded six per cent of the manufacturer's suggested retail price . . . ." and has actual knowledge of the defect, *see* Ohio Admin. Code 109:4-3-16; and where a seller fails to disclose damage while representing that a vehicle was in "good condition", *see Hamilton v. Ball*, 7 N.E.3d 1241,

1258 (Ohio Ct. App. 2014). These authorities, combined with the direction to liberally

construe the OSCPA, persuade the court that Mr. Ronfeldt's OSCPA claim does not fail

at the pleading stage for lack of notice. Therefore, the court DENIES Defendants'

motion to dismiss Mr. Ronfeldt's OSCPA claim (Count VII).

**E.     Implied Warranty Claims (Counts IX, XI, XIII, and XV)**

Defendants argue that Plaintiffs' claims for breach of implied warranties should be

dismissed because (1) Mr. Twigger, Ms. Short, Ms. Snider, and Mr. Ronfeldt do not

stand in vertical contractual privity with Defendants and (2) Ms. Short, Ms. Snider, Ms.

Parker, Mr. DiPardo, and Ms. DiPardo fail to allege facts indicating their vehicles are

unfit. (*See* Mot. at 27-28.)

1.  Privity

a.  *Mr. Twigger's Implied Warranty Claim (Count XV)*

Plaintiffs' response cites to West Virginia case authority that states in no uncertain

terms that "[t]he requirement of privity of contract in an action for breach of express or

implied warranty in West Virginia is hereby abolished." (*See* Resp. at 23 (quoting *E.*

*Steel Constructors, Inc. v. City of Salem*, 549 S.E. 2d 266, 276 (W. Va. 2001) (in turn

quoting *Sewell v. Gregory*, 371 S.E.2d 82 (W. Va. 1988)).) Defendants do not address

this authority in reply (*see generally* Reply) and recent West Virginia cases continue to

affirm it. *See, e.g.*, *Harper v. Navistar, Inc.*, No. 2:15-CV-03558, 2016 WL 1178782, at

*4 (S.D.W. Va. Mar. 23, 2016); *Ohio Cty. Dev. Auth. v. Pederson & Pederson, Inc.*, No.

CIV.A. 5:09CV27, 2010 WL 391616, at *6 (N.D.W. Va. Jan. 26, 2010). Therefore, the

//

court will not dismiss Mr. Twigger's implied warranty claim (Count XV) on privity grounds.

### b. Mr. Ronfeldt's Implied Warranty Claim (Count IX)

In contrast to West Virginia state law, Ohio state law requires that a plaintiff bringing an implied warranty claim stand in vertical privity with the defendant. *See Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1148 (Ohio 2007) ("[I]n Ohio, vertical privity exists only between immediate links in the distribution chain). Plaintiffs contend that Mr. Ronfeldt has established vertical privity because he purchased his Kia Soul from an authorized dealership and because the manufacturer issued a written warranty covering the vehicle in question. (*See* Resp. at 23.) The default rule under Ohio state law is that "[o]ne who receives goods from another for resale to a third person is not thereby the other's agent in the transaction." *Curl*, 871 N.E.2d at 1148 (quoting Restatement (Second) of Agency § 14J (Am Law Inst. 1958)) (alteration in *Curl*). To plausibly allege vertical privity with the manufacturer, Mr. Ronfeldt must allege facts showing that the dealership's duty to act is primarily for the benefit of the manufacturer. *See id.* (holding that the facts did not establish vertical privity between an individual consumer and an authorized Volkswagen dealership where the dealership purchased the vehicle at issue from the manufacturer "primarily for its own benefit" and "without any intent to benefit Volkswagen through its actions"). Here, Plaintiffs' amended complaint alleges no facts about Taylor Kia, where Mr. Ronfeldt purchased his Kia Soul, that involve Taylor Kia's relationship with Defendants. (*See generally* FAC.)

//

1     Plaintiffs next argue that federal courts applying Ohio law find the privity

2  requirement satisfied "where the manufacturer issued a written warranty covering the

3  vehicle in question and the claims are based on warranty-covered defects." *See In re*

4  *FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582, 596 (E.D. Mich.

5  2018) (citing *Roxy Home Improvement, LLC v. Mercedes-Benz USA*, LLC, No.

6  17-01817, 2018 WL 1705800, at *5 (N.D. Ohio Apr. 9, 2018)).  However, these

7  authorities stand only for the proposition that privity is established with respect to *express*

8  warranties where the plaintiff's claims are "based on warranty-covered defects."  *See In*

9  *re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d at 596.  Plaintiffs cite

10  to no Ohio state law authority, and the court is aware of none, under which the mere

11  presence of a *written* warranty overcomes the privity requirement for a claim for breach

12  of an *implied* warranty.

13     Plaintiffs assert in response to Defendants' motion to dismiss that Mr. Ronfeldt

14  possesses a written warranty for his 2016 Kia Soul.  (*See* Resp. at 23 (citing FAC

15  ¶¶ 26-27).)  Plaintiffs' amended complaint only refers to this warranty in passing, but

16  even if Mr. Ronfeldt had alleged more detailed facts regarding the warranty's coverage of

17  the alleged defect, the amended complaint does not contain a claim for breach of an

18  express warranty.

19     Therefore, the amended complaint fails to allege facts sufficient to plausibly allege

20  that Mr. Ronfeldt stands in vertical privity with the manufacturer, Defendant KMC.  On

21  that basis the court GRANTS Defendants' motion to dismiss Mr. Ronfeldt's implied

22  *//*

warranty claim (Count IX), with leave to amend to include facts, if they exist, sufficient to plausibly allege vertical privity.

> c. *Ms. Short and Ms. Snider's Implied Warranty Claim (Count XIII)*

Like Ohio state law, Washington state law requires individual consumers to establish vertical privity with the manufacturer to state a claim for breach of an implied warranty. *See Lohr v. Nissan N. Am., Inc.*, No. C16-1023RSM, 2017 WL 1037555, at *7 (W.D. Wash. Mar. 17, 2017) (citing *Baughn v. Honda Motor Co.*, 727 P.2d 655, 668-69 (Wash. 1986)). However, an exception to the vertical privity requirement exists for implied warranties where plaintiffs are the intended third-party beneficiaries of an underlying contract between a manufacturer and intermediate dealer. *See Baughn*, 727 P.2d at 630. "Plaintiffs can demonstrate they are third-party beneficiaries where a manufacturer knew a purchaser's identity, knew the purchaser's purpose for purchasing the manufacturer's product, knew a purchaser's requirements for the product, delivered the product, and/or attempted repairs of the product in question." *Lohr*, 2017 WL 1037555, at *7 (citing *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 831 P.2d 724, 730 (Wash. 1992)). "Washington courts consider these factors in a 'sum of the interaction' test, to 'determine whether the manufacturer was sufficiently involved in the transaction (including post-sale) with the remote purchaser to warrant enforcement of an implied warranty.'" *Id.* (citing *Babb v. Regal Marine Indus., Inc.*, 2015 WL 786857, at *3 (Wash. Ct. App. Feb. 24, 2015)). To invoke the third-party beneficiary exception, Plaintiffs must allege "sufficient factual matter" to allow the court

//

to draw the reasonable inference that the Plaintiffs are indeed third-party beneficiaries of implied warranties Defendants allegedly made to the dealers who sold the Class Vehicles.

Here, Plaintiffs allege that they purchased the Class Vehicles at dealerships but fail to allege additional facts under which the court can draw the reasonable inference that Plaintiffs are third-party beneficiaries of an implied warranty between Defendants and the dealerships. That is not to say that Plaintiffs could never plausibly allege third-party beneficiary status; only that the current amended complaint fails to do so. Accordingly, the court GRANTS Defendants' motion to dismiss Ms. Short and Ms. Snider's implied warranty claim (Count XIII) but with leave to amend to include facts, should they exist, of Plaintiffs' third-party beneficiary status.

2. Plaintiffs' Allegations of Unfitness

Defendants contend that Ms. Short, Ms. Parker, Ms. Snider, Mr. DiPardo, and Ms. DiPardo "have not alleged any facts indicating that their vehicles have experienced any issues or have any materialized problems" that make them unfit to drive. (*See* Mot. at 28.) Defendants rely on cases that are largely distinguishable. For example, in *Tallmadge v. Aurora Chrysler Plymouth, Inc.*, 605 P.2d 1275, 1278 (Wash. Ct. App. 1979), the Washington Court of Appeals affirmed a trial judge's conclusion following a bench trial that the vehicle at issue was merchantable because "the defects were minor and could be repaired."

The court finds that Defendants' cited authority presents insufficient grounds to dismiss Plaintiffs' implied warranty claims at the pleading stage, particularly when the alleged defect—that the vehicle's engine may catch fire—so directly threatens human

safety. *See, e.g.*, *In re Toyota I*, 754 F. Supp. 2d at 1186 (denying the defendants' motion to dismiss an implied warranty claim on the basis that some of the plaintiffs' vehicles had not manifested the alleged defect). Therefore, the court DENIES Defendants' motion to dismiss Plaintiffs' implied warranty claims on unfitness grounds.

**F.     Magnuson-Moss Warranty Act Claims (Count II)**

Defendants argue that Plaintiffs' MMWA claims fail because the MMWA provides that "[n]o claim shall be cognizable in a suit brought" in federal district court "if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." (*See* Mot. at 29 (quoting 15 U.S.C. § 2310).) Defendants contend that although older authority carved out an exception to the 100-plaintiff rule in cases brought under the Class Action Fairness Act ("CAFA"), a 2019 district court opinion states that "the weight of more recent authority is that the 100-plaintiff requirement cannot be supplanted by the prerequisites for exercising diversity jurisdiction under CAFA." (*See* Resp. at 29 (citing *Cadena v. Am Honda Motor Co.*, No. CV184007MWFPJWX, 2019 WL 3059931, at *11 (C.D. Cal. May 29, 2019)).)

It does not appear that the Ninth Circuit has addressed the interplay between the MMWA's 100-named-plaintiff requirement and CAFA. *See MacDougall v. Am. Honda Motor Co.*, No. SACV1701079AGDFMX, 2017 WL 8236359, at *4 (C.D. Cal. Dec. 4, 2017). However, the court agrees with the reasoning of the recent district court opinions relied on by Defendants. To contend that a plaintiff may bring a federal question claim under the MMWA, a federal statute providing federal question jurisdiction, through CAFA, a statutory basis for federal courts to exercise diversity jurisdiction, makes little

sense. *See id.* (citing *Ebin v. Kangadis Food, Inc.*, No. 13 Civ. 2311, 2013 WL 3936193, at *1 (S.D.N.Y. July 26, 2013)). Accordingly, the court GRANTS Defendants' motion to dismiss Plaintiffs' claims under the MMWA (Count II) and dismisses these claims with prejudice.

## G.    Song-Beverly Act (Count VI)

Defendants argue that Ms. Parker's Song-Beverly Act claim fails because the Act applies only to new products, and Ms. Parker alleges she purchased a used vehicle from Palm Springs Kia. (*See* Mot. at 24 (citing FAC ¶ 23).) Plaintiffs respond that the Song-Beverly Act applies to used vehicle purchases "as long as an express warranty was given with the purchase," (Resp. at 24 (citing Cal Civ. Code § 1795.5)), and that Ms. Parker received such a warranty because the manufacturer's warranty was still in effect when she purchased her vehicle (Resp. at 25).

The court agrees with Defendants. Under Section 1795.5(c) of the Song-Beverly Act a used car purchaser may only pursue implied warranty claims against a "distributer" or "retailer" where an express warranty remains in effect. *See* Cal. Civ. Code § 1795.5(c). However, that provision "does not create additional obligations on a *manufacturer* vis-à-vis used car purchasers; rather, it simply states that the *retailer* or *distributor* is also subject to whatever obligations already apply to the manufacturer." *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 950 (N.D. Cal. 2018) (citing *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1178-79 (N.D. Cal. 2017)). Neither KMC nor KMA was the "distributor" or "retailer" in relation to Ms.

//

Parker's vehicle, because she purchased it from Palm Springs Kia. *See Johnson*, 272 F. Supp. 3d at 1178.

Accordingly, the court GRANTS Defendants' motion to dismiss Ms. Parker's claim under the Song-Beverly Act (Count VI) and dismisses this claim with prejudice.

## IV.    CONCLUSION

Based on the foregoing analysis, the court GRANTS in part and DENIES in part Defendants' motion to dismiss (Dkt. # 43) as follows:

- The court DENIES Defendants' motion to dismiss Ms. Parker's (Counts I, III-V) and Mr. Ronfeldt's (Counts I, III-V, VIII) fraud-based claims on Rule 9 grounds;

- The court GRANTS Defendants' motion to dismiss Ms. Short's (Counts I, III-V, XII), Ms. Snider's (Counts I, III-V, XII), Mr. DiPardo and Ms. DiPardo's (Counts I, III-V, X), and Mr. Twigger's (Counts I, III-V, XIV) fraud-based claims, but with leave to amend to include facts, if any, that cure the defects in these claims;

- The court GRANTS Defendants' motion to dismiss Mr. Ronfeldt's ODTPA claim WITH PREJUDICE (Count VIII);

- The court DENIES Defendants' motion to dismiss Mr. Ronfeldt's OSCPA claim (Count VII);

- The court GRANTS Defendants' motion to dismiss Mr. Ronfeldt's implied warranty claim (Count IX), with leave to amend to include facts, if any, that cure the defects in this claim;

//

//

- The court GRANTS Defendants' motion to dismiss Ms. Short and Ms. Snider's implied warranty claim (Count XIII) but with leave to amend to include facts, should they exist, of Plaintiffs' third-party beneficiary status;

- The court DENIES Defendants' motion to dismiss Plaintiffs' remaining implied warranty claims (Counts XI, XV);

- The court GRANTS Defendants' motion to dismiss Plaintiffs' claims under the MMWA (Count II) and dismisses these claims WITH PREJUDICE;

- The court GRANTS Defendants' motion to dismiss Ms. Parker's claim under the Song-Beverly Act (Count VI) and dismisses this claim WITH PREJUDICE; and

- The court DENIES Defendants' motion in all other respects.

Plaintiffs shall file a second amended complaint, if any, alleging facts that resolve the issues stated herein, no later than twenty (20) days from the filing date of this order. Failure to timely file a second amended complaint may result in the dismissal of Plaintiffs' first amended complaint.

Dated this 15th day of March, 2020.

JAMES L. ROBART
United States District Judge