UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| LINDA SHORT, OLIVIA PARKER, ELIZBABETH SNIDER, JENNIFER DIPARDO, ANTHONY DIPARDO, SEANE RONFELDT and JAMES TWIGGER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HYUNDAI MOTOR AMERICA, INC., HYUNDAI MOTOR COMPANY, KIA MOTORS AMERICA, INC., and KIA MOTORS CORPORATION,<br><br>Defendants. | No. 2:19-cv-00318-JLR<br><br>ORDER GOVERNING THE PROTOCOL FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND DOCUMENTS |

This Order Governing the Protocol for Production of Electronically Stored Information and Documents ("Protocol") sets forth the specifications that shall govern document production during discovery in the above-captioned action.

## I. GENERAL SCOPE AND PARAMETERS

A. Except as specifically limited herein, this Protocol governs the collection and production of discoverable electronically-stored information, documents, and any other data to be produced electronically in this Action.

B. The parties shall take reasonable steps to comply with the procedures set forth in this Protocol.

C. The production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs.

D. Nothing herein shall alter the parties' respective responsibility to comply with the applicable Federal Rules of Civil Procedure and any applicable Local Rules regarding the collection or production of data. To the extent additional obligations or rights not addressed in this Protocol arise under the Federal Rules of Civil Procedure or other applicable law or rules, that law or rule shall govern. This Protocol shall neither enlarge, reduce, nor otherwise affect the scope of discovery in this litigation as imposed by the Court's orders nor imply that discovery produced under the terms of this Protocol is properly discoverable, relevant, or admissible in the Action or in any other litigation. Specifically, if there is a conflict between the provisions of this Protocol and any Order governing discovery in the Action, including but not limited to any applicable case management or the Protective Order, the provisions of those Orders shall control.

E. Subject to (i) this Protocol, (ii) the parties' objections and responses to requests for production of documents and interrogatories, and (iii) the operative Protective Order including any subsequent amendments (collectively the "Protective Order"), all documents that are responsive to discovery requests and not withheld based upon an assertion of any applicable privilege or protection shall be produced in the manner provided herein. As set forth in Section IX below, nothing in this Protocol shall be deemed to waive or limit any party's right to object to production, discoverability, or confidentiality of data or any other discoverable materials.

F. The parties agree to promptly alert all other parties concerning any technical problems associated with complying with this Protocol. To the extent compliance with this

Protocol imposes an undue burden with respect to any protocol, source, or search term listed herein, the parties shall promptly confer in an effort to resolve the issue.

G. Consistent with their obligations under applicable Federal Rules of Civil Procedure and the Local Rules, the parties will attempt to resolve, in person, in writing (including email), or by telephone, disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief. If the parties are unable to resolve the dispute after a good faith effort, the parties may seek Court intervention in accordance with the Court's procedures.

## II. PRODUCTION FORMATS

### A. ESI

With the exception of documents identified below (in Subsections II.A.1-3), ESI should be produced as single-page, 1-Bit Group IV, 300 DPI TIFF images.

All ESI should be produced with a delimited, database load file that contains the metadata fields listed in Table 1 hereto, to the extent captured at the time of the collection. To the extent that metadata does not exist or is not reasonably accessible or available because it was overwritten for any documents produced, nothing in this Protocol shall require any party to extract, capture, collect, or produce such data. An .opt image cross-reference file should also be provided for all TIFF images. The file's extracted text shall also be produced, and OCR shall only be provided when a file requires redaction.

TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFF images of email messages should include the BCC line. All other documents or data must be processed to show readily available hidden content, tracked changes or edits, comments, notes, and other similar

information for TIFF/JPG images, or alternatively such content must be viewable in the Native File.

Documents containing track changes in different color(s) in the native format will be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as not to degrade the original image. All other originals may be produced in black and white TIFF format, provided that: (1) a party may subsequently request, by Bates Number(s), a replacement set of images in color, and (2) the producing party must provide such color versions within five (5) business days.

### 1. Spreadsheets

The parties agree to produce Excel™ spreadsheets and other similar spreadsheet type files in Native Format, with the exception that any spreadsheet that requires redaction may be produced as a TIFF image, consistent with the format set forth in Section II.A above or with native redactions. If a party chooses to produce spreadsheets with native redactions, it will identify the documents subject to native redaction with its production. If any receiving party has concerns about the documents produced with imaged or native redactions, they may request a meet-and-confer to discuss the process used to perform those native redactions and the parties will use reasonable best efforts to resolve any concerns regarding the redaction format. Any spreadsheet that is produced in Native Format must have a corresponding placeholder TIFF image bearing the language "Native File Provided," indicating its place in the production (*i.e.,* Bates stamped) and/or its relationship to other documents in the production. The Native File's extracted text shall also be produced, and OCR shall only be provided when a file requires redaction.

If a Native File is used at a deposition or hearing, or attached to a motion or other filing, it shall be accompanied by its production number-stamped placeholder TIFF image to facilitate tracking and authentication thereof.

To the extent that printouts or images of all or part of a spreadsheet were also maintained in static form (*e.g.*, as a PDF or a hard-copy document), those documents will be produced as static images consistent with the specifications for hard-copy documents.

### 2. Presentation Slides

The parties agree to produce Microsoft PowerPoint™ slides and other similar presentation type files in Native Format (with the exception that any presentation slides that require redaction will be produced in TIFF format only) or as a TIFF image, consistent with the format set forth in Section II.A above. Any presentation slides that are produced in Native Format must have a corresponding placeholder TIFF image bearing the language "Native File Provided", indicating its place in the production and/or its relationship to other documents in the production. The Native File's extracted text shall also be provided, and OCR shall only be produced when a file requires redaction. Any presentation slides that are produced solely as TIFF images should be processed with hidden slides and all speaker notes unhidden and should be processed to show both the slide and the speaker's notes.

If a Native File is used at a deposition or hearing, or attached to a motion or other filing, it shall be accompanied by its production number-stamped placeholder TIFF image to facilitate tracking and authentication thereof.

To the extent that printouts or images of all or part of a presentation slides were also maintained in static form (*e.g.*, as a PDF or a hard-copy document), those documents will be produced as static images consistent with the specifications for hard-copy documents.

### 3. Miscellaneous Electronic Files

Certain types of files including but not limited to system, program, proprietary files, audio files, and video files may not be amenable to conversion into anything meaningful or reviewable in TIFF format or other format reviewable within Relativity or a similar review platform.

System, program, or proprietary files, to the extent they are subject to production, will not be converted into TIFF format and instead will be produced in the form of a placeholder TIFF image. The receiving party can request that these files be produced in Native Format, and the parties shall meet and confer regarding production of the files. If the parties are unable to reach agreement, the parties may present the dispute for judicial resolution regarding the form, if any, of production.

If a Native File is used at a deposition or hearing, or attached to a motion or other filing, it shall be accompanied by its production number-stamped placeholder TIFF image to facilitate tracking and authentication thereof.

Audio, video, or other multimedia audio/visual files such as voice and video recordings that are not system, program, or proprietary files (*e.g.*, .wav, .mpeg, and .avi), and that are not reviewable in TIFF format, to the extent they are subject to production and are reviewable without disproportionate burden, shall be produced in Native Format with a corresponding placeholder TIFF image bearing the language "Native File Provided, indicating its place in the production and/or its relationship to other documents in the production. No extracted or OCR text shall also be provided for these natively produced files.

### B. Hard Copy Documents

Hard copy documents should be scanned in a manner so as to retain the original organization of the hard copy documents. Hard copy documents should be scanned as single-

page, 1-Bit Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the fields outlined in Table 1. Hard-copy documents should be physically unitized. Hard-copy documents will be produced in black and white TIFF format, provided that: (1) a party may subsequently request, by Bates Number(s), a replacement set of images in color, and (2) the producing party must provide such color versions within five (5) business days.

If a producing party reasonably believes that production of hard-copy documents is unduly burdensome, the producing party shall seek to meet and confer in good faith with the requesting party regarding content, volume, and related issues before any production of hard-copy documents. If the parties are unable to reach agreement, the parties may present the dispute for judicial resolution.

### C. Structured Data

The producing party may opt to produce relevant and responsive information from databases by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic format (*e.g.*, in Microsoft Excel™ or .csv format). The parties will meet and confer to discuss the most appropriate data extraction and cost-effective production format for specific information contained in particular databases.

### III. PRODUCTION EXCHANGE

Documents shall be exchanged on DVD-ROMs, CD-ROMs, USB drives, portable hard drives, or through secure file transfer protocols (*e.g.*, FTP) or similar secure electronic transmission. The production media shall be labeled with the Volume Number along with the Bates Number range(s) of the materials. Where it is not practicable to do so, this information may be provided in an accompanying letter or email. If a producing party encrypts or "locks"

the production, the producing party shall send, under separate cover or email, an explanation of how to decrypt the files.

## IV. PROCESSING SPECIFICATIONS

### A. De-duplication

Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level).

Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. An email that includes content in the BCC or other blind copy field should not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Custodian-specific de-duplication may be applied to email files prior to upload to the review platform. Any other de-duplication should be done across the entire collection (*i.e.*, global level) and the "All Custodian" field should list each custodian, separated by a semicolon, who was a source of that document. The "Custodian" field shall represent the custodian of the document uploaded to the review platform.

### B. Email Thread Suppression

Each party may also de-duplicate emails in such a way as to eliminate earlier or incomplete chains of emails and produce only the most complete iteration of an email chain and any unique attachments associated with the email set, provided that none of the earlier emails in the chain contained attachments and the email chain does not exclude any email conversations that split off from the primary thread. In other words, regardless of the existence of a more complete, later email, all emails that contain attachments must also be produced and all unique email chains should be produced.

### C. Corrupted or Unreadable Files

If any file is corrupted or not readable by the producing party, and is attached to an otherwise responsive document, it shall be produced with a slip sheet indicating the file is corrupt and could not be reviewed.

### D. System Files

Each party may exclude certain files and folders that are reasonably identified as system files and do not contain user-created files.

### E. Other Deduplication Methods

Use of these technologies to reduce the reviewable collection or production, other than as described within this Protocol, requires the producing party to meet-and-confer with the requesting party.

### F. Bates Numbering

All images must be assigned a unique and sequential Bates Number.

### G. Parent-Child Relationships

Responsive non-privileged electronic documents attached to an e-mail or embedded within an electronic document not produced in its native form are to be produced sequentially immediately after the parent document to preserve the parent-child relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document. The child-document should be consecutively produced immediately after the parent-document. If a parent or child is omitted from production as privileged or otherwise, the producing party shall produce in place of the document a single-TIFF placeholder image indicating the withholding of the document and the reason for the withholding.

### H. Track Changes and Comments

To the extent that a document contains tracked changes or comments, those tracked changes and comments should be preserved when images of the document are created.

### I. Password Protected Files

For password-protected files, the parties will make reasonable efforts to remove the password or other security protection from any document prior to production or else produce the password, if reasonably available. If the security protection cannot be removed from a document after reasonable efforts by the producing party and the password is not reasonably available, the producing party shall produce in place of the document a single-TIFF placeholder image.

### J. Embedded Documents

Embedded files, except for images embedded in emails, are to be produced as family groups or produced in their native form, such that embedded files are accessible for review. Embedded files produced as images should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

## V. IDENTIFICATION AND COLLECTION OF DOCUMENTS

The parties agree to meet and confer and use their reasonable best efforts to reach agreement regarding custodians; search methodology to be applied, including, but not limited to, search terms and date restrictions; and location of relevant data sources including custodial and non-custodial sources.

Documents or categories of documents that are easily identifiable and segregable should be promptly collected and produced without the use of search terms. The parties will indicate which categories of documents will be produced with and without the use of search terms. Where potentially responsive ESI shall be searched using search terms, the parties agree to follow the process identified below and meet and confer regarding any proposed deviation.

Agreement on a search methodology does not relieve a party of its obligation under the Federal Rules of Civil Procedure to conduct a reasonable search and produce all relevant and responsive documents of which a party is aware. The discovery requests shall govern the scope of documents to be produced, subject to any agreements reached during the parties' conferral, and search terms do not supplant discovery requests.

With the objective of limiting the scope of review and production, and thereby reducing discovery burdens, the parties agree that they will cooperate in good faith regarding the identification, disclosure and formulation of appropriate search terms, document custodians, date ranges, custodial and noncustodial sources of relevant ESI, and categories of potentially responsive ESI in advance of any ESI search or production.

### A. Identification of Custodians

The parties will meet and confer within 45 days of the entry of this Protocol regarding the appropriate number of relevant custodians and key persons whose files are likely to contain documents relating to the subject matter of this litigation (each a "Custodian") and a date by which the parties will exchange such a list of Custodians. The parties agree that the list of Custodians will include a description of the proposed Custodians' job title and brief description of such person's responsibilities (including dates of employment by the applicable producing party). The parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional Custodians be searched and to meet and confer regarding such request.

### B. ESI Sources

The parties will meet and confer within 45 days of the entry of this Protocol regarding the appropriate number of ESI storage systems or devices to search that may house potentially relevant data, including both custodial and noncustodial sources of ESI (*e.g.*, shared drives,

network storage, local hard drives, etc.) (collectively, "ESI Sources") and a date by which the parties will exchange such a list of ESI Sources. The parties also will meet and confer regarding sources of relevant ESI that may not be reasonably accessible as well as search methodology and reach agreement on appropriate search terms and queries, file type and date restrictions before any such effort is undertaken.

### C. Document Collection

Following agreement on a list of Custodians and ESI Sources, each party will begin collecting potentially responsive documents, ESI, and information in the possession, custody or control of each Custodian and noncustodial source (the "Collected Documents").

### D. Technologies

Prior to use, the parties should meet and confer to disclose and discuss any proposed use of technologies to reduce the number of documents to be reviewed or produced (*i.e.*, file type culling, near de-duplication, email thread suppression or technology assisted review). Use of these technologies to reduce the reviewable collection or production, other than as described within this Protocol, requires the consent of the receiving party.

### E. Continuing Obligations

The parties will continue to meet and confer regarding any search process issues as necessary and appropriate, including agreeing to modify any of the dates and time frames set forth in this Protocol. This Protocol does not address or resolve any other objection to the scope of the parties' respective discovery requests, and it does not prevent any party from undertaking searches of its own ESI for its own purposes at any time.

## VI. PRESERVATION

The parties acknowledge that they have an obligation to take reasonable steps to preserve discoverable information in the party's possession, custody, or control.

Unless otherwise provided in this Protocol, hard-copy and electronic records that may contain non-duplicative information potentially relevant to the claims alleged in the Complaint, or any defenses thereto, or that may be reasonably calculated to lead to the discovery of admissible evidence, are subject to preservation.

The parties agree that they will meet and confer regarding the scope of preservation and if the parties are unable to reach agreement, the parties may present the dispute for judicial resolution.

The parties agree that the circumstances of this case do not currently warrant the preservation, collection, review, or production of the following types of ESI, which tend not to be reasonably accessible:

1. Deleted, shadowed, damaged, residual, slack, fragmented, or other data accessible only by use of forensic software.

2. Random access memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary Internet files, history, cache, cookies, and the like.

4. Data stored on photocopiers, scanners, and fax machines that are not unique and are duplicated in other accessible sources.

5. Overwritten data in metadata fields that are frequently updated automatically, such as last-opened dates.

Responsive unique data not located on other accessible sources shall be preserved, and identified as responsive inaccessible data pursuant to Federal Rule of Civil Procedure 26(b)(2)(B). Nothing herein shall prevent a party from subsequently requesting ESI, Documents,

or other data identified above be preserved pursuant to Federal Rule of Civil Procedure 26(b)(2)(B).

## VII. PREVIOUSLY PRODUCED MATERIAL

To the extent a party produces in this Action any ESI, hard copy documents, structured data, or other material previously produced by or to a party or third party other than in this Action, including in response to governmental or regulatory inquiries or investigations or other litigation, the party may produce the material in this Action in the same form as it was previously produced, notwithstanding the terms of this Protocol, as long as that data was imaged or produced in a reasonably usable form. Nothing in this paragraph affects the terms of any protective or confidentiality order or agreement governing the production and use of such previously produced data.

## VIII. PRIVILEGE AND REDACTION

### A. Privilege and Redaction Logs

Any party that withholds information (including by redaction) otherwise discoverable by claiming that the information is privileged must produce a log in compliance with Federal Rule of Civil Procedure 26(b)(5) and as set forth herein. Privileged or otherwise protected documents dated after the filing of the first complaint in this Action do not need to be logged. Privilege logs shall be exchanged within thirty (30) days after each document production.

### B. Redactions

To the extent that any image file contains information subject to a claim of privilege or any other applicable protection that requires redaction, the portion of the redacted text shall be clearly identified on the face of the TIFF image, either by masking the redacted content with electronic highlighting in black or through the use of redaction boxes. The label "Redacted for [State Reason]" shall appear on the face of the redacted portion of the TIFF image (*e.g.*,

"Redacted for Privilege"). If providing the reason for the redaction is prohibited by applicable law, the label "Redacted" shall appear on the face of the redacted portion of the TIFF image. Unless otherwise agreed to and to the extent permitted by law, the producing party shall also include information regarding the basis and justification for any redactions on its privilege log.

The redacted TIFF image shall be produced in accordance with the image load file specifications in Table 1, and any other provisions for the production of TIFF images contained herein. To the extent a document is redacted, OCR text files for such a document shall not contain text for redacted portions. The original unredacted Native File shall be preserved pending conclusion of the Action. To the extent any Native File contains information subject to a claim of privilege or any other applicable protection that requires redactions, the producing party shall either apply the redactions directly on the Native File itself or convert that file to TIFF format and produce it with the necessary redactions.

## IX. OBJECTIONS PRESERVED

Nothing in this Protocol shall be interpreted to require disclosure of relevant information or data that is protected by the attorney-client privilege, work-product doctrine, or is prohibited from disclosure under any similar law, regulation, rule, court order, or any other applicable privilege or protection. The parties do not waive any objections to the production, discoverability, or confidentiality of data or any other discovery materials, including, without limitation, objections regarding the burden, overbreadth, cost-sharing, or relevance of document requests related to data in a form specified in this Protocol. The parties also reserve the right to seek, and the right to oppose, cost-sharing in connection with the collection and production of data that is not reasonably accessible.

This Protocol is subject to the terms of the Stipulated Protective Order agreed between the parties and entered by the Court and incorporates the terms thereof.

IT IS SO ORDERED.

Dated this _____ day of _____, 2020.   _____
                                                          Hon. James L. Robart
                                                          United States District Judge

ORDER ON ESI PROTOCOL
(Case No. 2:19-cv-00318-JLR) - 16

PRESENTED BY:

| KELLER ROHRBACK L.L.P. | QUINN EMANUEL URQUHART & SULLIVAN, LLP. |
|---|---|
| By *s/ Ryan McDevitt* | By *s/ Gavin Snyder* |
|     Lynn Lincoln Sarko #16569<br>    Gretchen Freeman Cappio #29576<br>    Ryan McDevitt #43305<br>    Maxwell Goins #54130<br>    1201 Third Avenue, Suite 3200<br>    Seattle, WA 98101-3052<br>    (206) 623-1900<br>    Fax (206) 623-3384<br>    lsarko@kellerrohrback.com<br>    gcappio@kellerrohrback.com<br>    rmcdevitt@kellerrohrback.com<br>    mgoins@kellerrohrback.com<br><br>    Benjamin L. Bailey, *pro hac vice*<br>    Jonathan D. Boggs, *pro hac vice*<br>    BAILEY GLASSER LLP<br>    209 Capitol Street<br>    Charleston, WV 25301<br>    (304) 345-6555<br>    Fax (304) 342-1110<br>    bbailey@baileyglasser.com<br>    jboggs@baileyglasser.com<br><br>*Attorneys for Plaintiffs* |     Gavin Snyder #48332<br>    Alicia Cobb #48685<br>    600 University Street, Suite 2800<br>    Seattle, WA 98101<br>    1201 Third Avenue, Suite 3200<br>    Seattle, WA 98101-3052<br>    (206) 905-7000<br>    Fax (206) 905-7100<br>    aliciacobb@quinnemanuel.com<br>    gavinsnyder@quinnemanuel.com<br><br>    Shon Morgan, *pro hac vice forthcoming*<br>    865 S Figueroa St., 10th Floor<br>    Los Angeles, CA 90017<br>    (213) 443-3000<br>    Fax (213) 443-3100<br>    shonmorgan@quinnemanuel.com<br><br>*Attorneys for Defendants* |

## TABLE 1

## FIELDS AND METADATA TO BE PRODUCED

| *Field* | *Data Type* | *Hard Copy / Paper* | *Loose Native Files & Attachments* | *Email* |
|---|---|---|---|---|
| BegDoc | TEXT | Start Bates | Start Bates | Start Bates |
| EndDoc | TEXT | End Bates | End Bates | End Bates |
| BegAttach | TEXT | Starting bates number of document family | Starting bates number of document family | Starting bates number of document family |
| EndAttach | TEXT | Ending bates number of document family | Ending bates number of document family | Ending bates number of document family |
| Custodian | TEXT – single entry | Custodian of the document | Custodian of the document | Custodian of the document |
| ALL/Duplicate Custodian | Text – multi entry | Other custodians whose files contained a particular document that was eliminated through deduplication | Other custodians whose files contained a particular document that was eliminated through deduplication | Other custodians whose files contained a particular document that was eliminated through deduplication |
| File Path | TEXT | | File path where original file was collected from | Folder where email was collected from. Includes folder locations within email container files such as PST and NSF |
| From | TEXT | | | Sender of message |
| To | TEXT – separate entries with ";" | | | Recipients of message |
| CC | TEXT – separate entries with ";" | | | Copied recipients |
| BCC | TEXT – separate entries with ";" | | | Blind copied recipients |
| Subject | TEXT or MEMO if over 255 characters | | | Subject of message |

| Field | Data Type | Hard Copy / Paper | Loose Native Files & Attachments | Email |
|---|---|---|---|---|
| Date Sent | Date (mm-dd-yyyy) – e.g. 03-03-2012 | | | Date message sent |
| Time Sent | TEXT (hh:mm:ss) | | | Time message sent |
| Date Received | Date (mm-dd-yyyy) – e.g. 03-03-2012 | | | Date message received |
| Time Received | TEXT (hh:mm:ss) | | | Time message received |
| Document Type | TEXT | | Identifies document type as a loose e-file | Identifies document type as an email or attachment to an email |
| File Name | TEXT | | Name of original file | Name of original file |
| File Extension | Text | | Extension of original file | Extension of original file |
| File Size | Number | | File size in bytes | |
| Date Created | Date (mm-dd-yyyy) – e.g. 03-03-2012 | | Date file was created | |
| Date Modified | Date (mm-dd-yyyy) – e.g. 03-03-2012 | | Date file was last modified | |
| Title | TEXT or MEMO if over 255 characters | | Title from document metadata | |
| Author | TEXT | | Document author from metadata | |
| Company | TEXT | | Document company or organization from metadata | |
| Hash | TEXT | | MD5 Hash Value | MD5 Hash Value |
| Text File Link | TXT files should be named the same as the beg | Relative path to OCR or extracted text file | Relative path to OCR or extracted text file | Relative path to OCR or extracted text file |

| Field | Data Type | Hard Copy / Paper | Loose Native Files & Attachments | Email |
|---|---|---|---|---|
| | doc and delivered in the same folder as the images or in a folder labeled Text (e.g., ABC0000001.txt) | | | |
| Native File Link | Should be named the same as the beg doc and delivered in the same folder as the images or in a folder labeled Natives (e.g., ABC0000001.xls) | | Relative path to native file as produced | Relative path to native file as produced |
| Redaction | TEXT | Redacted (yes) | Redacted (yes) | Redaction (yes) |
| Confidentiality | TEXT | Confidential Status of document | Confidential Status of document | Confidential Status of document |

DATED: March 17, 2020

JAMES L. ROBART
United States District Judge

ORDER ON ESI PROTOCOL
(Case No. 2:19-cv-00318-JLR) - 3