UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LINDA SHORT, et al.,

                    Plaintiffs,

        v.

HYUNDAI MOTOR COMPANY, et al.,

                    Defendants.

CASE NO. C19-0318JLR

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

## I.    INTRODUCTION

Before the court is Defendants Hyundai Motor America, Inc. ("HMA"), Hyundai Motor Company ("HMC"), Kia Motors America, Inc. ("KMA"), and Kia Motor Company's ("KMC") (collectively, "Defendants") motion to dismiss Plaintiffs Linda Short, Olivia Parker, Elizabeth Snider, Jennifer DiPardo, Anthony DiPardo, Seane Ronfeldt, James Twigger, Gabrielle Alexander, Tavish Carduff, Brian Frazier, Chad Perry, William Pressley, Jeanett Smith, and Janell Wight's (collectively, "Plaintiffs")

1  second amended consolidated class action complaint.  (*See* Mot. (Dkt. # 78); *see also*

2  SAC (Dkt. # 71); Reply (Dkt. # 84).)  Plaintiffs oppose the motion.  (Resp. (Dkt. # 82).)

3  The court has considered the motion, the parties' submissions in support of and in

4  opposition to the motion, the relevant portions of the record, and the applicable law.

5  Being fully advised,[1] the court GRANTS in part and DENIES in part the motion as set

6  forth below.

## II.   BACKGROUND

8       This is a putative class action about alleged defects in 2011-2013 Hyundai

9  Tucsons and 2012-2016 Kia Souls (the "Class Vehicles") that cause the Class Vehicles'

10  engines to stall and, in some cases, to catch fire.  (*See* SAC ¶¶ 1, 19.)  Plaintiffs allege

11  that Defendants knew about these defects yet failed to disclose them.  (*See id.* ¶ 3.)

12  **A.   Procedural Background**

13       On March 16, 2020, the court granted in part and denied in part Defendants'

14  motion to dismiss the first amended complaint.  (3/16/2020 Order (Dkt. # 62).)  On May

15  4, 2020, Plaintiffs filed their second amended complaint.  (SAC.)  In it, Plaintiffs

16  included seven new named plaintiffs, five new subclasses, and 10 new claims.  (*See*

17  *generally id.*)  Defendants now move to dismiss the SAC.  (Mot.)

18

19  //

20       [1] Both parties request oral argument.  (Mot. at 1; Resp. at 1.)  "Unless otherwise ordered
by the court, all motions will be decided by the court without oral argument."  *See* Local Rules
21  W.D. Wash. LCR 7(4); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide
for submitting and determining motions on briefs, without oral hearings.").  Here, the parties
22  filed extensive briefing, and the court finds that oral argument is unnecessary.  Accordingly, the
court denies the parties' requests for oral argument.

**B.     The Alleged Defects**

1.   <u>2012-2016 Kia Soul</u>

Plaintiffs allege that in February 2019, KMA issued a recall for 378,967 Kia Soul vehicles from the 2012 to 2016 model years.  (*See* SAC ¶ 92.)  Kia's recall notice stated this was due to a programming error that made the catalytic converter in those vehicles' 1.6-liter direct injection gasoline engines ("Gamma engines") susceptible to overheating, which can lead to several forms of engine failure and result in engine fires.  (*See id*.) Plaintiffs allege that the overheating is "caused by problems that run deeper," namely, contamination with metal shavings that is similar to issues experienced in vehicles that Defendants have previously recalled.  (*See id.* ¶¶ 93-95.)  Plaintiffs allege that Defendants were "aware of the dangerous defects in Gamma engines as early as 2011." (*See id.* ¶ 97.)  Plaintiffs make similar allegations about Kia Souls with 2.0-liter engines ("Nu engines") but allege that KMA has not announced a recall for those vehicles.  (*See id.* ¶ 105.)

2.   <u>2011-2013 Hyundai Tucson</u>

Plaintiffs allege that manufacturing defects "leading to oil pan leaks in 2011-2013 Hyundai Tucson vehicles have caused serious risk of harm in the form of spontaneous engine stalling and engine fire."  (*See id.* ¶ 106.)  HMA issued a recall for "at least 120,000 Tucson SUVs from the 2011-2013 model years" due to oil pan leakage.  (*See id.* ¶ 107.)  However, Plaintiffs allege that the recall did not identify manufacturing defects in the Tucson's 2.0-liter engine as responsible for the oil pan leaks and fires, and even in April 2019, only referred to the Tucson's defect as "an important safety matter."  (*See id.*

1   ¶ 109.)  In July 2019, HMA announced another recall, but Plaintiffs allege that the recall

2   does not address the root cause of the problem and is "too little too late."  (*See id.*

3   ¶¶ 110-112.)

4   **C.      Defendants' Knowledge of Alleged Defects**

5           Plaintiffs allege that Defendants knew about the Class Vehicle defects for several

6   years "but consistently concealed this knowledge."  (*See id.* ¶¶ 9, 121.)  Plaintiffs alleged

7   that Hyundai Defendants knew that the engines in the Tucson Class Vehicles were

8   defective by the end of June 2013, and that Kia Defendants knew the engines in the Soul

9   Class Vehicles were defective by the end of May 2012.  (*See id.* ¶ 91.)  Defendants knew

10  about the defects, Plaintiffs allege, for three reasons.  (*See id.* ¶ 121.)

11          First, Plaintiffs allege that Defendants' design and durability testing revealed the

12  defects.  (*See id.*)  Plaintiffs allege that Defendants claim the Class Vehicles underwent

13  "rigorous" durability testing designed to reveal "the types of defects at issue."  (*See id.*

14  ¶¶ 122-28.)  Based on these tests, Plaintiffs allege, "Defendants knew about the defects in

15  Class Vehicles well before Plaintiffs and Class members started purchasing them."  (*See

16  id.* ¶ 131.)

17          Second, Plaintiffs allege that customers filed National Highway and

18  Transportation Safety Administration ("NHTSA") complaints and sought warranty

19  repairs for models that had the same engines as the Class Vehicles.  (*See id.* ¶ 121.)

20  According to Plaintiffs these complaints "put Defendants on notice [of the defects] before

21  the Class Vehicles went on sale and, at the very least, before Plaintiffs purchased or

22  leased their Vehicles."  (*See id.* ¶ 132.)

ORDER - 4

1    Third, Plaintiffs allege that customers began experiencing engine failures and fires

2 in the Class Vehicles themselves and filing NHTSA complaints and seeking warranty

3 repairs.  (*See id.* ¶ 121.)  Plaintiffs assert that owners and lessees of the 2012-2016 Kia

4 Soul vehicles with both the Gamma and Nu engines filed complaints about catastrophic

5 engine failures and fires going as far back as early 2012, "almost immediately after the

6 very first 2012 Souls hit the market."  (*See id.* ¶ 138.)  They bring similar allegations

7 regarding the Hyundai Tucson Class Vehicles.  (*See id.* ¶ 141.)

8    According to Plaintiffs, Defendants, despite their alleged knowledge of the

9 defects, created a "long term, overarching marketing message for their brand, and

10 specifically the Class Vehicles" that Defendants' "vehicles are safe and dependable and

11 that their engines can be relied on to perform well."  (*See id.* ¶ 148.)   Plaintiffs alleged

12 that this marketing message "was so long term, pervasive, and uniform that Plaintiffs and

13 Class members, by Defendants' design, associated safety and dependability with

14 Defendants and Class Vehicles, which is a primary reason they purchased their Class

15 Vehicle."  (*See id.* ¶ 158.)

16 **D.    Plaintiffs and Their Claims**

17    Plaintiffs bring claims on behalf of a putative nationwide class and at least nine

18 putative statewide subclasses.  (*See id.* ¶¶ 166-67.)  Plaintiffs define the putative

19 nationwide class as "[a]ll persons or entities in the United States (including its territories

20 and the District of Columbia) who purchased or leased a Class Vehicle."  (*Id.* ¶ 166.)

21 The ten statewide putative classes include residents of Arizona, California, Connecticut,

22 Missouri, North Carolina, Ohio, Pennsylvania, Texas, Washington, and West Virginia.

ORDER - 5

(*Id.* ¶ 167.)[2]  Plaintiffs define the statewide putative classes as "[a]ll persons or entities in

[name of state] who purchased or leased a Class Vehicle."  (*Id.*)  Plaintiffs allege that

they purchased the following vehicles at the following times:

| Plaintiff | Vehicle | Engine | Residence and Purchase Date |
| --- | --- | --- | --- |
| Linda Short | 2013 Hyundai Tucson | Theta II | Washington, Jan. 6, 2016 (Leased Mar. 30, 2013) |
| Olivia Parker | 2014 Kia Soul | Gamma | California, Sept. 2018 |
| Elizabeth Snider | 2012 Kia Soul | Nu | Washington, June 2012 |
| Jennifer and Anthony DiPardo | 2014 Kia Soul | Nu | Pennsylvania, Sept. 16, 2014 |
| Seane Ronfeldt | 2016 Kia Soul | Gamma | Ohio, Nov. 2016 |
| James Twigger | 2014 Kia Soul Plus | Nu | West Virginia, July 2014 |
| Gabrielle Alexander | 2016 Kia Soul | Nu | Arizona, June 2016 |
| Tavish Carduff | 2014 Kia Soul | Nu | Missouri, May 2014 |
| Brian Frazier | 2014 Kia Soul | Nu | Connecticut, Feb. 2016 |
| Chad Perry | 2014 Kia Soul | Nu | California, Sept. 2019 |
| William Pressley | 2015 Kia Soul | Nu | North Carolina, Aug. 2016 |
| Jeanett Smith | 2012 Kia Soul | Nu | Texas, Feb. 2013 |
| Janell Wight | 2016 Kia Soul | Nu | Washington, Dec. 2015 |

(*See id.* ¶¶ 32-86).  Of the fourteen plaintiffs, eight allege experiencing engine-related

issues.  (*See id.* ¶¶ 44-52, 55-86.)  Six plaintiffs, Ms. Short, Ms. Parker, Ms. Snider, Mr.

and Ms. Dipardo, and Ms. Alexander, do not allege any engine issues with the Class

Vehicles.  (*See id.* ¶¶ 32-43, 53-54.)

//

---

[2] Plaintiffs do not include a Connecticut Class in their list of state subclasses (SAC ¶ 167), but do include two claims brought by Mr. Frazier "individually and on behalf of the other members of the Connecticut Class" (SAC ¶¶ 362, 373).

On behalf of themselves and the putative classes, Plaintiffs bring the following claims:

| Claim | Putative Class |
|---|---|
| **Count I.**  Fraud by Concealment | The Nationwide Class, or alternatively, each of the state classes |
| **Count II.**  Implied and Written Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* | Dismissed with prejudice in 3/16/2020 Order |
| **Count III.**  California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") | The Nationwide Class or, in the alternative, Plaintiffs Parker, Alexander, and Perry on behalf of the California State Class |
| **Count IV.**  Violations of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*  ("FAL") | The Nationwide Class or, in the alternative, Plaintiffs Parker, Alexander, and Perry on behalf of the California State Class |
| **Count V.**  California Consumer Legal Remedies Act, Cal. Bus. & Prof. Code § 1750 *et seq.*  ("CLRA") | The Nationwide Class or, in the alternative, Plaintiffs Parker, Alexander, and Perry on behalf of the California State Class |
| **Count VI.**  Song-Beverly Consumer Warranty Act for Breach of Implied Warranties, Cal. Civ. Code §§ 1791.1 & 1792. | Dismissed with prejudice in 3/16/2020 Order |
| **Count VII.**  Ohio Consumer Sales Practices Act, O.R.C. §§ 1345.01 *et seq.*  ("OCSPA") | Plaintiff Ronfeldt on behalf of the Ohio State Class |
| **Count VIII.**  Ohio Deceptive Trade Practices Act, O.R.C. §§ 4165.01 *et seq.* ("ODTPA") | Dismissed with prejudice in 3/16/2020 Order |
| **Count IX.**  Implied Warranty of Merchantability, O.R.C. §§ 1392,27, 1310.19 | Plaintiff Ronfeldt on behalf of the Ohio State Class |
| **Count X.**  Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 *et seq.* ("PUTPCPA") | The DiPardo Plaintiffs on behalf of the Pennsylvania State Class |
| **Count XI.**  Implied Warranty of Merchantability, 13 Pa. C.S.A. § 2A212 | The DiPardo Plaintiffs on behalf of the Pennsylvania State Class |
| **Count XII.**  Washington Consumer Protection Act, RCW 19.86.010, *et seq.* ("WCPA") | Plaintiffs Short, Snider, and Wight on behalf of the Washington State Class |

| **Count XIII.**  Implied Warranty of Merchantability, RCW 62A.2-314 and RCW 62A.2A-212. | Plaintiffs Short, Snider, and Wight on behalf of the Washington State Class |
|---|---|
| **Count XIV.**  West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-1-101 *et seq.* ("WVCCPA") | Plaintiff Twigger on behalf of the West Virginia State Class |
| **Count XV.** Implied Warranty of Merchantability, W. Va. Code §§ 46-2-314 and 46-2A-212. | Plaintiff Twigger on behalf of the West Virginia State Class |
| **Count XVI.** Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521 *et seq.* | Plaintiff Alexander on behalf of the Arizona Class |
| **Count XVII.** Implied Warranty of Merchantability, Ariz. Rev. Stat. §§ 47-2314 *et seq.* | Plaintiff Alexander on behalf of the Arizona Class |
| **Count XVIII.** Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a *et seq.* | Plaintiff Frazier on behalf of the Connecticut Class |
| **Count XIX.** Implied Warranty of Merchantability, Conn. Gen. Stat. §§ 42a-2-314 and 42a-2a-504 | Plaintiff Frazier on behalf of the Connecticut Class |
| **Count XX.** Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 *et seq.* | Plaintiff Carduff on behalf of the Missouri Class |
| **Count XXI.** Implied Warranty of Merchantability, Mo. Rev. Stat. §§ 407.2-314 *et seq.* | Plaintiff Carduff on behalf of the Missouri Class |
| **Count XXII.** North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1 *et seq.* | Plaintiff Pressley on behalf of the North Carolina Class |
| **Count XXIII.** Implied Warranty of Merchantability, N.C. Gen. Stat. §§ 25-2-314 and 25-2A-212 | Plaintiff Pressley on behalf of the North Carolina Class |
| **Count XXIV.** Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17.01 *et seq.* | Plaintiff Smith on behalf of the Texas Class |
| **Count XXV.** Implied Warranty of Merchantability, Tex. Bus. & Com. Code §§ 2.314 and 2.A.212 *et seq.* | Plaintiff Smith on behalf of the Texas Class |

1   (*See id.* ¶¶ 188-442).  Plaintiffs do not bring personal injury or product liability claims.

2   (*See generally id.*)  Rather, Plaintiffs' claims are based primarily on Plaintiffs' allegations

3   that they have been financially harmed by Defendants' failure to disclose the alleged

4   defects, because if Defendants had disclosed the defects, Plaintiffs "either would not have

5   purchased the Class Vehicles or would have paid considerably less for them."  (SAC

6   ¶¶ 91.)  Further, Plaintiffs allege that they "believe that, as a result of Defendants'

7   conduct, the market values of the Class Vehicles have been reduced."  (*See id.* ¶ 164.)

8        Defendants move to dismiss Plaintiffs' second amended complaint on the following

9   grounds:  (1) non-California Plaintiffs lack standing to pursue the claims brought under

10  California statutes (Mot. at 6); (2) Plaintiffs fail to meet Federal Rule of Civil Procedure

11  9(b)'s pleading standards for Plaintiffs' fraud-based claims (Mot. at 8); (3) Plaintiffs fail

12  to plead sufficient privity with Defendants for their claims of breach of implied warranty

13  of merchantability (Mot. at 15); and (4) Plaintiffs claims are time-barred (Mot. at 19).

14                          **III.   ANALYSIS**

15  **A.   Legal Standards**

16       Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to

17  state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When

18  considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in

19  the light most favorable to the nonmoving party.  *Livid Holdings Ltd. v. Salomon Smith*

20  *Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all well-pleaded

21  facts as true and draw all reasonable inferences in favor of the plaintiff.  *Wyler Summit*

22  *P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  The court,

1  however, is not required "to accept as true allegations that are merely conclusory,

2  unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State*

3  *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "To survive a motion to dismiss, a

4  complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

5  relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

6  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v.*

7  *Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  "A claim has facial plausibility when the

8  plaintiff pleads factual content that allows the court to draw the reasonable inference that

9  the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677-78.  "A

10  pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of

11  a cause of action will not do.'. . .  Nor does a complaint suffice if it tenders 'naked

12  assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550

13  U.S. at 555, 557).

14      Generally, a district court may not consider any material beyond the pleadings in

15  ruling on a Rule 12(b)(6) motion to dismiss.  *Lee v. City of L.A.,* 250 F.3d 668, 688 (9th

16  Cir. 2001) (citations omitted).  The Ninth Circuit, however, carves out certain exceptions

17  to this rule.  First, the court may consider documents appended or attached to the

18  complaint.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Second, a court

19  may consider "documents whose contents are alleged in the complaint and whose

20  authenticity no party questions, but which are not physically attached to the pleading[.]"

21  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by*

22  *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  Third, a court may take

1    judicial notice of matters of public record.  *Lee*, 250 F.3d at 688-89 (citations omitted);

2    *see also* Fed. R. Evid. 201.

3    **B.     Standing for Non-California Plaintiffs (Counts III, IV, and V)**

4            Defendants contend that eleven of the fourteen named plaintiffs lack standing to

5    assert claims under the UCL, FAL, and CLRA because they are not residents of

6    California.  (Mot. at 6.)

7            California laws are generally presumed not to apply outside of California absent

8    language that clearly expresses, or allows for a reasonable inference, otherwise.  *See*

9    *Precht v. Kia Motors Am., Inc*., No. SACV141148DOCMANX, 2014 WL 10988343, at

10   *4 (C.D. Cal. Dec. 29, 2014) (citing *Diamond Multimedia Sys. Inc. v. Superior Court*, 19

11   Cal.4th 1036, 1059 (1999)).  However, for the UCL, FAL, and CLRA, courts have

12   recognized that "state statutory remedies may be invoked by out-of-state parties when

13   they are harmed by wrongful conduct occurring in California."  *In re iPhone 4S*

14   *Consumer Litig.*, No. C 12-1127 CW, 2013 WL 3829653, at *7 (N.D. Cal. July 23, 2013)

15   (citing *Norwest Mortg., Inc. v. Superior Ct.,* 72 Cal.App. 4th 214, 224-25 (1999)); *see*

16   *also Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1132 (N.D. Cal. 2014) (finding that

17   nonresident plaintiff had alleged a "sufficient nexus between California and the

18   misrepresentations which form the basis of [the UCL and CLRA] claims").  While the

19   mere allegation of a defendant being headquartered in California is not a sufficient basis

20   for standing, it may be sufficient if coupled with allegations that a defendant's sales and

21   marketing team operate out of the California office.  *Cannon v. Wells Fargo Bank N.A.*,

22

1    917 F. Supp. 2d 1025, 1055-56 (N.D. Cal. 2013) (citing *Gross v. Symantec Corp.,* No.

2    C 12-00154 CRB, 2012 WL 3116158, at *7 (N.D. Cal. July 31, 2012)).

3           Here, Plaintiffs have alleged that Defendants HMA and KMA are headquartered in

4    California.  (SAC ¶¶ 28, 30.)  Plaintiffs also allege that each of these Defendants

5    "distributes, markets, leases, warrants, and oversees regulatory compliance and warranty

6    servicing" of their brands' vehicles "from its headquarters in California." (*Id.*)  Plaintiffs'

7    California-statute claims are all tied to statements or omissions in Defendants' marketing

8    of vehicles despite Defendants' alleged knowledge of defects.  (*See id.* at ¶¶ 205, 212,

9    224.)  The court finds that, taken in the light most favorable to Plaintiffs, these facts are

10   sufficient to plausibly allege that the actionable conduct occurred in California.

11   Therefore, the non-California Plaintiffs have standing to pursue claims under the UCL,

12   FAL, and CRLA, and Defendant's motion to dismiss these claims is DENIED.

13   **C.    Plaintiffs' Fraud-Based Claims**

14          The court has already determined that Counts I, III, IV, V, X, XII, and XIV sound

15   in fraud and are subject to the heightened pleading standards of Rule 9(b).  (3/16/2020

16   Order at 14-16).  The Parties also agree that Counts XVI, XVIII, XX, XXII, and XXIV

17   also sound in fraud and are subject to Rule 9(b).[3]  (Resp. at 6.)  Plaintiffs further specify

18   that, as with the counts addressed in the 3/16/2020 order, these new claims turn on

19

20          [3] Defendants now list Count VII as a fraud-based claim, though in their previous motion
     to dismiss, they did not.  (*See* 9/19/2019 Mot. (Dkt. # 43) at 6.)  Plaintiffs did not include Count
21   VII in their list of claims they agree are subject to the heightened pleading standards of Rule
     9(b).  (*See* Resp. at 6.)  To the extent Count VII sounds in fraud, it is subject to the same analysis
22   as the other fraud-based claims and the court finds that Plaintiffs have sufficiently pleaded
     knowledge.

1    allegations of concealment and omission.  (*Id.*)  As such, Rule 9(b)'s standard is relaxed.

2    *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1132 (W.D. Wash. 2010) (citing *Falk v. Gen.*

3    *Motors Corp*., 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal. 2007)); *see also Zwicker v.*

4    *Gen. Motors Corp.*, No. C07–0291–JCC, 2007 WL 5309204, at *4 (W.D. Wash. July 26,

5    2007).  In such cases, a plaintiff "will not be able to specify the time, place, and specific

6    content of an omission as precisely as would a plaintiff in a false representation claim."

7    *Falk*, 496 F.Supp.2d at 1098-99.  "Nonetheless, a plaintiff pleading fraudulent omission

8    or concealment must still plead the claim with particularity."  *Asghari v. Volkswagen*

9    *Grp. of Am., Inc*., 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013); *Waldrup v. Countrywide*

10   *Financial Corp*., No. 2:13-cv-08833-CAS(CWx), 2014 WL 3715131, *5 (C.D. Cal. July

11   23, 2014) (holding that where a fraudulent omission is at issue, the requirements of Rule

12   9(b) are relaxed, but not eliminated).

13        Defendants argue that Plaintiffs fail to meet Rule 9(b)'s heightened pleading

14   standard because (1) Plaintiffs do not plead specific misleading statements (Mot. at 8);

15   (2) the advertising referenced is "mere puffery" (Mot. at 10); (3) Plaintiffs' references to

16   fraudulent omissions are conclusory (Mot. at 11); and (4) Plaintiffs fail to allege that

17   Defendants knew about the relevant purported defects (Mot. 12-15).

18        1.  Specific Misleading Statements and Puffery

19        Defendants contend that Plaintiffs have not pleaded specific misleading statements

20   and only refer to advertisements that constitute "mere puffery."  (Mot. at 8, 10.)

21   Plaintiffs do not respond to these arguments, but instead point to the court's previous

22   finding that "Plaintiffs plead sufficient facts which, if taken as true, suggest that

1    Defendants had a duty to disclose information about the Class Vehicles' defects at the

2    point at which they had knowledge of them."  (Resp. at 6 (quoting 3/16/2020 Order at

3    18).)  As Plaintiffs continue to bring fraud claims based on concealment and omission,

4    the court will base its analysis on whether Defendants had a duty to disclose and whether

5    Plaintiffs have sufficiently alleged that Defendants knew of the defects.

6          2.  Fraudulent Omissions

7          The court has already determined that a duty to disclose the alleged defects exists

8    under California, Pennsylvania, Ohio, and West Virginia law.  (3/16/2020 Order at 18.)

9    A similar duty also exists under Arizona, Connecticut, Missouri, North Carolina, and

10   Texas law.  *See In re Arizona Theranos, Inc., Litig.*, 308 F. Supp. 3d 1026, 1040 (D. Ariz.

11   2018) (finding that liability under Arizona law can stem from "an affirmative

12   representation or an omission of fact that the defendant had a duty to disclose."); *Craig*

13   *Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1009 (8th Cir. 2008)

14   ("Under Missouri and Connecticut law, silence may constitute a representation for

15   purposes of a fraud claim if the party sought to be held accountable for fraud conceals

16   material facts that he had a legal duty to disclose."); *Edwards v. JPMorgan Chase Bank,*

17   *N.A.*, No. 1:20-CV-128, 2020 WL 1814423, at *6 (M.D.N.C. Apr. 9, 2020) (explaining

18   that under North Carolina law, "failure to disclose information can support a Chapter 75

19   claim when it is tantamount to misrepresentation.") (citation omitted); *Hoffman v.*

20   *AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 745 (N.D. Tex. 2014) (explaining when a

21   duty to disclose exists in Texas law).

22   *//*

ORDER - 14

1    Defendants argue that Plaintiffs have failed to plead that Defendants' purported

2    knowledge of the alleged defects existed at the time of sale.  (Mot. at 12 (citing

3    *Grodzitsky v. Am. Honda Motor Co.*, No. 2:12-CV-1142-SVW-PLA, 2013 WL 690822,

4    at *7 (C.D. Cal. Feb. 19, 2013) (holding that the plaintiffs failed to establish a plausible

5    inference of knowledge based on their allegation that the defendant "received customer

6    complaints *after* the sales of the vehicles in question.")).)  Plaintiffs respond that they

7    have pleaded facts sufficient to support that the Defendants knew about their defects

8    before any Plaintiffs purchased their vehicles, and, in the alternative, that Plaintiffs who

9    purchased their cars before 2016 do not need to demonstrate that Defendants knew of the

10   alleged defects before the time of sale.  (Resp. at 6-14.)

11   The court previously found that Plaintiffs sufficiently alleged that Defendants had

12   knowledge of the Hyundai Tucson defect as of 2016.  (3/16/2020 Order at 22.)  The court

13   also found that Plaintiffs had sufficiently alleged knowledge of the Kia Soul defect due to

14   Plaintiffs' allegations regarding the mid-2016 "fix."  (*Id.* at 21.)  The court now clarifies

15   that for the Kia Soul defect, Plaintiffs' allegations regarding the mid-2016 fix are

16   sufficient to allege knowledge of the defect as of 2016.  *See In re MyFord Touch*

17   *Consumer Litig.*, 46 F. Supp. 3d 936, 958 (N.D. Cal. 2014) (finding it "reasonable to

18   infer" that manufacturer that issued service bulletins and updates in 2012 "should have

19   known of" the alleged defects "by around 2011, *i.e.*, before it could recommend what

20   repairs or updates needed to be done.").

21   Plaintiffs also contend that they have sufficiently alleged that Defendants were

22   aware of the Kia Soul defect by 2012 and the Hyundai Tucson defect by 2013 due to:  (1)

ORDER - 15

1  Defendants' review of NHTSA complaints that referred to the defects for the Class

2  Vehicles and to similar issues for non-Class Vehicles; (2) Defendants' review of reports

3  from dealers when consumers experienced issues and went to dealership for repairs; (3)

4  Defendants' presale durability testing which allegedly revealed the defects; and (4)

5  Hyundai Defendants' issue of a recall in 2015 that related to the same issues as the

6  Hyundai Tucson defect.  (Resp. at 7-8.)   The court considers each in turn.

7          *a.  NHSTA Complaints*

8          Plaintiffs allege that "hundreds if not thousands of NHTSA complaints related to

9  Class Vehicles and cars with similar safety-related defects" put Defendants on notice of

10  the defects and present numerous NHTSA complaints regarding both Class and non-

11  Class Vehicles (SAC ¶¶ 132, 139-142, Ex A., Ex. B, Ex. C.)  Plaintiffs generally allege

12  that "[l]ike other automakers, Defendants regularly review NHTSA complaints."  (SAC ¶

13  135.)  Defendants argue that the vast majority of complaints post-date Defendant's

14  purchases.  (Mot. at 13.)

15          This court previously noted that while NHSTA complaints "may buttress the

16  inference of Defendants' knowledge," they "would likely be insufficient, standing alone,

17  to create a plausible inference of Defendants' knowledge of the defects at issue."

18  (3/16/2020 Order at 21, 23.)  When courts have recognized customer complaints as a

19  sufficient basis for knowledge, they have been coupled with specific allegations that the

20  complaints were monitored by defendants in a way that would lead to knowledge of the

21  alleged defect.  *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012);

22  *Grodzitsky*, 2013 WL 690822, at *6 (collecting cases).  The court finds that Plaintiffs'

1   allegations of Defendants' monitoring of the NHTSA complaints are too general, and the

2   dates of the majority of the complaints are too late, for the complaints to sufficiently

3   support Defendants' alleged knowledge of the defects before 2016.

4         *b.   Reports from Dealers*

5         Plaintiffs also allege that Defendants had knowledge of the defects due to alleged

6   warranty claims made available to Defendants when dealers repaired Class Vehicles

7   under the manufacturer warranty.  (Resp. at 12, SAC ¶¶ 136-137.)  In support of this

8   argument, Plaintiffs cite a case where the court found the plaintiffs' allegations sufficient

9   in part because they pointed to "warranty data gathered from the various dealerships."

10   (Resp. at 12 (citing *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765

11   (JLL), 2017 WL 1902160, at *19 (D.N.J. May 8, 2017)).)  Here, Plaintiffs admit they are

12   "unable to cite specific warranty claims or dealership reports."  (Resp. at 12.)  The court

13   finds these allegations supporting Defendants' knowledge of the defects before 2016

14   insufficient.

15         *c.   Presale Durability Testing*

16         Plaintiffs' allegations that Defendants knew of the defects because they generally

17   conduct rigorous testing and conducted such testing on the Class Vehicles are insufficient

18   to allege knowledge.  (*See* SAC ¶¶ 121-33.)  Plaintiffs' allegations are too general,

19   establishing only the general rigor of the testing, and contain no specifics of how

20   Defendants' alleged testing would reveal the specific alleged defects.  (*See id.*)

21   //

22   //

1

       *d.   2015 Hyundai Recall*

2

       Plaintiffs allege that Defendants knew about the defect in the Hyundai Tucson

3

before 2016 because in September 2015, Hyundai Defendants issued a recall for

4

2011-2012 Hyundai Sonata vehicles equipped with Theta II engines.  (Resp. at 11; SAC

5

¶¶ 114-117.)  However, Plaintiffs allege that this recall was caused by a defect related to

6

metal debris being forced into connecting rod oiling passages, restricting oil flow to the

7

bearings.  (SAC ¶ 115.)  This in turn could lead to premature bearing wear, which can

8

lead to the connecting rod bearings' failure, which can cause the vehicle to stall while in

9

motion.  (*Id*.)  Plaintiffs fail to plead how this recall and defect are related to the alleged

10

defect of the Theta II engines in the Hyundai Tucson Class Vehicles, which cause "oil

11

pan leaks . . . [which] have caused serious risk of harm in the form of spontaneous engine

12

stalling and engine fire."  (*Id*. ¶ 106.)  Thus, Plaintiffs' allegations regarding the Hyundai

13

Sonata recall are insufficient to plausibly support that Defendants had knowledge of the

14

alleged defects before 2016.

15

     3.   <u>Defendants' Knowledge After Sale</u>

16

       Plaintiffs contend that, even if Defendants did not learn of the defects until 2016,

17

Plaintiffs' state law claims "do not depend on the Defendants' knowledge at the time of

18

the transaction."  (Resp. at 14.)  However, none of the cases cited by Plaintiffs involve

19

fraud claims that were based on post-sale knowledge.  (*See* Resp. at 14 (collecting

20

cases).)  Indeed, post-sale knowledge appears to run contrary to Plaintiffs' central theory

21

of financial harm, namely that if Defendants had disclosed the alleged defects, Plaintiffs

22

"either would not have purchased the Class Vehicles or would have paid considerably

1   less for them."  (SAC ¶ 91; *see also* 3/16/2020 Order at 22 (finding that Plaintiffs had

2   sufficiently alleged reliance based on Defendants' failure to disclose before sale).)

3   Accordingly, the court is unpersuaded by this argument.

4          In sum, the court recognizes that Plaintiffs have sufficiently pleaded that

5   Defendants had knowledge of the alleged defects for Class Vehicles as of 2016.  The

6   court finds it proper, however, to dismiss the fraud-based claims of Plaintiffs who

7   purchased class vehicles before 2016.  Accordingly, the court GRANTS Defendants'

8   motion to dismiss Ms. Snider's (Counts I, III-V, XII), Mr. DiPardo and Ms. DiPardo's

9   (Counts I, III-V, X), Mr. Twigger's (Counts I, III-V, XIV), Ms. Carduff's (Counts I,

10  III-V, XX), Ms. Smith's (Counts I, III-V, XXIV), and Ms. Wight's (Counts I, III-V, XII)

11  fraud-based claims.  Plaintiffs have already attempted to amend their complaint to

12  address the deficiencies in Ms. Snider, Mr. DiPardo and Ms. Dipardo, and Mr. Twigger's

13  fraud-based claims that the Court identified in its prior Order.  (*See* 3/16/2020 Order at

14  22-24.)  The court also finds that the deficiencies in Ms. Carduff, Ms. Smith, and Ms.

15  Wight's claims are substantially similar to those of Ms. Snider, Mr. DiPardo and Ms.

16  DiPardo, and Mr. Twigger's fraud-based claims.  Therefore, the court finds it appropriate

17  to dismiss these claims with prejudice.  *See Ecological Rights Found. v. Pac. Gas & Elec.*

18  *Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (explaining a district courts' discretion in

19  dismissing a complaint without leave to amend as based on five factors: "bad faith, undue

20  delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff

21  has previously amended the complaint").  Although there is no evidence of bad faith,

22  undue delay, or prejudice, the presence of these deficiencies in the second amended

1    complaint clearly goes to the latter two factors.  As a result, leave to amend is not

2    appropriate.

3    **D.    Plaintiffs' Claims for Breach of Implied Warranty of Merchantability**

4          Defendants argue that Plaintiffs' claims based on breach of implied warranty must

5    be dismissed because Plaintiffs either fail to allege privity or allege a defect that

6    manifested outside the implied warranty period.  (Mot. at 15.)

7          1.  <u>Vertical Privity</u>

8          Defendants' contend that Ms. Short, Ms. Snider, Ms. Wight, Mr. Ronfeldt, Ms.

9    Alexander, Mr. Frazier, and Mr. Pressley have not established sufficient privity with the

10   Defendants to sustain their claims under Ohio, Washington, Arizona, Connecticut, and

11   North Carolina law.  (*Id*.)

12         a.  *Ohio*

13         Ohio state law requires that a plaintiff bringing an implied warranty claim stand in

14   vertical privity with the defendant.  *See Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d

15   1141, 1148 (Ohio 2007) ("[I]n Ohio, vertical privity exists only between immediate links

16   in the distribution chain.").  To plausibly allege vertical privity with the manufacturer,

17   Mr. Ronfeldt must allege facts showing that the dealership's duty to act is primarily for

18   the benefit of the manufacturer.  *See id.* (holding that the facts did not establish vertical

19   privity between an individual consumer and an authorized Volkswagen dealership where

20   the dealership purchased the vehicle at issue from the manufacturer "primarily for its own

21   benefit" and "without any intent to benefit Volkswagen through its actions").  Plaintiffs

22   allege that Taylor Kia of Toledo, where Mr. Ronfeldt purchased his Class Vehicle, "acted

1   primarily for the benefit of the Kia Defendants" during the dealership's interactions with

2   Mr. Ronfeldt.  (SAC ¶¶ 260-61.)   The court does not find these conclusory allegations

3   sufficient to establish a reasonable inference that there was vertical privity between

4   Defendants and Mr. Ronfeldt.

5          *b.  Washington*

6          Washington state law requires individual consumers to establish vertical privity

7   with the manufacturer to state a claim for breach of an implied warranty.  *See Lohr v.*

8   *Nissan N. Am., Inc.*, No. C16-1023RSM, 2017 WL 1037555, at *7 (W.D. Wash. Mar. 17,

9   2017) (citing *Baughn v. Honda Motor Co.*, 727 P.2d 655, 668-69 (Wash. 1986)).  An

10  exception to the vertical privity requirement exists for implied warranties where plaintiffs

11  are the intended third-party beneficiaries of an underlying contract between a

12  manufacturer and intermediate dealer.  *See Baughn*, 727 P.2d at 630.  "Plaintiffs can

13  demonstrate they are third-party beneficiaries where a manufacturer knew a purchaser's

14  identity, knew the purchaser's purpose for purchasing the manufacturer's product, knew a

15  purchaser's requirements for the product, delivered the product, and/or attempted repairs

16  of the product in question."  *Lohr*, 2017 WL 1037555, at *7 (citing *Touchet Valley Grain*

17  *Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 831 P.2d 724, 730 (Wash. 1992)).

18  "Washington courts consider these factors in a sum of the interaction test, to determine

19  whether the manufacturer was sufficiently involved in the transaction (including post-

20  sale) with the remote purchaser to warrant enforcement of an implied warranty."  *Id.*

21  (citation omitted).  To invoke the third-party beneficiary exception, Plaintiffs must allege

22  sufficient factual matter to allow the court to draw the reasonable inference that the

1    Plaintiffs are indeed third-party beneficiaries of implied warranties Defendants allegedly

2    made to the dealers who sold the Class Vehicles.

3        Plaintiffs allege that Defendants marketed the Class Vehicles as safe and

4    dependable, that Plaintiffs were exposed to Defendants' marketing, and that safety and

5    reliability were "critical pre-purchase criteria" for Plaintiffs.  (Resp. at 15-16.)  The court

6    does not find that these allegations are sufficient to draw a reasonable inference that the

7    Washington Plaintiffs are third-party beneficiaries.  *See Lohr*, 2017 WL 1037555, at *7

8    (finding that plaintiffs had not alleged facts that allowed the court to draw a reasonable

9    inference that plaintiffs were third-party beneficiaries of a car manufacturer.)

10            c.  *Arizona, Connecticut, and North Carolina*

11       Plaintiffs bring new implied warranty claims under Arizona, Connecticut, and

12   North Carolina law.  All three states require vertical privity.  *See Chaurasia v. Gen.*

13   *Motors Corp.*, 126 P.3d 165, 171 (Ct. App. 2006) (upholding summary judgment on a

14   claim based on implied warranty brought against a car manufacturer for lack of privity);

15   *Kahn v. Volkswagen of Am., Inc.*, No. FSTCV075004090S, 2008 WL 590469, at *8

16   (Conn. Super. Ct. Feb. 13, 2008) (striking a claim based on implied warranty brought

17   against a car manufacturer for lack of privity); *Sharrard, McGee & Co., P.A. v. Suz's*

18   *Software, Inc.*, 100 N.C. App. 428, 432, 396 S.E.2d 815, 818 (1990) ("[O]utside the

19   exceptions created by G.S. Chapter 99B, the general rule is that privity is required to

20   assert a claim for breach of an implied warranty involving only economic loss.").

21       Plaintiffs allege no facts and point to no case law that distinguish the Arizona,

22   Connecticut, and North Carolina implied warranty claims from the Ohio and Washington

ORDER - 22

1    claims.  Therefore, the court GRANTS Defendants' motion to dismiss Ms. Short's, Ms.

2    Snider's, and Ms. Wight's (Count XIII); Mr. Ronfeldt's (Count IX); Ms. Alexander's

3    (Count XVII), Mr. Frazier's (Count XIX), and Mr. Pressley's (Count XXIII) claims

4    based on implied warranties.  As with Plaintiffs' fraud-based claims, the court finds it

5    appropriate to dismiss these claims with prejudice.  *See Ecological Rights Found.*, 713

6    F.3d at 520.

7        2.  Express Warranty Durations and Implied Warranty Claims

8        Defendants contend that implied warranty claims brought by Mr. Twigger, Mr.

9    Frazier, Ms. Carduff, Mr. Pressley, and Ms. Smith must be dismissed because the alleged

10   defects manifested after any implied warranties had expired.  (Mot. at 17.)  Defendants

11   also argue that Ms. Short, Ms. Snider, Mr. DiPardo and Ms. DiPardo, and Ms.

12   Alexander's implied warranty claims should be dismissed because they have not alleged

13   any facts that indicate their vehicles are still covered by any implied warranties.  (*Id.*)

14       The states in question allow for modification of the duration of implied warranties.

15   *See* 13 Pa. Stat. and Const. Stat. Ann. § 2A212(b) & (c); RCW 62A.2-314(1); W. Va.

16   Code § 46-2-314(1); Conn. Gen. Stat. § 42a-2-314(1); Mo. Rev. Stat. § 407.2-314(1);

17   N.C. Gen. Stat. § 25-2-314(1); Tex. Bus. & Com. Code § 2.314(1).  Defendants have

18   presented copies of their warranty and consumer information manuals, which include

19   express warranties and state that all implied warranties, including warranties of

20   merchantability and fitness, are limited to the duration of the express warranties provided

21   by Defendants.  (*See* Decl. of Christine W. Chen (Dkt.  79), ¶¶ 2-6, Exs. A at 13, B at 13,

22   C at 13, D at 13; *see also* Ex. E at 17.)

1    Plaintiffs respond that their allegations are that Class Vehicles were defective from

2   the date of manufacture, which places them within the warranty period.  (Resp. at 16.)

3   Plaintiffs' alleged defects are: "(1) manufacturing process debris left in the engines that

4   causes internal damage . . . and, in the case of the Tucson, (2) a defective seal between

5   the oil pan and engine block, which can result in lubrication failure and damage."  (Resp.

6   at 16.)  Defendants argue that if this theory were correct, durational limitations on

7   warranties would become meaningless, as Plaintiffs could assert that any defect was

8   present at the time of manufacture, regardless of when the defect manifested.  (Reply at

9   9-10 (citing *Elfardi v. Mercedes-Benz USA, LLC*, No. 4:16 CV 1896 CDP, 2018 WL

10   4071155 at *10 (E.D. Mo. Aug. 27, 2018) (dismissing a claim based on a defective

11   sunroof that manifested outside the implied warranty period.)).)

12    The court has already ruled that it is improper to dismiss the implied warranty

13   claims at this stage based on an argument that Plaintiffs "have not alleged any facts

14   indicating that their vehicles have experienced any issues or have any materialized

15   problems."  (3/16/2020 Order at 32.)  Plaintiffs contend that these defects have long been

16   present in their vehicles, and it is the ensuing risk that these manifested defects present

17   that makes their vehicles unfit to drive.  (*Id*.)  Therefore, the court DENIES Defendants'

18   motion to dismiss Plaintiffs' implied warranty claims on the ground that the implied

19   warranties expired prior to any defect manifesting.

20   **E.    Whether Plaintiffs' Claims Are Time-Barred**

21    Defendants contend that Plaintiffs' fraud and implied warranty claims are time-

22   barred because they were filed after the statute of limitations had passed.  (Mot. at 20-24.)

1    Plaintiffs respond that that the both the discovery rule and Defendants' fraudulent

2    concealment toll the statute of limitations.

3         The discovery rule requires that Plaintiffs allege (1) the time and manner of

4    discovery, and (2) their inability to make an earlier discovery despite reasonable

5    diligence.  *See, e.g.*, *Asghari* 42 F. Supp. 3d at 1320.  Plaintiffs allege that they

6    discovered the engine defects either (1) upon inspection after a serious issue (SAC

7    ¶¶ 46-47, 57, 73); (2) during maintenance (*Id*. ¶ 69); or after their car burst into flames

8    (*Id*. at ¶¶ 50-51, 64, 80, 86.)  Plaintiffs also allege that they exercised reasonable

9    diligence as ordinary consumers who were "not versed in the art of inspecting and

10   judging a product, [or] in the process of its preparation or manufacture . . . ." (*See* Resp.

11   at 19 (quoting *Asghari*, 42 F. Supp. 3d at 1314).)  Accordingly, at this stage in the

12   proceedings, Plaintiffs have sufficiently pleaded that the discovery rule applies and the

13   statute of limitations was tolled for Plaintiffs' fraud claims.

14        Plaintiffs have also sufficiently pleaded fraudulent concealment.  The court has

15   already determined that Plaintiffs have sufficiently pleaded fraudulent concealment or

16   omission for Plaintiffs who purchased their Class Vehicles in 2016 or later.  Plaintiffs

17   provide ample case law to support equitable tolling in the case of fraudulent concealment.

18   (*See* Resp. at 20-22 (collecting cases); *see also Cervantes v. City of San Diego*, 5 F.3d

19   1273, 1276 (9th Cir. 1993) (finding that, since the applicability of the equitable tolling

20   doctrine often depends on matters outside the pleadings, whether a claim is time-barred is

21   "not generally amenable to resolution on a Rule 12(b)(6) motion.").  At this stage in the

22

proceedings, Plaintiffs who purchased Class Vehicles in 2016 or later have also sufficiently alleged reasonable diligence to discover the alleged fraud.

Defendants also argue that several of Plaintiffs' implied warranty claims are barred by their respective statutes of limitations of four years.  (Mot. at 23.)  Defendants assert that the limitations period begins from when the cars were first delivered to the dealerships.  (*Id.* (citing *W. Recreational Vehicles, Inc. v. Swift Adhesives, Inc.*, 23 F.3d 1547, 1549-50 (9th Cir. 1994)).)  Plaintiffs disagree.  (Resp. at 22 (citing *W. Recreational Vehicles, Inc.,* 23 F.3d 1547).)

Plaintiffs argue that the statute of limitations for the implied warranty claims, like their fraud claims, is tolled by fraudulent concealment.  (*See* Resp. at 23 (collecting cases).)  The court agrees—as with the fraud-based claims, Plaintiffs have sufficiently alleged fraudulent concealment as of 2016.  Because all Plaintiffs purchased their vehicles in 2012 or later (SAC ¶¶ 32-86), the court finds that, taking the facts in the light most favorable to the Plaintiffs, they have sufficiently pleaded that the statute of limitations was tolled such that the implied warranty claims are not time-barred, regardless of whether the limitation period began when the cars were delivered to the dealerships or when Plaintiffs purchased them.

Accordingly, the court DENIES Defendants' motion to dismiss Plaintiffs' claims as time-barred.

## IV.   CONCLUSION

Based on the foregoing analysis, the court GRANTS in part and DENIES in part Defendants' motion to dismiss (Dkt. # 43) as follows:

- The court DENIES Defendants' motion to dismiss non-California Plaintiffs' claims under the California Statutes (Counts III-V);

- The court GRANTS Defendants' motion to dismiss Ms. Snider's (Counts I, III-V, XII), Mr. DiPardo and Ms. DiPardo's (Counts I, III-V, X), Mr. Twigger's (Counts I, III-V, XIV), Ms. Carduff's (Counts I, III-V, XX), Ms. Smith's (Counts I, III-V, XXIV), and Ms. Wight's (Counts I, III-V, XII) fraud-based claims WITH PREJUDICE;

- The court DENIES Defendants' motion to dismiss all other Plaintiffs' fraud-based claims;

- The court GRANTS Defendants' motion to dismiss Ms. Short's, Ms. Snider's, and Ms. Wight's (Count XIII); Mr. Ronfeldt's (Count IX); Ms. Alexander's (Count XVII), Mr. Frazier's (Count XIX), and Mr. Pressley's (Count XXIII) claims based on implied warranties WITH PREJUDICE;

- The court DENIES Defendants' motion to dismiss all other Plaintiffs' claims based on implied warranties;

- The court DENIES Defendants' motion to dismiss Plaintiffs' claims as time-barred.

Dated this 19th day of October, 2020.

JAMES L. ROBART
United States District Judge

ORDER - 27